**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Case No.:  21-CR-026 (CRC)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER MICHAEL ALBERTS

    Defendant.

_____/

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

COMES NOW, Defendant, CHRISTOPHER MICHAEL ALBERTS,

(hereinafter, "Defendant" or "Mr. Alberts"), by and through undersigned counsel,

pursuant to Fed. R. Crim. P., Rule 12(b)(3)(A) and (B) and inherent powers of the

Court, moves to dismiss all counts of the United States of America's ("State" or

"Government") Indictment based upon its (1) failure to state a crime, (2) the

charges are violative of the (3) First and (4) Second Amendment of the U.S.

Constitution, and (5) the outrageous Government conduct in its failure to present

all evidence to the Grand Jury[1] including its failure to present exculpatory

evidence. In support, undersigned counsel states as follows:

---

[1] Should the Court decide not to dismiss the counts as requested, the Court is alternately
asked, based upon the arguments and authorities set forth herein, to strike any portions of

## <u>LEGAL STANDARDS</u>

Federal Rule of Criminal Procedure 12(b)(1) states Defendant may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." This includes "a defect in instituting the prosecution" and "a defect in the indictment" requiring dismissal. *See* Rule 12(A); Rule 12(B). An indictment's primary purpose is "to inform the defendant of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 767, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). To that end, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see also United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) ("[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense.").

---

the counts which it deems to be false, misleading or otherwise not properly included in the **Indictment** and/or to compel the Government **to produce Grand Jury minutes** relating to its presentation of the evidence and legal instructions to the Grand Jury.

Applicable here, "claims that a statute named in an indictment does not proscribe the alleged conduct are generally treated as claims that the indictment 'fails to state an offense.'" *United States v. Hite*, 950 F. Supp. 2d 23, 25–26 (D.D.C. 2013) (quoting *United States v. Teh*, 535 F.3d 511, 515 (6th Cir. 2008)); *see also, e.g., United States v. Aka*, 339 F. Supp. 3d 11, 15 (D.D.C. 2018); *cf. Al Bahlul v. United States*, 767 F.3d 1, 10 n.6 (D.C. Cir. 2014) (stating, in a case involving military commission, that "[f]ailure to state an offense is simply another way of saying there is a defect in the indictment").

When considering a motion to dismiss for failure to state an offense, "the court is bound by the language of the indictment." *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *Id.* at 1016 (citing *Russell v. United States*, 369 U.S. 749, 768–71 (1962) citing *Stirone v. United States*, 361 U.S. 212, 216 (1960); and then citing *United States v. Lawton*, 995 F.2d 290, 292–93 (D.C. Cir. 1993)). Accordingly, "at this stage of the case, the allegations of the indictment must be taken as true." *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).

## FACTS

A grand jury was sworn in on January 08, 2021, and the Government filed a four (4) count indictment against Defendant on January 27, 2021, (D.E. 7). The following allegations and facts that are incorporated into the argument sections are taken from the indictment as alleged by the Government and assumed to be true as is required. *United States v. Park*, 938 F.3d 354, 358 (D.C. Cir. 2019).

## ARGUMENT

The Due Process Clause protects defendants from being convicted for conduct they were not fairly warned was unlawful. *See United States v. Lanier*, 520 U.S. 259, 266 (1997); *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964). The Constitution's requirement of "fair warning" consists of three related protections: (1) a statute is void for vagueness where "it forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application"; (2) "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered"; and (3) "due process bars courts from applying a novel construction of a criminal statute to

4

conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266.

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. " *Bouie* at 351 (1964). For its part, the void for vagueness "doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018). "A statute authorizes an impermissible degree of enforcement discretion—and is therefore void for vagueness— where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement. *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391, 410 (D.C. Cir. 2017).

## I.   **Counts One (1) and Three (3) Must Be Dismissed**

The indictment states "that on or about January 6, 2021, within the District of Columbia, [Mr. Alberts] did carry and have readily accessible, a firearm, that is, a Taurus G2C semi-automatic handgun, on the United States Capitol Grounds and in any of the Capitol Buildings" allegedly in violation of Title 40, United States

Code, Section 5104(e)(l)(A)(i))(Unlawful Possession of a Firearm on Capitol Grounds or Buildings). Simply put: one cannot be found guilty of an unconstitutional statute. *Marbury v. Madison*, 5 U.S. 137, 138, 2 L. Ed. 60 (1803) ("An act of congress repugnant to the constitution cannot become a law… The courts of the United States **are bound to take notice of the Constitution**."); *Ogden v. Saunders*, 25 U.S. 213, 294, 6 L. Ed. 606 (1827)

> …it cannot be too often repeated, (although universally admitted,) or too deeply impressed on the mind, that all the powers of the general government are derived solely from the constitution; and that whatever power is not conferred by that charter, is reserved to the States respectively, or to the people.

When interpreting the Constitution, courts are guided by the principle that it was "written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *United States v. Sprague,* 282 U.S. 716, 731, 51 S.Ct. 220, 75 L.Ed. 640 (1931); *see also Gibbons v. Ogden,* 9 Wheat. 1, 188, 6 L.Ed. 23 (1824).

The Second Amendment is clear and straight forward: "A well-regulated Militia, being necessary to the security of a free State, **the right of the people to keep and bear Arms, shall not be infringed**." Defendant was lawfully permitted

to carry a firearm[2], protects "the right of the people to keep and bear arms." By its terms, the Second Amendment secures a right not just to "keep" arms, but to "bear" them, a phrase "that refers to carrying for a particular purpose-confrontation." *D.C. v. Heller*, 554 U.S. 570, 584 (2008). Naturally, the right to keep and bear arms includes the right to carry common weapons for self-defense, and the historical record is so overwhelming for this proposition the Government typically no longer disputes that the Second Amendment protects the right to carry handguns outside the home for self-defense. In fact, upon information and belief, before the 20th century, no one was ever successfully prosecuted for the bare act of carrying a common firearm for self-defense. Text, history, and tradition thus speak with one unanimous, resounding voice: The Second Amendment protects the right to carry a handgun outside the home for self-defense; where the need for self-defense is acute.

Assuming arguendo the federal statue was not violative of the Second Amendment, it runs afoul others. The U.S. Constitution under Article 1, Section 8, Clause 17 instructed that the seat of government be a "District **(not exceeding ten miles square)**" over which Congress would "exercise exclusive legislation."

---

[2] Defendant is not a convicted felon and notably served in the United States' armed forces (emphasis added)

There's no ambiguity, the district, "must <u>not exceed ten (10) miles</u> square;" and the "United States Capitol Grounds," <u>comprise two hundred and seventy (270) acres of land</u>[3] surrounding Capitol buildings. 40 U.S.C. § 5102(a); *see also Architect of Capitol Website* stating: "The campus consists of the U.S. Capitol building and visitor center, principal congressional office buildings, Library of Congress buildings, Supreme Court buildings, U.S. Botanic Garden and over 270 acres of grounds." (https://www.aoc.gov/explore-capitol-campus/buildings-grounds (last visited January 24, 2022). Section 1752(c)(1)(B) distinguishes between a restricted "building" and restricted "grounds." Title 40 of the United States Code ("Public Buildings, Property, and Works"), moreover, also distinguishes between "Capitol Buildings"—i.e., "the United States Capitol, the Senate, and House Office Buildings and garages, [etc.] … and the real property underlying and enclosed by any of these structures," 40 U.S.C. § 5101.

Here in the indictment, it says that the offense occurred "***on the United States Capitol Grounds <u>and</u> in <u>any</u>*** of the Capitol Buildings." Factually then, the indictment does not specify enough detail to provide adequate notice or sufficient factual allegations to support the crime as proffered by the Government against

---

[3] *See* The Geneva Convention relative to the Treatment of Prisoners of War, 12 August 1949 (GCIII) of 1949 as to the implications of what this could mean for the other territory/land.

Mr. Alberts. In turn, the indictment is facially wanting in facts; and, violative of the Due Process when it "tak[es] away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, ––– U.S. ––––, 135 S. Ct. 2551, 2556, 192 L.Ed.2d 569 (2015). In other words, the letter of the indictment is so vague, indeterminant, or shapeless as averred, that even a person aware of the law cannot know what conduct is prohibited. *Id*. at 2558, 2560. Coincidingly, nowhere in the indictment does it say that Mr. Alberts was not authorized by the Capitol Police Board – a requisite element of the offense.

Count Three (3) alleges that, "on or about January 6, 2021, within the District of Columbia, CHRISTOPHER ALBERTS, did carry openly and concealed on or about his person, in a place other than his dwelling place, place of business or on other land possessed by him, a pistol, without a license issued pursuant to law." Mr. Albert's reincorporates those arguments above in Count I into those here in Count III and submits for similar reasons they ought to be dismissed. The Second Amendment permits Mr. Alberts to have a firearm "outside of his dwelling place"

II. **Count Two (2) Must Be Dismissed**

The indictment states "that on or about January 6, 2021, within the District of Columbia, CHRISTOPHER ALBERTS, did unlawfully and knowingly enter and remain in the United States Capitol and grounds, a restricted building and grounds, without lawful authority to do so" purportedly in violation of Entering and Remaining in any Restricted Building, in violation of Title 18, United States Code, Section 1752(a)(l)).

The indictment is wanting in fact as there is nothing about Mr. Albert's conduct as alleged that violates this statute. Indeed, according to the "Visit the Capitol" website, "The United States Capitol in Washington, D.C., *is a symbol of the American people and <u>their government</u>*, the meeting place of the nation's legislature."[4] Mr. Alberts is not only an American citizen, but also a veteran of the United States Armed Forces. Therefore, it should go without saying that there is nothing criminal about Mr. Albert voicing his first amendment right in a building which he most certainly has the right to be in and remain. The allegations in the indictment are facially wanting and the charge unconstitutional. *Republican Party of Minnesota v. White*, 416 F.3d 738, 749 (8th Cir. 2005); *Gronowski v. Spencer*, 424

---

[4] https://www.visitthecapitol.gov/about-capitol (last visited January 24, 2022).

F.3d 285, 292 (2d Cir. 2005); *see also Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–87 (1977).

III. **Count Four (4) Must Be Dismissed**

The indictment states that "On or about January 6, 2021, within the District of Columbia, CHRISTOPHER ALBERTS, did possess a large capacity ammunition feeding device" purportedly in violation of Title 22, District of Columbia Code, Section 2506.0l(b) (2001 ed.) – possessing of a large capacity ammunition feeding device. Similar to Counts One (1) and Three (3), the Second Amendment protects Mr. Albert's right to bear arms which includes the ammunition to shoot the firearm. Additionally, the indictment is factually wanting as there is nothing in the indictment stating the quantity or capacity of the alleged magazine or "feeding device" rendering the indictment vague and wanting of the essential elements of the offense. *See Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000); *United States v. Angle*, 230 F.3d 113, 123 (4th Cir. 2000); *United States v. Lewis*, 2000 WL 1390065 (4th Cir. Sept. 26, 2000) (unpublished); (*copy attached in appendix*); *United States v. Carr*. 2000 WL 1616978 (4th Cir. October 30, 2000) (for an analogous proposition when the amount of drugs are not alleged in an indictment, a dismissal is warranted).

IV.  **The Indictment is Defective**

As the initial indictment (and superseding indictments) Mr. Alberts was and continues to be charged under are unconstitutional and/or did not include certain missing elements, this cause must be dismissed. The Presentment Clause defects result in the absence of essential elements of the offense being found by the grand jury in handing down its indictment. Upon information and belief, there is no authority which sustains the right of a court to amend any part of the body of an indictment without reassembling the grand jury, unless by virtue of a statute. In other words, the court may not amend an indictment except as to matters of form[5].

United States v. Whitman, 665 F.2d 313, 316 (10th Cir. 1981); Fed. R. Crim. P. 7.; *See Ex parte Bain*, 121 U.S. 1, 8–9, (1887) overruled by *United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). Here, since the initial indictment

---

[5] Case examples: *Com.* v. *Child*, 13 Pick. 200, the Court held: 'It is a well-settled rule of law that the statute respecting amendments does not extend to indictments; that a defective indictment cannot be aided by a verdict; and that an indictment bad on demurrer must be held insufficient upon a motion in arrest of judgment.' In the case of *Com.* v. *Mahar*, 16 Pick. 120, the court having held, upon the arraignment of the defendant, that the indictment was defective, the attorney general moved to amend it, and the prisoner's counsel consented that the name of William Hayden, as the owner of the house in which the offense had been committed, should be inserted, not intending, however, to admit that Hayden was in fact the owner. 'But the court were of opinion that this was a case in which an amendment could not be allowed, even with the consent of the prisoner.' In *Com.* v. *Drew*, 3 Cush. 279, Chief Justice Shaw said: 'Where it is found that there is some mistake in an indictment, as a wrong name or addition, or the like, and the grand jury can be again appealed to, as there can be no amendment of an indictment by the court, the proper course is for the grand jury to return a new indictment, avoiding the defects of the first.'

presented to the Grand Jury is not the same as those which came after, and all the counts facially or as applied are unconstitutional and/or devoid of the facts necessary to allege an offense, all counts and this case must be dismissed.

V.   **Prosecutorial Misconduct or Judicial Malfeasance**

In federal criminal proceedings, the right to indictment by an unbiased grand jury is guaranteed by the fifth amendment. *Costello v. United States*, 350 U.S. 359 (1956). When the framers of the Bill of Rights placed that requirement in the fifth amendment, "they were not engaging in a mere verbal exercise." *United States v. Estepa*, 471 F.2d 1132, 1136 (2d Cir. 1972). The fact that grand jury proceedings are secret, Ex-parte and largely under the control of the federal prosecutor, magnifies this concern – necessitating judicial intervention when prosecutorial misconduct occurs like in this case (emphasis added). *E.g., In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973) (Schofield I); *United States v. Jacobs*, 547 F.2d 772 (2d Cir. 1976), Cert. dismissed, 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978); *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972) (Friendly, J.).

The United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), held that the suppression by the prosecution of evidence favorable to an accused on request violates due process where the

13

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. In the case of *U. S. v. Agurs*, 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), the Supreme Court explicitly extended the principle of *Brady* to the due process clause of the Fifth Amendment to the Constitution, and the Court held that a federal prosecutor **has a constitutional duty to volunteer exculpatory matter to the defense**, even in the absence of a specific request for *Brady* material, and the Court addressed the standard of materiality that gives rise to the duty to disclose *Brady* evidence.

Here, there are <u>**exceedingly over 400 hours' worth of video evidence**</u> that has been unlawfully withheld from Mr. Alberts and hundreds of witnesses (emphasis added). It has been over a year since the alleged "January 6th insurrection" and it cannot be said that Mr. Alberts has not been prejudiced by the hiding of this information. This case is analogous to the recent decision in *United States v. Bundy*, 406 F. Supp. 3d 932 (D. Nev. 2018). There, as here, the misconduct is "attributable to and directed by the government." *United States v. Barrera-Morena*, 951 F.2d 1089, 1092 (9th Cir. 1991)), and the government conduct is "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id.* at 9:2-3 (quoting United *States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991)). Here, as in *Bundy*, the only

appropriate remedy for this egregious government misconduct is dismissal for the reasons provided. *See United States v. Bruzgo*, 373 F.2d 383 (3d Cir. 1967), and *United States v. Riccobene*, 451 F.2d 586 (3d Cir. 1971) (recognizing the authority of this court, in the exercise of its supervisory power, to order the dismissal of the indictment as a remedy for prosecutorial misconduct before the grand jury.); *United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979).

Indeed, the application of the Sixth Amendment is limited to government action which occurs after the initiation of adverse criminal proceedings, a defendant's remedy for prosecutorial misconduct in the pre-indictment stage is provided in the due process protections of the Fifth Amendment. *United States v. Marion*, 404 U.S. 307, 315 (1971); *United States v. Simmons*, 536 F.2d 827, 830 n. 9 (9th Cir.1976). In this case, prosecutorial misconduct or malfeasance has taken place in both the pre-indictment stage of the criminal proceeding, as well as, afterward. Therefore, this matter ought to be dismissed for the Government infringing upon Mr. Albert's Fifth and Sixth Amendment rights.

<u>**CONCLUSION**</u>

In sum, the facts as alleged in the indictment do not amount to an offense that Mr. Albert's can be held criminal liable for, and those which survive factual scrutiny (Defendant submits none of them do) cannot be brought against Mr.

Alberts as they violate his Constitutional rights. For these reasons, if the United States Department of Justice does not come forth to meet its most solemn duty and move to dismiss this travesty, this Court should dismiss this political prosecution because of the government's outrageous and egregious misconduct directed specifically against Mr. Alberts; ostensibly because he supports President Trump. "[I]t is unconscionable, contrary to public policy, and to the established law of the land to punish a man for the commission of an offense of the like of which he had never been guilty, either in thought or in deed, and evidently never would have been guilty of if the officers of the law had not inspired, incited, persuaded, and lured him to attempt to commit it." *Sorrells*, 287 U.S. at 444-45 (citation omitted).

## <u>REQUEST FOR HEARING</u>

Defendant requests a hearing on all matters and issues capable of being heard.

Respectfully Submitted,

> **<u>FERGUSON LAW, P.A</u>.**
> Attorney for Defendant
> 1 East Broward Blvd. Suite #700
> Fort Lauderdale, Florida 33301
> T – (954) 256 - 5646
> F – (954) 256 - 5655
> Primary: Wayne@FergusonLawPA.com
>
> */s/Kenneth W. Ferguson*
> Kenneth W. Ferguson, Esq.
>
> ~Psalm 23

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February, 2022, a copy of the foregoing was efiled, served, and/or delivered to counsel of record or case registered parties by the CM/ECF court system.

**FERGUSON LAW, P.A.**
Attorney for Defendant
1 East Broward Blvd. Suite #700
Fort Lauderdale, Florida 33301
T – (954) 256 - 5646
F – (954) 256 - 5655
Primary: Wayne@FergusonLawPA.com
Secondary: Service@FergusonLawPA.com

*/s/Kenneth W. Ferguson*
Kenneth W. Ferguson, Esq.
Fla. Bar No.: 98950

~Psalm 23

17