UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    -v-<br><br>CHRISTOPHER MICHAEL ALBERTS,<br><br>              Defendant. | Case No.: 21-CR-026 (CRC) |

DEFENDANT'S REPLY TO
UNITED STATES' OPPOSITION TO MOTION TO DISMISS

COMES NOW, Defendant, CHRISTOPHER MICHAEL ALBERTS, (hereinafter, "Defendant" or "Mr. Alberts"), by and through undersigned counsel, with this Reply to the United States' Opposition to Alberts' Motion to Dismiss (#52). This Reply comes after months of Mr. Alberts searching for new counsel and changing counsel. A recent Supreme Court ruling closes the door on the government's claims regarding certain matters, and new counsel for the Defendant prays for this Court to dismiss this indictment in full. *Cf. Chennareddy v. Bowsher*, 935 F.2d 315, 320 (D.C. Cir. 1991) (attorney has an affirmative duty to inform the court of controlling precedents).

I.     INTRODUCTION

First, a few words about the status of this pleading. Prior counsel filed the motion to dismiss (filing #40) on February 10, 2022 (six months ago). However, prior counsel suffered medical and health emergencies and was forced to withdraw from the case. Various extensions and enlargements of time were requested and granted.

The United States responded on May 19, 2022 (3 months after the filing of the motion).

## II.  NEW SUPREME COURT RULING DISPOSES OF SEVERAL COUNTS

Meanwhile and most significantly, the Supreme Court issued its landmark decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111, just six weeks ago, on June 23, 2022.  The *Bruen* decision is directly on point and binding on the very issues before this court in defendant's motion to dismiss.  Indeed, the *Bruen* decision forecloses all questions regarding Mr. Alberts's firearm counts and requires that they be dismissed and stricken from the indictment.

To say that *Bruen* overruled an immense tapestry of prior precedents, statutes, ordinances and regulations is an understatement.  In *Bruen*, the Supreme Court wrote that "We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at 2122.

Counts 3, 4, 6, 9 and 10 must be dismissed pursuant to *Bruen*, which overruled—either directly or by implication—all of the second amendment decisions recited by the United States in its Opposition memorandum.

*Bruen* struck down a long-standing New York State gun control law which was in all essence identical to the laws invoked by the United States in Counts 9 and 10.  The D.C. gun law, like the New York law, allowed gun possession only within one's residence (with restrictions), and generally prohibited gun possession outside the

home. The *Bruen* Court loudly and explicitly invalidated every such prohibition nationwide.

> The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees. *McDonald*, 561 U. S., at 780. We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense.

*Bruen*, 142 S. Ct. at 2156.

The *Bruen* Court did not say the Second Amendment right to bear arms is limitless. The Court suggested that certain unusually dangerous guns might be restricted, or that certain highly secured or restricted areas might be subject to some restrictions. But Mr. Alberts is accused of merely bearing a "Taurus G2C semi-automatic handgun"—a commonly owned firearm sold at most gun stores—in an outdoor area near the Capitol.

*Bruen* laid down a presumption favoring the right to bear arms. *See id.* at 2126 ("[W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"). Thus, 18 U.S.C. § 1752(a)(1) and (b)(1)(A), referenced in Count 3, which accuse Mr. Alberts of entering the Capitol grounds while carrying a "deadly and dangerous weapon, that is, a Taurus G2C semi-automatic handgun," is presumptively invalid.

"*Heller* further confirmed that the right to "bear arms" refers to the right to "wear, bear, or carry . . . <u>upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person</u>." *Bruen*, 142 S. Ct. at 2134 (citing *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (emphasis added)). "This definition of 'bear' naturally encompasses public carry. Most gun owners do not wear a holstered pistol at their hip in their bedroom or while sitting at the dinner table. Although individuals often 'keep' firearms in their home, at the ready for self-defense, most do not 'bear' (*i.e.*, carry) them in the home beyond moments of actual confrontation. To confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections." *Id*. at 2134-45.

Moreover, confining the right to "bear" arms to the home would make little sense given that <u>self-defense is "the central component</u> of the [Second Amendment] right itself." *Id*. (emphasis added) (quoting *Heller*, 554 U. S. at 599, 128 S. Ct. 2783, 171 L. Ed. 2d 637); *see also McDonald*, 561 U. S. at 767, 130 S. Ct. 3020, 177 L. Ed. 2d 894. After all, the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation," *Heller*, 554 U. S. at 592, 128 S. Ct. 2783, 171 L. Ed. 2d 637, and confrontation can surely take place outside the home.

Accordingly, Counts 3, 4, 6, 9 and 10 against Christopher Alberts must be dismissed. Even when viewed in the light most favorable to the government, the allegations involve nothing more than possession of a typical handgun in an outside

area in circumstances where self defense might become necessary.  It is the right of every American to keep and bear arms in such situations.

### III. THE REMAINING COUNTS (1, 2, 5, 7 and 8) MUST ALSO BE DISMISSED.

Of all the places in America, the U.S. Capitol must be <u>the most accessible</u> to the citizenry.  Conversely, the Capitol is perhaps the place in America where government has the <u>least authority</u> to restrict citizen presence, petitioning, demonstrating, and activism.  The First Amendment explicitly states that "Congress shall make no law" impinging on the right to petition government for redress of grievances.  Thus, Congress is subject to the control and correction of the public according to the plain text of the Constitution.

Under the American constitutional order, the citizen is sovereign; not the government.  *See, e.g.*, *Chisholm v. Georgia*, 2 U.S. 2 Dall. 419 (1793) (nullified on other grounds by the 11th amendment).  The term "subject" "can receive no application," wrote Justice Blair, "for it has no object in the Constitution of the United states." "Under that Constitution, there are citizens, but no subjects." *Id*. at 456. *See also Code Revision Comm'n v. Public.Resource.Org, Inc*., 906 F.3d 1229, 1240 (11th Cir. 2018)

As Chief Justice Marshall wrote in 1819: "[t]he government proceeds directly from the people; is 'ordained and established,' in the name of the people... [and] is emphatically and truly, a government of the people. In form, and in substance, it emanates from them. Its powers are granted by them, and are to be exercised directly

on them, and for their benefit." *McCulloch v. Maryland*, 17 U.S. 316, 403-05, 4 L. Ed. 579 (1819). The people own the Capitol—and rule over it; not the other way around. "It is said to be the right of the citizen of this great country, protected by implied guarantees of its Constitution, 'to come to the seat of government to assert any claim he may have upon that government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions.'" *Crandall v. Nevada*, 6 Wallace, 36, 44 (1868).

In Count 1, Mr. Alberts is accused of obstructing justice during a "civil disorder" by merely impeding and interfering with government officials at the U.S. Capitol. Count 7 alleges that Mr. Alberts engaged in "disorderly conduct" on Capitol grounds. Without specific allegations of wrongdoing, these allegations fail to state a lawful claim against Mr. Alberts. "Letting political fights play out in the political branches might seem messy or impractical, but democracy can be a messy business." *Comm. on the Judiciary of the United States House of Representatives v. McGahn*, 951 F.3d 510, 519 (DC Cir. 2020) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring)).

Mr. Alberts had a constitutional right to protest regarding his perceptions of unfair election tabulation, along with thousands of others, on Jan. 6, 2021. *See United States Term Limits v. Thornton*, 514 U.S. 779, 843 (1995) ("The very idea of a government, republican in form, implies a right on the part of its citizens to . . . petition for a redress of grievances") (citing *Hague v. Committee for Industrial*

*Organization*, 307 U.S. 496, 513 (1939) (opinion of Roberts, J., joined by Black, J., and joined in relevant part by Hughes, C. J.) ("Citizenship of the United States would be little better than a name if it did not carry with it the right to discuss national legislation and the benefits, advantages, and opportunities to accrue to citizens therefrom.").

      ACCORDINGLY, Mr. Alberts's motion to dismiss should be granted.


Dated: August 29, 2022          Respectfully submitted,

                                      **John Pierce Law, P.C.**

                                      By:  */s/John M. Pierce*
                                      John M. Pierce
                                      jpierce@johnpiercelaw.com
                                      21550 Oxnard St., 3rd Fl PMB 172
                                      Woodland Hills, CA 91367
                                      Telephone: (213) 349-0054

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 29, 2022, the foregoing document was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce
