**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-26 (CRC)** |
| | : | |
| **CHRISTOPHER MICHAEL ALBERTS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S SECOND MOTION TO DISMISS**

The United States of America respectfully opposes Defendant Christopher Michael Alberts's Motion to Dismiss for Vindictive and Selective Prosecution,[1] *see* ECF No. 66.  Alberts alleges that government selectively targeted him for prosecution due to his political beliefs and charged additional offenses as retribution for his refusal to enter into a plea agreement.  His motion is factually and legally baseless and should be denied.

First, other judges of this Court have rejected similar selective-prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6, 2021.  *See, e.g.*, *United States v. Brock*, No. 1:21-cr-140, 2022 WL 3910549, at *11-*12 (D.D.C. Aug. 31, 2022) (Bates, J.); *United States v. Rhodes*, No. 1:22-cr-15, 2022 WL 3042200, at *4-*5 (D.D.C. Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 279 F. Supp. 3d 1, 5-9 (D.D.C. 2021) (McFadden, J.); *United States v. Miller*, No. 1:21-cr-119, ECF No. 67 (D.D.C. Dec. 21, 2021) (Nichols, J.).  The same outcome is warranted here.  In support of his selective-prosecution claim, Alberts cites the government's failure to prosecute an individual who did not engage in violent

---

[1] This is Alberts's second motion to dismiss.  *See* ECF No. 40.  It was filed without leave and is untimely, since the Court set a June 2, 2022 deadline for pretrial motions.  *See* ECF Entry, 5/5/2022.

1

conduct and was arrested in a traffic stop nearly two miles away from the Capitol Building on January 6, 2021.  Because that individual's conduct does not compare to Alberts's, his motion does not satisfy the rigorous standard for dismissal based on selective prosecution.

Second, Alberts claims that the government vindictively charged him with additional offenses because he "pled not guilty and signaled his intent to defend himself."  ECF No. 66 at 8.  But the indictment was superseded *before* any plea offer was extended and, indeed, the Government's initial offer would have required him to plead guilty to one of the charges added by the superseding indictment.  In any case, the Supreme Court has explained that a prosecutor's decision to add charges after a defendant rejects a plea agreement does not violate the Due Process Clause.

## **FACTUAL BACKGROUND**

Alberts is charged with ten crimes in connection with his aggressive, dangerous, and violent behavior on U.S. Capitol grounds on January 6, 2021.  *See* ECF No. 34.  Counts One (civil disorder), Two (assaulting, resisting, or impeding certain officers), Five (engaging in physical violence in restricted grounds), Seven (disorderly conduct within Capitol grounds), and Eight (physical violence within Capitol grounds), arise from his assault of officers from the Capitol Police on the Northwest Steps to the U.S. Capitol Building.  *Id.*  Counts Three (entering and remaining on restricted grounds with a deadly weapon), Four (disorderly or disruptive conduct within Capitol grounds with a deadly weapon), Six (unlawful possession of a firearm on Capitol grounds), Nine (carrying a pistol without a license), and Ten (possession of a large-capacity feeding device), stem from Alberts's conduct unlawfully carrying a loaded handgun and 25 rounds of ammunition – that is, a 9-mm pistol with a round of ammunition in the chamber and containing a fully-loaded, large-capacity magazine along with another fully-loaded large-capacity magazine

in a separate holster – on Capitol grounds.  *Id.*

On January 6, 2021, a joint session of Congress convened to certify the votes of the Electoral College for the 2020 Presidential Election.  At 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence, as President of the Senate, presided over the joint session, and, later, the Senate proceedings.

As the proceedings continued, a large crowd gathered outside the Capitol.  Officers with the U.S. Capitol Police and the Metropolitan Police Department attempted to keep the crowd away.  As a member of the advancing crowd, Alberts bypassed several barricades and entered restricted areas on the Capitol grounds, including the Northwest Steps.  He wore a body armor vest containing metal plates, a radio kit, and a gas mask.  In his military backpack, Alberts carried two knives, a meal ready-to-eat ("MRE"), and a first-aid medical kit.  At 1:54 p.m., while on the Northwest Steps, the Defendant brandished a wooden pallet-type object and used it as a makeshift battering ram as he stormed up the steps.  When Alberts reached the top of the steps, he charged the police line, made physical contact with the officers stationed there, and attempted to break through their position.[2]  His assaultive conduct permitted other individuals to attack the officers and deploy chemical spray to incapacitate them.

At 2:13 p.m., after Alberts and the other rioters forced officers to retreat from the Northwest Steps, individuals in the crowd forced entry into the Capitol as others encouraged and assisted them.  Twenty minutes later, representatives, senators, and Vice President Pence evacuated their respective chambers in response to this intrusion.  As individuals breached the Capitol building,

---

[2] These U.S. Capitol Police Officers did not wear body-worn cameras.  Despite Defendant's contention, the United States has never maintained that it "can't identify which officer(s) were allegedly assaulted by Alberts; or even which agency they worked for."  ECF No. 66 at 3.

multiple law enforcement agencies assisted the U.S. Capitol Police in protecting the Capitol building, prohibiting additional people from entering, and expelling the crowd already inside.

Alberts himself traveled to the plaza near the Senate wing of the Capitol building.  At 3:54 p.m., Alberts engaged in a diatribe against a line of police officers.[3]  Among other things, he stated,

> We want to do what we are constitutionally allowed to do.  This is in the Constitution.  If the government is no longer for the people, it is your right, nigh, it is your duty to overthrow that government and reinstate a new government for the people.

Alberts remained on restricted Capitol grounds throughout the afternoon.  At one point, he threw a water bottle at law enforcement officers on the "stage" area of the West Front of the Capitol, near the Southwest stairs.  He continued to confront officers until after sunset, when a mandatory curfew took effect.  He used a bullhorn to loudly and repeatedly admonish a line of officers.  Among his statements, Alberts told the officers, "the people that were here today are going to come back even more, and we're not coming back peacefully, and we're not coming back unarmed."  *See* *https://thedispatch.com/p/the-storming-of-the-capitol?utm_source=url*.

At 7:22 p.m., an MPD officer observed a bulge on the Defendant's hip as officers attempted to clear the grounds near the U.S. Capitol building.  The officer placed his baton against the bulge and determined that the Defendant was carrying a firearm, at which time officers apprehended Alberts.  *See* ECF No. 1-1.  The officers then recovered a 9-mm pistol with a round of ammunition in the chamber, a fully-loaded, large-capacity magazine from a holster on Defendant's body, and another fully-loaded large-capacity magazine in a separate holster.[4]  *Id.*

---

[3] The video can be viewed at https://www.youtube.com/watch?v=z1HB82BYR88.

[4] The United States provided Alberts with both the body-worn camera footage from the arresting officer and that of another nearby officer.  His statement that "the government claims no bodycam footage or other video or imagery exists of the moments of Alberts's patdown, the search, the recovery of the firearm, or Alberts's arrest," ECF No. 66 at 2, is incorrect.

After his arrest, the Defendant was charged in a single-count Complaint with possessing a firearm and ammunition on Capitol grounds.[5]  *See* ECF No. 1.  The Defendant was indicted by a federal grand jury on January 27, 2021.  *See* ECF No. 7.  He was charged with four offenses: unlawful possession of a firearm on Capitol grounds, entering and remaining on restricted grounds, carrying a pistol without a license, and possession of a large-capacity ammunition feeding device.  *Id.*  The grand jury returned a superseding indictment on May 14, 2021.  ECF No. 14.  That indictment included six additional charges related to Alberts's conduct on the Northwest Steps and Capitol grounds, including civil disorder and assaulting the USCP officers.  *Id.*  The United States made its first plea offer on June 28, 2021.  The grand jury then issued a second superseding indictment on November 10, 2021.  *See* ECF No. 34.  The Second Superseding Indictment omitted earlier language referring to the Vice President-elect but included no additional charges against Alberts.  *Id.*

## **ARGUMENT**

### I.    *Alberts's Claim of Selective Prosecution is Meritless.*

Alberts alleges the government selectively targeted him for prosecution based on his political beliefs.  He contends that the government failed to charge similar firearms offenses against a counter-protestor who was arrested after a traffic stop nearly two miles from the Capitol Building on January 6, 2021.  This allegation fails to establish selective prosecution and, accordingly, the motion should be denied.

---

[5] The MPD officers who arrested Alberts were different than the USCP officers he assaulted – while wearing a gas mask – on the Northwest Steps over five hours earlier, and were not aware of his earlier crimes.  It therefore is not "suspicious" that their arrest reports do not "mention being assaulted or referenc[e] Alberts assaulting officers" and that he was not immediately charged with the assaultive conduct.  ECF No. 66 at 2-3.

A.    **Legal Framework**

A "presumption of regularity supports … prosecutorial decisions" such that "in the absence of clear and convincing evidence to the contrary, courts presume that [the Attorney General and United States Attorneys] have properly discharged their official duties."  *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks and citations omitted).  This presumption exists because "the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985).  "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake."  *Id*.; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("[J]udicial authority is … at its most limited when reviewing the Executive's charging determinations" because "the Judiciary … generally is not competent to undertake that sort of inquiry.") (internal quotation marks and citations omitted).  The presumption of regularity "also stems from a concern not to unnecessarily impair the performance of a core executive function."  *Armstrong*, 517 U.S. at 465.

A claim of selective prosecution seeks to rebut this presumption by "assert[ing] that the prosecutor has brought the charge for reasons forbidden by the Constitution," *id*. at 463, "such as race, religion, or other arbitrary classification," *id*. at 464 (citation omitted).  That standard requires proof that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose."  *Wayte*, 470 U.S. at 608; *see also Armstrong*, 517 U.S. at 465.  "[T]he standard is a demanding one."  *Armstrong*, 517 U.S. at 463.  "[T]he D.C. Circuit has called for a two-pronged showing that: (1) the defendant was 'singled out for prosecution from among others similarly situated' and (2) 'the prosecution was improperly motivated *i.e.*, based on race, religion

6

or another arbitrary classification.'"  *United States v. Stone*, 394 F. Supp. 3d 1, 30 (D.D.C. 2019)

(quoting *Branch Ministries v. Rossoti*, 211 F.3d 137, 144 (D.C. Cir. 2000)).

      **B.**    **Alberts fails to proffer evidence on either selective-prosecution prong.**

     Alberts's motion fails each prong of the selective-prosecution inquiry.  It neglects to

identify any evidence (much less clear evidence) of discriminatory effect or purpose.

        **i.**    **Alberts fails to show that the government singled him out for prosecution.**

     With respect to *Armstrong*'s first prong, Alberts must adduce clear evidence that "there

exist persons who engaged in similar conduct and were not prosecuted."  *United States v. Blackley*,

986 F. Supp. 616, 618 (D.D.C. 1997).  An individual may be similarly situated if he "committed

the same basic crime in substantially the same manner as the defendant—so that any prosecution

of that individual would have the same deterrence value and would be related in the same way to

the Government's enforcement priorities and enforcement plan—and against whom the evidence

was as strong or stronger than that against the defendant."  *Stone*, 394 F. Supp. 3d at 31 (quoting

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)); *see also United States v. Lewis*, 517

F.3d 20, 27 (1st Cir. 2008) ("A similarly situated offender is one outside the protected class who

has committed roughly the same crime under roughly the same circumstances but against whom

the law has not been enforced.").

     Alberts fails this showing.  His sole example is from a newspaper article that describes a

woman who was pulled over in a January 6, 2021 traffic stop a few blocks north of the White

House,    just    under    two    miles    from    the    Capitol    Building.    *See*

*https://www.detroitnews.com/story/news/politics/2021/01/08/prosecutors-wont-proceed-charges-*

*against-michigan-woman-arrested-capitol-storming/6602945002/.*  According to the article, the

women was arrested and charged with carrying a pistol without a license, carrying unregistered

ammunition, and carrying a large-capacity ammunition feeding device.  *Id.*  However, according to the individual's father, the gun and ammunition did not belong to her and she did not know that they were in the vehicle's trunk.  *Id.*  The article reported that "[p]rosecutors decided for now not to proceed with charges" against her.  *Id.*

The individual described in the Detroit News article plainly is not "similarly situated" to Alberts.  As Judge Nichols observed in *Miller*, the circumstances of the sole proffered example and Alberts's violent conduct on January 6, 2021 "differ in kind and degree."  *United States v. Miller*, 1:21-cr-119 (D.D.C. Dec. 21, 2021), ECF No. 67 at 3.  The individual in the Detroit News article "did not target a proceeding prescribed by the Constitution and established to ensure a peaceful transition of power."  *Id.*  Unlike Alberts, she did not attack officers with a wooden pallet during a civil disturbance, assert that she was on Capitol grounds as part of a "duty to overthrow [the] government and reinstate a new government for the people," throw a water bottle, wear body armor and a gas mask, or even carry the firearm and ammunition on her person.  Indeed, according to the article, she did not participate in the siege of the Capitol and did not even know that the firearm and ammunition were in the car's trunk.  *Id.*  Unlike her, Alberts and the other "January 6 rioters attacked the Capitol in broad daylight" with "hundreds of legislators" and "[t]housands of congressional staffers" present.  *Judd*, 579 F. Supp. 3d at 7.  "Members of Congress cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters" who roamed the Capitol's corridors.  *Id.*

These numerous situational differences represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" in Alberts's case.  *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)); *see also Price v. U.S. Dep't of Justice*, 865 F.3d 676, 681 (D.C. Cir. 2017) (observing that a

prosecutor may legitimately consider "concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of a defendant's cooperation" in plea negotiations) (brackets and citation omitted).

After reviewing similar allegations of discriminatory effect in *Miller* and *Judd*,  Judges Nichols and McFadden held that the defendant had failed to show even an entitlement to discovery under *Armstrong*'s first prong.  Alberts's motion, which implicates *Armstrong*'s higher standard for dismissal, necessarily fails for the same reason.

> ii.    **Alberts fails to show that the government harbored an improper motive in prosecuting him.**

Even if Alberts could identify similarly situated individuals, he must also adduce clear evidence of a discriminatory purpose in the government's prosecution.  This second prong requires proof "that [his] prosecution was based upon an unlawful or arbitrary classification." *Stone*, 394 F. Supp. 3d at 35 (citing *Branch Ministries*, 211 F.3d at 144).  Alberts has failed to adduce any evidence that improper motives undergird his prosecution.

Alberts conclusorily alleges that the government made disparate prosecutorial decisions because it charged him, "a Republican and a Trump supporter," and did not prosecute the individual in the Detroit News story, purportedly "a leftist pro-Democrat, anti-Trump protestor." ECF No. 66 at 8.  But that comparison fails because Alberts "points to no evidence of discriminatory intent other than 'personal conclusions based on anecdotal evidence.'" *Miller*, slip op. 4.  The Detroit News article made no reference to the individual's political affiliation, much less establishes the government's awareness of it at the time the government declined to bring charges.  Moreover, the article identifies a permissible reason for the government's declination in that case: insufficient evidence that the individual knew the firearm and ammunition were in the trunk of the car she was driving.

9

The U.S. Attorney for the District of Columbia—as an officer of this Court—further represents that Alberts's political views played no role in his office's charging decisions in this case.  It was Alberts's conduct – not his views – that prompted his felony prosecution.

## II.    *Alberts's Claim of Vindictive Prosecution also Lacks Merit.*

Alberts's contention that the charges in the superseding indictment were brought as punishment for his refusal to enter a guilty plea fails on the facts and the law.  The grand jury returned the superseding indictment before Alberts was extended a plea offer, meaning that this charging decision could not have been a response to Alberts's decision.  In any event, Supreme Court precedent confirms that a prosecutor may bring additional charges after an individual rejects a plea agreement, even if those charges are more serious.

### A.    Legal Framework

"[T]he doctrine [of prosecutorial vindictiveness] precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution."  *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011) (citation omitted).  "A defendant may prove prosecutorial vindictiveness by submitting either (i) evidence of the prosecutor's actual vindictiveness or (ii) evidence sufficient to establish a realistic likelihood of vindictiveness, thereby raising a presumption the Government must rebut with objective evidence justifying its action."  *Id*.

The fact that the governments adds more charges after failed plea negotiations does not itself give rise to a vindictiveness presumption.  The Supreme Court has held that a defendant's indictment on more serious charges after failed plea negotiations does not violate due process.  In *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), the Court held that the Due Process Clause does not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional

charges against a defendant who refused to plead guilty to the offense with which he was originally charged. The Court reasoned that prosecutors enjoy wide discretion in bringing charges against a defendant, and that in the "give and take" of plea bargaining, there is no element of punishment or retaliation as long as the defendant is free to accept or reject the prosecutor's offer. 434 U.S. at 363. Similarly, in *United States v. Goodwin*, 457 U.S. 368 (1982), the Court held that a prosecutor's pretrial decision to bring a felony charge against a defendant who had rejected a guilty plea to a misdemeanor did not violate due process.

These decisions stem from the bedrock principle that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher*, 434 U.S. at 364; *see also Goodwin*, 457 U.S. at 382-383 ("*Bordenkircher* made clear that the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."); *United States v. Meyer*, 810 F.2d 1242, 1246 (D.C. Cir. 1987) ("[P]roof of a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption in the pretrial context.").

Even where a presumption of vindictiveness applies, the government can defeat it by producing "objective evidence" that its motivation in charging the defendant was lawful. *Safavian*, 649 F.3d at 694. That burden is "admittedly minimal—any objective evidence justifying the prosecutor's actions will suffice." *Id.* A proffer showing that after the initial charging decision, the government uncovered new evidence documenting the defendant's conduct—*e.g.*, additional criminal offenses or aggravating features of the offense previously charged—suffices. *See, e.g.*, *United States v. Meadows*, 867 F.3d 1305, 1315 (D.C. Cir. 2017) (observing that "the

government's evidence regarding the severity of Meadows' fraudulent conduct—which continued for approximately a year, involved two separate false filing schemes, and resulted in approximately 49 false claims—was sufficient to satisfy this court's admittedly minimal requirement of any objective evidence") (internal quotation marks and citations omitted).

**B.    The United States did not bring additional charges in response to Alberts's rejection of a plea agreement.**

Alberts has not established – and cannot establish – actual vindictiveness or a likelihood of vindictiveness, because his argument is based on a misunderstanding of the procedural history of this case.  The grand jury returned a superseding indictment in May 2021—one month *before* Alberts could have "indicated he would challenge the allegations" by rejecting the June 2021 plea offer.  ECF No. 66 at 5.  Alberts therefore cannot demonstrate that the government brought the additional criminal charges in response to his decision to reject the plea offer.

Alberts's claim of vindictive prosecution is factually impossible for two additional reasons. First, the June 2021 plea offer would have required Alberts to plead guilty to one of the offenses that was first charged in the Superseding Indictment.  Second, to the extent that Alberts contends that new charges were brought in contemplation of his motion to dismiss, that motion was drafted and filed in February 2022, nearly eight months after he was first charged with assaulting federal officers, and three months after the grand jury returned the operative indictment in this case.[6]

---

[6] It appears that Alberts mistakenly believes that the grand jury issued the first and second superseding indictments against him in 2022.  That is incorrect.  *See* ECF Nos. 14, 34.  In any case, there is nothing "mysterious" about the charges related to Alberts's assault on federal officers. Multiple open-source videos show the assault, during which Alberts was wearing a backpack with his name written on the back.  Alberts has publicly admitted that he was the individual captured on those videos.  https://www.redvoicemedia.com/2022/03/j6-medic-says-feds-killed-patriots-planted-pipe-bombs-biblical-floods-hit-vaxxed-australia/ (timestamp 11:07) ("they're showing two six-second videos of me on a staircase, and that's what they're using as evidence to supersede the indictment.")

Alberts cannot plausibly contend that he would not have been charged with his violent and assaultive conduct – including physically assaulting Capitol Police officers with a wooden pallet during a civil disorder – but for the refusal to plead guilty to the four offenses charged in his initial indictment.

### C.      Supreme Court precedent forecloses Alberts's due process claims.

It is well-settled that a prosecutorial decision to increase charges after a defendant has exercised a legal right does not alone give rise to a presumption of vindictiveness in the pretrial context.  *See Meyer*, 810 F.2d at 1246.  The Supreme Court has explained that a defendant's indictment on more serious charges after failed plea negotiations does not violate due process.  *Bordenkircher,* 434 U.S. at 363.   Vindictiveness is *not* presumed by the simple fact of seeking a superseding indictment after the rejection of a plea offer, even where the prosecution has knowledge of the facts essential to the more serious charge at the time of indictment.  *See Goodwin*, 457 U.S. at 370.  As the Supreme Court explained,

> An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution.  For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded.

*Id.* at 379.   Indeed, to show vindictiveness in a pretrial posture, a defendant "must point to something more than routine invocations of procedural rights, such as declining a plea offer." *United States v. Michel*, No. 1:19-cr-148 (CKK), 2022 WL 4182342, at *8 (D.D.C. Sept. 13, 2022) (quoting *Meyer*, 810 F.2d at 1247) (cleaned up).  The cases cited by Alberts, which largely relate to increased charges after a defendant successfully challenged his conviction, are inapposite.  Thus, Alberts cannot establish a due process violation even if the government had added new charges in response to his decision to reject a plea offer (which, again, is factually impossible here).

13

Moreover, the United States may lawfully seek to supersede the indictment for a third time – and reserves the right to do so – if it determines that the evidence it has obtained in its investigation of Alberts establishes probable cause for additional charges, including violations of 18 U.S.C. §§ 1512(c)(2) and 2.  *See United States v. Reffitt*, No. 1:21-cr-32 (DLF), 2022 WL 1404247, at *3-*4 (D.D.C. May 4, 2022) (finding sufficient evidence to support conviction under § 1512(c)(2) and 2 for an armed individual near Alberts on January 6, 2021 who ascended the Northwest Steps and appeared to lead the crowd that assaulted and eventually overcame officers). A prosecutor "remain[s] free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382.  Accordingly, Alberts's baseless claim of vindictive prosecution should be rejected.

## **CONCLUSION**

Because Alberts has failed to establish either selective or vindictive prosecution, the Court should deny his motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney, Tax Division,
U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55, Washington, D.C.  20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov