UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Case No.:  21-CR-026 (CRC)

UNITED STATES OF AMERICA,

 Plaintiff,

v.                                                                          Case No.  21-cr-026 (CRC)

CHRISTOPHER MICHAEL ALBERTS

Defendant.

_____/

DEFENDANT ALBERT'S MOTION TO SUPPRESS EVIDENCE

**Request for Evidentiary and Demonstrative Hearing**

COMES NOW, Defendant, CHRISTOPHER MICHAEL ALBERTS, (hereinafter, "Defendant" or "Alberts"), by and through undersigned counsel, with this Motion to suppress evidence seized unlawfully and unconstitutionally, in violation of the Fourth Amendment, on the evening of January 6, 2021.

A black 9mm Taurus G2c semiautomatic handgun and ammunition were allegedly seized after a search of Alberts' person without probable cause or reasonable suspicion—just prior to the announcement of a curfew on Jan. 6.  In addition, the search was conducted with excessive force (including potentially deadly force): a savage, brutal, unannounced, unprovoked baton blow to the back of Alberts' head.

BACKGROUND

On January 6, 2021, defendant Christopher Alberts participated in protest activities outside the U.S. Capitol in support of a fair congressional investigation into 2020 election improprieties. As the sun went down, various law enforcement agencies began threatening, pushing and manhandling protestors in alleged advance of a "curfew" announcement at the Capitol. (Although in the aftermath there have been some statements by officers stating a "curfew" was already in place at the time of their search of Alberts, videos show the encounter occurred in a 'pre-curfew' setting when officers were herding protestors away and threatening a curfew.)

**I.   Grand Jury testimony says falsely that the curfew warning had been called. But video of the incident shows otherwise.**

At the foundation of the government's basis for searching Alberts is the notion that officers were enforcing a curfew and Alberts was inside the purported curfew zone. Officer testimony at grand jury hearings contains these false assertions. Videos recorded at the time indicate Metropolitan Police Officers were getting aggressive with protestors and pushing protestors outward away from the Capitol using an advancing skirmish-line formation.

The legality and constitutionality of ad hoc "curfew" declarations by law enforcement officers on the ground can be debated. But <u>no curfew had been</u>

declared at the time of officers' attack and search of Alberts. Indeed, D.C. Metropolitan Police Supervisor Edwards can clearly be heard after Alberts' arrest stating "we haven't given the warning yet." This fact is significant because Alberts was not suspected of violating the law at the time of the search. Alberts was moving outward away from the Capitol along with hundreds of others. "The grounds for a stop must exist at the time of the seizure." *United States v. Simmons*, 560 F.3d 98, 107 (2d Cir. 2009); see also *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991).

Demonstrators' Fourth Amendment rights are violated where police conduct mass arrests based on acts of vandalism by a few unidentified demonstrators but fail to first issue an order to disperse and then provide reasonable period of time to comply. *Carr v. District of Columbia*, 561 F. Supp. 2d 7 (D.D.C. 2008). Failure to observe notice and opportunity requirements results in lack of probable cause. Id.

## II. Inconsistencies in Officers' Statements Regarding the Search Justify Presumption that the Search was Unlawful.

Significantly, the arresting officer changed his story about the search of Alberts between the time of the arrest and the grand jury testimony. The original Statement of Facts (ECF #1-1), written and filed soon after the search, says:

> At approximately 1925 hours (7:25p.m.), I was assisting escorting individuals past an MPD line when I noticed a man, later identified by his Maryland driver's license as CHRISTOPHER ALBERTS, to be slow in responding to orders to leave the premises. As I

> approached ALBERTS from his rear, I noticed a bulge on ALBERTS' right hip. Based on my training and experience, I recognized the bulge was consistent with that of a hand gun. While pushing ALBERTS towards the line, I tapped the bulge with my baton and felt a hard object that I immediately recognized to be a firearm.

Government's Statement of Facts, (ECF 1) pp. 1-2 (written by Officer Dallan Haynes, MPD).

Thus, plainly, the arresting (and searching) officer originally based his search on "noticing" a "bulge" on Alberts' right hip.  These were the very words written and signed by Officer Haynes.

As a preliminary matter, "bulges" on hips of Jan. 6 participants seem to have been ubiquitous.  Any photo or video of crowds on that date shows that many or most Jan. 6 attendees had "bulges" in their jackets or on their hips, with wallets, extra clothing, gloves, camera or phone equipment, or other objects or provisions. A "bulge"—even one that an officer claims was "consistent with that of a hand gun"—cannot constitute grounds for a pat-down where so many people fit this description for it to justify a reasonable suspicion of criminal activity. See *United States v. Crawford*, 891 F.2d 680, 682 (8th Cir. 1989) (overturning conviction where search was based on appearance and "conduct typical of countless innocent people").

Obviously, soon after writing his report on Jan. 7, 2021, Officer Haynes recognized that his search and seizure of Alberts on Jan. 6 was illegal. And therefore, Officer Haynes <u>changed his story</u> between Jan. 7 and Jan. 11.

**III.   Seeing "a bulge" on a hip or jacket pocket—without more—does not constitute probable cause or reasonable grounds for a search of the person.**

There are dozens or perhaps hundreds of published cases invalidating searches and seizures based on officers seeing "bulges" in people's pockets, jackets, shirts, or hips . See, e.g., *United States v. Mabry*, 997 F.3d 1239, 1245 (D.C.Cir. 2021) (reversing conviction and suppressing evidence where "the officer noticed one of the coats had a "bulge coming from one of [its] pockets" and then persistently questioned defendant until defendant submitted); *United States v. Jones*, 254 F.3d 692, 697-98 (8th Cir. 2001) (holding that where defendant's conduct—walking around a phone bank, looking behind him, and traveling without luggage from Los Angeles—were not sufficiently suggestive of crime to amount to reasonable suspicion, the officer's touching a bulge on a defendant's person during a consensual search did not provide probable cause for an arrest where the defendant had explained that the bulge was from recent surgery); *United States v. Eustaquio*, 198 F.3d 1068, 1070 (8th Cir.1999) (holding that touching a bulge in the defendant's clothing without consent, and in the absence of reasonable suspicion, violated the defendant's Fourth Amendment rights); *United States v. Tovar-*

*Valdivia*, 193 F.3d 1025, 1026-27 (8th Cir. 1999) (overturning conviction where arresting officer's Terry stop to determine whether "bulges" on the side of defendant's torso were weapons, did not provide a reasonable belief that defendant had committed or was committing an offense); *United States v. Hiruko*, 4320 F. Supp. 2d 26 (E.D.N.Y. 2004) (invalidating search based on "bulge" in a defendant's pockets where officer gave inconsistent statements).

    **IV.**    **Although there are cases upholding pat downs and searches based on "bulges" in clothing, these cases uniformly hold that a "bulge" in clothing is merely one factor.  In the search of Alberts, there were no <u>other</u> factors.**

To be sure, a bulge observed during the course of an encounter between a police officer and a suspect may, in some circumstances, justify a Terry frisk for weapons. *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977).  But cases upholding pat down searches based partially on "bulges" in clothing do so only where a bulge is seen in combination with other factors.  See, e.g., *United States v. Roggeman*, 279 F.3d 573, 577, 579 (8th Cir. 2002) (noting that a bulge is a substantial factor in justifying a protective search).  But in Alberts' case, the officer's claims of seeing a bulge on Albert's hip (later changed to a story of seeing "bullets" on Albert's hip) was the sole basis for the officer tapping his baton against Alberts and then brutally meating Alberts to the ground.

There are cases upholding searches and seizures where officers noticed bulges in people's clothing and then obtained consent to search or pat down those people. *United States v. Mendoza-Cepeda*, 250 F.3d 626, 629 (8th Cir. 2001) (holding that a pat down of a defendant's torso was valid because the defendant knowingly and voluntarily consented); *United States v. Favela*, 247 F.3d 838, 840 (8th Cir. 2001) (finding probable cause to arrest when, as part of a consensual encounter, the defendant offered no explanation for a suspicious bulge under a loose fitting shirt).

But Alberts' case is not such a case. Alberts did not consent to a search or pat down. Officers simply beat Alberts to the ground by means of unannounced, unprovoked blow with a weapon to the back of Alberts' head. Nor did officers question Alberts about any bulge in Alberts' clothing or on his hip. They simply tapped his clothing with a stick and then beat Alberts to the ground, where they then performed an unlawful search of Alberts.

**V. The arresting officer changed his story on Jan. 11, 2021 when he testified before the grand jury that he saw "bullets" on Alberts.**

In any case, the searching officer fundamentally changed his story—from seeing a "bulge," to seeing "bullets"—at the Jan. 11 grand jury hearing.

After arresting Alberts and writing and signing a statement of facts saying that he "noticed a bulge on ALBERTS' right hip," (ECF #1-1, pp. 1-2), Officer

Haynes altered his story. When Officer Haynes testified before the grand jury on Jan. 11, 2021, Haynes testified that he saw "bullets" on Alberts' right hip.

> Q. Did he have a gas mask attached to his backpack?
> A. He did.
> Q. What led you to believe that the defendant was carrying a firearm?
> A. As we began to push the people out, I sighted bullets on his right hip.
> Q. And what did you do after you noticed the bullets on his right hip?
> A. I moved in behind him and went to nudge him with my -- what we call baton, our big stick, and I nudged him and, while nudging him, I tapped that bulge with the end of my baton.
> Q. And what did you notice when you tapped it?
> A. I felt resistance and heard a (thumping sound), you know, a tap noise.
> Q. And based on your training and experience as a law enforcement officer, was that consistent with what you expected to be a firearm?
> A. Yes.

Grand Jury transcript of Haynes, page 8 (Jan. 11, 2021).

Of course the obvious purpose of Haynes' change of testimony was to try to trick this Court into upholding this unlawful search and seizure. The seizure of an item whose identity is already known (such as "bullets") occasions no further invasion of privacy. See *Soldal v. Cook County*, 506 U.S. 56, 66 (1992); *United States v. Jacobsen*, 466 U.S. 109, 120 (1984).

**VI.    The search and seizure of Alberts was conducted with excessive force**

Claims that law enforcement officials have used excessive force during an arrest, investigatory stop, or other seizure of a person are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). The Fourth Amendment's safeguard from "unreasonable searches and seizures" is supplemented by the judicially-created exclusionary rule, which is meant to act as a "deterrent sanction that bars the prosecution from introducing evidence by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231-32 (2011).

> This is not to say that the Fourth Amendment speaks not at all to the manner of executing a search warrant. The general touchstone of reasonableness which governs Fourth Amendment analysis, see *Pennsylvania v. Mimms*, 434 U.S. 106, 108-109 (1977)(per curiam), governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search not subject to suppression.

*United States v. Ramirez*, 523 U.S. 65, 71 (1998).

If Officer Haynes suspected a bulge on Alberts' person might conceal a weapon, Officer Haynes could have stopped and questioned Alberts. If Alberts provided suspicious answers, Officer could have patted Alberts down or followed up with further investigative techniques. But Officer Haynes attacked Alberts from behind, violently striking Alberts on the head with a baton.

Such excessive force constitutes further unreasonableness, in violation of the Fourth Amendment. See *United States v. Edwards*, 666 F.3d 877, 887 (4th Cir. 2011) (vacating a district court's refusal to suppress evidence obtained through an unreasonable strip search of the defendant); *Correa v. Simone*, 528 Fed. App'x 531, 535 (6th Cir. 2013) ("[A] plaintiffs' right to be free from a taser shock is clearly established where they have done nothing to resist arrest or are already detained.")

## EXCLUSION IS THE APPROPRIATE REMEDY

Courts suppress evidence seized in violation of *Terry* and its progeny, even in potentially hazardous encounters such as roadside and on-the-street confrontations. See, e.g., *United States v. Cole*, 628 F.2d 897, 899 (5th Cir. 1980), cert. denied, 450 U.S. 1043 (1981) (suppressing the discovery of a pistol following patdown search because there was no proof that the suspect might be armed and dangerous); *United States v. McQuagge*, 787 F. Supp. 637, 653 (E.D. Tex. 1991) (suppressing physical evidence, including firearms, where "there is no evidence in the record . . . that the law enforcement officers who made the arrest reasonably believed the defendants were dangerous when they were stopped"); *Harris v. State*, 827 S.W.2d 49 (Tex. App.--Houston [1st Dist.] 1992) (suppressing crack cocaine because the frisking officer relied upon unparticularized hunches, not an articulated and individualized suspicion that the suspect was armed).

In Alberts' case, the bedrock principles behind the exclusionary rule plainly apply. Exclusion is a deterrent which keeps other law enforcement officers from conducting themselves similarly.

The United States Supreme Court has upheld the suppression of contraband discovered similarly during an unjustified patdown search in *Ybarra v. Illinois*, 444 U.S. 85 (1979). In Ybarra, officers had a warrant to search a bar and its bartender for heroin. The officers also conducted a patdown search of Ybarra, a bar patron, despite the fact that Ybarra had made no gestures suggesting criminal conduct, no attempts to conceal contraband, and no suspicious statements. The Court held that the patdown of Ybarra was invalid because "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. at 91 (citing Sibron v. State of New York, 392 U.S. 40, 62-63 (1968)).

Judge Bazelon made the same observations in 1977:

> The present case concerns police misconduct in the handling of mass demonstrations; here, there is likely to be a chilling effect on individuals' protest activities unless the police are restrained from similar misconduct in the future. Illegal arrests and excessive force may deter peaceful and law-abiding citizens from exercising their first amendment rights, especially if they cannot be confident that they will be given a chance to disperse before mass arrests and police beatings take place. For those who are not deterred and are unlawfully arrested, the opportunity for speech will have been lost, sometimes irretrievably, even though prosecutions are later

> dismissed, arrest records are expunged and individual damage actions are successful. It is these evils that have led the Supreme Court consistently to condemn prior restraints in other forms and contexts. See *New York Times Co. v. United States*, 403 U.S. 713 (1971).

*Washington Mobilization Committee v. Cullinane*, 566 F.2d 107, 127-28 (D.C. Cir. 1977) (Bazelon, C.J.).

## **CONCLUSION**

Defendant Alberts was lawfully leaving the relatively chaotic atmosphere of the Capitol grounds on Jan. 6, 2021, when he was brutally bludgeoned on the head by Officer Haynes. At no time did Haynes or any other officer question Alberts or articulate any suspicion that Alberts was carrying a gun or other contraband. After Alberts was stunned on the ground, officers frisked him, claiming they found a semiautomatic handgun and ammunition.

For the reasons stated above, Alberts asks for suppression of the gun and ammunition, on Fourth Amendment grounds.

REQUEST FOR EVIDENTIARY HEARING, WITH COURTROOM DEMONSTRATION OF ALBERTS' CLOTHING, JACKET(S) AND THE SEIZED ITEMS

WHEREFORE, Defendant prays for an order scheduling a suppression hearing in which the arresting officer will be examined and where the alleged gun, holster, ammunition and other gear will be brought to the Court. Defendant anticipates demonstrating that Alberts' jacket and clothing, worn by Alberts on

Jan. 6, could not have shown or exposed any "bulge" which might be readily perceived as a handgun.

And, for all the reasons described above, this Court should SUPPRESS and EXCLUDE from evidence all fruits of the unlawful search, as well as all testimony regarding the search and seizure.

Dated: November 10, 2022

                                              Respectfully submitted,
                                              /s/ John M. Pierce

                                              John M. Pierce
                                              John Pierce Law, P.C.
                                              21550 Oxnard Street,
                                              3rd Floor, PMB 172
                                              Woodland Hills, CA 91367
                                              Tel: (213) 279-7846
                                              **jpierce@johnpiercelaw.com**
                                              **Attorney for Defendant**

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 10, 2022, this motion and the accompany declaration was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

/s/ John M. Pierce
John M. Pierce