**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**,

v.

**CHRISTOPHER ALBERTS**,

Defendant.

Case No. 21-cr-26 (CRC)

## MEMORANDUM OPINION AND ORDER

Defendant Christopher Alberts awaits a February 2023 trial on ten charges stemming from his conduct on the grounds of the U.S. Capitol on January 6, 2021.  Five of the counts relate to Alberts's alleged possession of a 9mm semi-automatic pistol and two high-capacity ammunition magazines.  The other five arise from his alleged assault of law enforcement officers.  Alberts has moved to dismiss all counts on a host of grounds.  He contends that all the charged firearm violations were invalidated by the Supreme Court's recent ruling in N.Y. State Rifle & Pistol Ass'n v. Bruen, which struck down New York State's concealed-carry licensing law under the Second Amendment.  142 S. Ct. 2111 (2022).  He asserts that the assault-related charges must yield because he was engaging in First Amendment-protected activity while at the Capitol on January 6.  He maintains that several of the charges fail to state an offense or are based on unconstitutionally vague statutory provisions.  And he claims the government has engaged in misconduct before the grand jury and in discovery, as well as vindictive and selective prosecution.

The Court will deny Alberts's motions to dismiss in all respects except one.  Count ten of the operative indictment charges him with violating Title 7, Section 2506.01(b) of the D.C.

Code,[1] which prohibits the possession of large-capacity ammunition feeding devices.  While Bruen did not involve that type of device, its approach to deciding whether possession of a particular weapon deserves Second Amendment protection raises questions about the constitutionality of § 2506.01(b).  Because the current briefing does not adequately grapple with those questions, the Court will reserve judgment on Alberts's motion to dismiss count ten pending further briefing by the parties.

**I.    Background**

The Court assumes familiarity with the breach of the U.S. Capitol on January 6, 2021 and the resulting suspension of the joint session of Congress which convened that day to certify the Electoral College vote for the 2020 presidential election.  As relevant here, around 7:20 that evening law enforcement officers began arresting the remaining demonstrators outside the Capitol who still refused orders to leave the premises.  Statement of Facts at 1–2.[2]  One of those demonstrators was Mr. Alberts, who was sporting a bullet-proof vest and was slow in responding to officers' directives.  Id.  Noticing a bulge on Alberts's right hip, one of the officers tapped the area with his baton and discerned a hard object that he recognized as a firearm.  Id. at 2.  Alberts attempted to flee but was apprehended by multiple officers.  Id.  The officers recovered a loaded 9mm pistol equipped with a twelve-round capacity magazine from Alberts's right hip, and a second, similar magazine from his left hip.  Id.  Officers also seized a gas mask and Alberts's bookbag, which contained a pocketknife, a first-aid kit, and a packaged military "meal ready to eat."  Id.

---

[1] The indictment appears to erroneously locate the offense in Title 22 of the D.C. Code.

[2] The Court draws this factual background from the Statement of Facts supporting the initial criminal complaint.  See ECF No. 1–1.  The Court recognizes that Mr. Alberts may dispute some of these facts.

On January 27, 2021, a grand jury returned a four-count indictment against Mr. Alberts.

Indictment, ECF No. 7.  A few months later, on May 14, 2021, the government obtained a ten-

count superseding indictment, which adjusted one of the counts and added six additional ones

relating to Alberts's alleged assault of, and interference with, law enforcement officers and his

possession of the pistol and ammunition magazines.  First Superseding Indictment, ECF No. 14.

Finally, on November 10, 2021, the grand jury returned the second superseding indictment,

retaining the same counts from the prior indictment, with minor edits.  Second Superseding

Indictment, ECF No. 34.  The counts in this operative indictment are as follows:

- Count 1:  Civil disorder in violation of 18 U.S.C. § 231(a)(3).

- Count 2:  Assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1).

- Count 3:  Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon in violation of 18 U.S.C. §§ 1752(a)(1), 1752(b)(1)(A).

- Count 4:  Disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon in violation of 18 U.S.C. §§ 1752(a)(2), 1752(b)(1)(A).

- Count 5:  Engaging in physical violence in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(4).

- Count 6:  Unlawful possession of a firearm on Capitol grounds or buildings in violation of 40 U.S.C. § 5104(e)(1)(A)(i).

- Count 7:  Disorderly conduct in a Capitol building in violation of 40 U.S.C. § 5104(e)(2)(D).

- Count 8:  Act of physical violence in the Capitol grounds or buildings in violation of 40 U.S.C. § 5104(e)(2)(F).

- Count 9:  Carrying a pistol without a license (outside the home or place of business) in violation of D.C. Code § 22-4504(a).

- Count 10:  Possession of a large capacity ammunition feeding device in violation of D.C. Code § 7-2506.01(b).

Alberts initially moved to dismiss the first four-count indictment.  See generally Mot. Dismiss, ECF No. 40.  After a change in counsel, he now seeks dismissal of all ten counts. Reply Mot. Dismiss, ECF No. 65; Mot. Dismiss for Vindictive and Selective Prosecution ("Second Mot. Dismiss"), ECF No. 66.  The government opposes both motions.  See generally Opp'n Mot. Dismiss, ECF No. 52; Surreply Mot. Dismiss, ECF No. 68; Opp'n Second Mot. Dismiss, ECF No. 69.  Alberts's trial is scheduled for February 6, 2023.

## II.   Legal Standards

A criminal defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Pretrial motions may challenge "a defect in the indictment," including "lack of specificity" and "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(iii), (v).  Because pretrial dismissal of an indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances."  United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (quoting Whitehouse v. U.S. Dist. Ct., 53 F.3d 1349, 1360 (1st Cir. 1995)).  An indictment requires only "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), in order "to inform the defendant of the nature of the accusation against him."  Ballestas, 795 F.3d at 148–49 (quoting United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001)).  The Court "assumes the truth of those factual allegations."  Id. at 149.  "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (citing United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011)).

### III.   Analysis

Alberts challenges all ten counts of the indictment.  For the reasons summarized below, the Court will deny Alberts's motions to dismiss except as to count ten charging him with violating the D.C. Code provision prohibiting possession of high-capacity ammunition magazines.

#### A.  The firearm-related charges

Alberts is charged with five firearm-related crimes.  The charges fall into two categories: (1) alleged violations of federal laws restricting firearms in "restricted buildings or grounds" or on Capitol grounds specifically (counts three, four, and six); and (2) alleged violations of the District of Columbia's prohibitions against carrying an unlicensed pistol and possessing a high-capacity ammunition magazine (counts nine and ten).  Alberts challenges all five counts on the grounds that the statutes violate his Second Amendment "right to carry a handgun outside the home for self-defense"—as recently affirmed by the Supreme Court in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022).  Mot. Dismiss at 7; Reply Mot. Dismiss at 2 (cleaned up).  Except potentially for D.C.'s ban on high-capacity magazines, neither the Second Amendment nor Bruen shields Alberts from criminal liability for violating the charged statutes.

We begin with the federal statutes.  Counts three and four charge Alberts under 18 U.S.C. § 1752(b)(1)(A), which enhances the punishment for engaging in certain prohibited conduct in a restricted building or grounds while carrying a firearm or other deadly or dangerous weapon. The prohibited conduct underlying count three is entering or remaining in a restricted area, see § 1752(a)(1), while the conduct giving rise to count four is disorderly and disruptive conduct in a restricted area, see § 1752(a)(2).  As relevant here, a "restricted building or grounds" under § 1752 refers to "any posted, cordoned off, or otherwise restricted area . . . of a building or

grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."[3]  Count six, meanwhile, charges a violation of 40 U.S.C. § 5104(e)(1)(A)(i), which makes it unlawful to carry a firearm or have one readily accessible on the Capitol grounds or in its buildings.  Bruen does not undermine the constitutionally of these statutes.  To the contrary, Bruen affirmed that regulations prohibiting the carrying of firearms in "sensitive places" such as "legislative assemblies, polling places, and courthouses" are constitutionally permissible.  142 S. Ct. at 2133–34; see also id. at 2162 (noting that Bruen should not "cast doubt" on "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" (Kavanaugh, J., concurring)).  Surely restricted areas where the President or other Secret Service protectees are visiting, and areas of the Capitol within range of lawmakers, qualify as "sensitive places."

Because Bruen did not affect laws restricting firearms in sensitive places, this Court remains bound by the D.C. Circuit's holding in United States v. Class, which rejected an as-applied Second Amendment challenge to § 5104(e).  930 F.3d 460, 463 (D.C. Cir. 2019) (noting that Heller I characterized firearm prohibitions in sensitive places as "presumptively lawful" and categorizing a parking lot on Capitol grounds as a sensitive place (quoting District of Columbia v. Heller (Heller I), 554 U.S. 570, 626, 627 n.26 (2008)).  Accordingly, the laws underlying counts three, four, and six do not violate the Second Amendment.

Moving to the two District of Columbia laws at issue, the Court starts with count nine, which charges Alberts with carrying a pistol without a license in violation of D.C. Code § 22–4504(a).  Reiterating that the Second Amendment protects his ability to carry a pistol outside the

---

[3] The term "restricted building or grounds" also has other definitions under § 1752 that are not at issue here.

home, Alberts contends that the New York law struck down in <u>Bruen</u> is "in essence" identical to the D.C. statute he is charged under.  Reply Mot. Dismiss at 2–3.  Not so.  <u>Bruen</u> involved a challenge to New York's "may issue" licensing law, a regime which gave authorities "discretion to deny licenses based on a perceived lack of need or suitability."  142 S. Ct. at 2123–24.  While D.C. once had a "may issue" licensing law on the books, it has been permanently enjoined since 2017 and is not at issue here.  <u>Id.</u> at 2124.  <u>Bruen</u> left intact the "shall issue" licensing regimes existing in 43 states—where officials lack discretion to deny licenses if certain requirements are met—and does not "prohibit States from imposing licensing requirements for carrying a handgun for self-defense."  <u>Id.</u> at 2161 (Kavanaugh, J., concurring).  The D.C. Circuit, moreover, has noted that licensing requirements have been a longstanding limitation on the right to carry a handgun.  <u>Wrenn v. District of Columbia</u>, 864 F.3d 650, 667 (D.C. Cir. 2017).  As a result, <u>Bruen</u> does not require dismissal of count nine.

Count ten, alleging a violation of D.C. Code § 7–2506.01(b)'s prohibition against possessing a large-capacity ammunition device, presents a more difficult question.  In <u>Heller v. District of Columbia</u>, 670 F.3d 1244 (D.C. Cir. 2011) ("<u>Heller II</u>"), the D.C. Circuit upheld the District's high-capacity magazine ban against a facial Second Amendment challenge.  In doing so, it applied the two-step framework that was widely used in the circuits to evaluate firearms restrictions under the Second Amendment.  At step one, the court assumed, without deciding, that the ban on large-capacity magazines impinged upon the right protected by the Second Amendment.  <u>Id.</u> at 1261.  Based on the record before it, the court could not "be certain whether [large-capacity magazines] are commonly used or are useful specifically for self-defense or hunting" and thus could not decide whether the ban affected the right to keep and bear arms.  <u>Id.</u> The court proceeded to uphold the ban at step two.  Applying intermediate scrutiny, the court

found that the dangers that large-capacity magazines "tend to pose . . . to innocent people and particularly to police officers" (which was established by record evidence before the court) supported the District's position that the regulation promoted an important government interest. Id. at 1263–64.

In Bruen, the Supreme Court rejected the two-step analysis employed in Heller II.  In its place, the Court announced a new test involving just one step.  Now, courts must assess the constitutionality of firearm restrictions based solely on whether the regulation is consistent with the text of the Second Amendment and "the historical tradition that delimits the outer bounds of the right to keep and bear arms."  142 S. Ct. at 2127.  Regulations that prohibit possession of firearms that are in common use for self-defense are presumptively unconstitutional.  Id. at 2135, 2143.  But those having a "representative historical analogue" pass muster, including bans on carrying guns in "sensitive places such as schools and government buildings," and prohibitions against "dangerous and unusual weapons."  Id. at 2133–34, 2143.

Bruen did not discuss high-capacity magazines.  But its rejection of the two-step approach to assessing the constitutionality of firearm prohibitions calls into question whether Heller II's holding as to D.C.'s large-capacity magazine ban is still binding on this Court.  See Payne v. Biden, No. CV 21-3077 (JEB), 2022 WL 1500563, at *7 (D.D.C. May 12, 2022) (observing that a precedent may be "effectively overruled" if a later Supreme Court decision "eviscerates" its reasoning).  Indeed, the Supreme Court recently vacated and remanded for further consideration in light of Bruen an en banc Ninth Circuit ruling upholding California's ban on high-capacity magazines.  See Duncan v. Bonta, 142 S. Ct. 2895 (2022).

The parties' briefing does not fully address the status of § 7–2506.01(b) post-Bruen.  Accordingly, the Court will reserve judgment on Alberts's motion to dismiss count ten and order

supplemental briefing on the issue.  The parties should address the following non-exhaustive list of questions in their briefs:

- Is <u>Heller II</u>'s holding regarding D.C. Code § 7–2506.01(b) still binding on this Court?

- If not, could the Court nevertheless uphold the statute based on the evidence credited by the <u>Heller II</u> court at step two of the then-prevailing analysis—namely, evidence demonstrating "that high-capacity magazines are dangerous in self-defense situations" and "tend to pose a danger to innocent people and particularly to police officers[?]"  670 F.3d at 1263–64.

- If <u>Heller II</u> does not provide a sufficient basis for the Court to uphold § 7–2506.01(b), how should the Court go about developing an adequate factual record to conduct the type of textual and historical inquiry that is now required under <u>Bruen</u>, and could the Court develop such a record prior to the February trial?

- Who bears the burden to establish the constitutionality (or unconstitutionality) of a statute under the Second Amendment on a motion to dismiss a criminal charge?

- Given the potential difficulties in developing an adequate factual record and fully litigating this issue prior to the scheduled trial, does the government still intend to proceed with count ten?

Given the approaching February trial date, the Court will order the government to file its brief by December 7 and the defense to file a response by December 14.

B. <u>First Amendment</u>

Next, Alberts contends that prosecuting him under the statutes underlying counts one, two, five, seven, and eight violates the First Amendment because he "had a constitutional right to protest regarding his perceptions of unfair election tabulation."  Reply Mot. Dismiss at 5–6. Because the "U.S. Capitol must be [] accessible to the citizenry," his argument goes, it is "perhaps the place in America where government has the least authority to restrict citizen presence, petitioning, demonstrating, and activism."  <u>Id.</u> at 5 (cleaned up).  This argument fails.

To prevail on an as-applied First Amendment challenge, a defendant would need to show that "the statute is unconstitutional as applied to their particular expressive activity."  <u>United</u>

States v. Bingert, No. 1:21-CR-91-RCL, 2022 WL 1659163, at *13 (D.D.C. May 25, 2022)

(cleaned up).  Alberts is charged with the crimes listed in all of the challenged counts because on

January 6 he allegedly committed acts of violence and fled from law enforcement with an

unlicensed, concealed firearm.  Statement Facts at 2; Second Superseding Indictment.  These

actions are "plainly not expressive conduct."  Bingert, 2022 WL 1659163, at *13 (rejecting First

Amendment challenge in January 6 case because actions that culminated in "grabbing a

barricade on Capitol grounds and pushing it into officers to gain further access to restricted

grounds" did not constitute expressive conduct).  The First Amendment does not immunize a

defendant engaging in physical violence and destructive acts.  United States v. Gregg, 226 F.3d

253, 267–68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the

First Amendment, whether or not such conduct communicates a message.").  The "mere fact"

that Alberts was on restricted grounds to protest the 2020 election does not make his conduct

expressive.  Bingert, 2022 WL 1659163, at *14 ("Where demonstrations turn violent, they lose

their protected quality as expression under the First Amendment." (cleaned up) (quoting Grayned

v. City of Rockford, 408 U.S. 104, 116 (1972))).  Alberts's conduct on January 6, to the extent it

violated any of the charged statutes, is therefore not protected by the First Amendment.

     C.   The Second Superseding Indictment Does Not Fail to State a Claim

     In his first motion to dismiss, Alberts contends that two of the counts in the initial

indictment fail to state a claim.[4]  An indictment can be dismissed for "failure to state an offense."

Fed. R. Crim. P. 12(b)(3)(B)(v).  To properly state a claim, an indictment should "contain a

plain, concise, and definite written statement of the essential facts constituting the offense

---

[4] These two counts from the initial four-count indictment remain unchanged in the second
superseding indictment (count one is now labeled as count six and count four is now count ten).
In this section, the Court will refer to the counts as listed in the second superseding indictment.

charged." United States v. Puma, No. CR 21-0454 (PLF), 2022 WL 823079, at *4 (D.D.C. Mar.

19, 2022) (cleaned up).  An indictment is generally sufficient if it "echoes the operative statutory

text while also specifying the time and place of the offense."  United States v. Nassif, No. CR

21-421 (JDB), 2022 WL 4130841, at *7 (D.D.C. Sept. 12, 2022) (quoting United States v.

Williamson, 903 F.3d 124, 130 (D.C. Cir. 2018)).  Dismissal is generally only granted in unusual

circumstances—if courts dismiss a charge, they "directly encroach[] upon the fundamental role

of the grand jury."  United States v. McHugh, No. CR 21-453 (JDB), 2022 WL 1302880, at *2

(D.D.C. May 2, 2022) (quoting United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015)).

Because the indictment's description of the two challenged counts closely tracks the underlying

statutes and specifies the time and place of the offense, it provides Alberts sufficient notice of the

elements of the offenses charged.

Alberts first challenges count six, claiming it lacks sufficient factual allegations to show

that his offense occurred "on the United States Capitol Grounds and in any of the Capitol

buildings."  Mot. Dismiss at 8.  The indictment's language mirrors the text of the relevant

statutory provision and specifically notes that Alberts's conduct occurred "on the United States

Capitol Grounds and in any of the Capitol Buildings."  At this stage, the government need not

pinpoint the exact location within the Capitol complex where the offensive conduct occurred; it

is sufficient that the indictment locate the conduct in the proscribed area.  Nor does the

indictment have to allege that Alberts "was not authorized by the Capitol Police Board" to be in

the Capitol.  See 40 U.S.C. § 5104(e)(1)(A)(i) (exempting from liability those "authorized by

regulations prescribed by the Capitol Police Board").  The indictment as written "fairly informs

[Alberts] of the charge against which he must defend."  United States v. Weeks, No. 21-CR-

00247 (TFH), 2022 WL 9296415, at *2 (D.D.C. Oct. 14, 2022).

Next, Alberts moves to dismiss count ten, which charges illegal possession of a large-capacity magazine, on the ground that the charge does not "state the quantity or capacity of the alleged magazine or 'feeding device.'" Mot. Dismiss at 11. But like the counts discussed above, count ten echoes the statutory text, putting Alberts on notice that the government believes he possessed a "large capacity ammunition feeding device" in violation of § 7–2506.01. The statute defines a "large capacity ammunition feeding device" as a "magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition." § 7–2506.01(b). If count ten remains in the case, the jury will be instructed as to that definition. But reciting the definition in the indictment is not necessary to state an offense. In sum, counts six and ten state an offense.

    D. <u>Due Process Challenge</u>

Alberts next challenges two of the counts on due process grounds. First, he argues that count six, charging unlawful possession of a firearm on Capitol grounds under 40 U.S.C. § 5104(e)(1)(A)(i), is unconstitutionally vague because the phrase "on the United States Capitol Grounds <u>and</u> in <u>any</u> of the Capitol buildings" does not "specify enough detail to provide adequate notice." Mot. Dismiss at 7–8 (emphasis in original). To the extent Alberts complains about a lack of notice regarding the physical contours of the Capitol grounds, then his argument is foreclosed by <u>Class</u>, where the court upheld § 5104 against a similar vagueness challenge. <u>See</u> 930 F.3d at 467–70 ("The Capitol Grounds are defined by a map and a specific list of intersections and streets that are part of the public law."). Since § 5104 gives a "person of ordinary intelligence a reasonable opportunity to know what is prohibited," it is not void for vagueness. <u>Id</u>. at 469 (cleaned up). Alberts's argument also fails to the extent his complaint is that count six is vague because it charges the acts in the conjunctive even though the statute is

written disjunctively (i.e., "on the Grounds or in any of the Capitol Buildings" (emphasis added)).  It is "well established" that the government can charge acts in the conjunctive even if "a criminal statute disjunctively lists multiple acts which constitute violations."  United States v. Mostofsky, No. CR 21-138 (JEB), 2021 WL 3168501, at *2 (D.D.C. July 27, 2021) (cleaned up). Second, Alberts claims that count ten is unconstitutionally vague because the indictment fails to specify the quantity or capacity of the unlawful ammunition.  Mot. Dismiss at 11.  The Court rejects this argument for the same reasons discussed above.  See supra § III.C.

      E.  Prosecutorial and Judicial Misconduct

      Alberts also seeks dismissal of the indictment on grounds of  "prosecutorial and judicial misconduct," which appear to boil down to an argument that prosecutors violated their obligations under Brady v. Maryland by, as Alberts tells it, failing to disclose over 400 hours of video evidence and hundreds of witnesses.  Mot. Dismiss at 13–14; see 373 U.S. 83 (1963).  Yet, the government asserts that it has provided Alberts over "24,000 files consisting of closed-circuit video footage, body-worn camera from multiple law enforcement agencies, and Secret Service surveillance footage."  Opp'n Mot. Dismiss at 13.  Alberts does not challenge the government's assertion or identify any particular piece of material evidence that has been withheld from him. He has therefore not established any Brady violation.

      Alberts also alleges, without detail, that prosecutors engaged in misconduct at the pre-indictment stage of the case and that he has suffered from some unspecified "judicial malfeasance."  Mot. Dismiss at 13.  This is all bark and no bite.  Absent "particularized proof" of a defect or a showing that the "alleged prosecutorial misconduct significantly infringed on the grand jury's ability to render an independent judgment," the Court must deny the motion.  United

States v. Sutton, No. CR 21-0598 (PLF), 2022 WL 4653216, at *2 (D.D.C. Sept. 30, 2022)

(cleaned up).

      F.   Vindictive and Selective Prosecution

      Finally, Alberts moves to dismiss the indictment for both vindictive and selective

prosecution.  Second Mot. Dismiss.  Alberts claims he was vindictively prosecuted as retribution

for refusing to enter into a plea agreement.  Id. at 3–7.  For this sort of vindictive prosecution

claim, a defendant must show "that [an] increased charge was brought solely to penalize [him]

and could not be justified as a proper exercise of prosecutorial discretion."  United States v.

Slatten, 865 F.3d 767, 799 (D.C. Cir. 2017) (cleaned up) (quoting United States v. Goodwin, 457

U.S. 368, 380 n.12 (1982)).  A defendant can make this showing either: "(1) directly with

objective evidence that a prosecutor acted in order to punish him for standing on his legal rights

or (2) indirectly with evidence showing realistic likelihood of vindictiveness, which gives rise to

a presumption that the government must then attempt to rebut with objective evidence justifying

its action."  United States v. Oseguera Gonzalez, 507 F. Supp. 3d 137, 174 (D.D.C. 2020)

(cleaned up).  Alberts takes the second approach, asserting that the government increased the

number of charges after he declined a plea offer.  Second Mot. Dismiss at 5.  The government

responds that Alberts's claim is "factually impossible" because (1) the first superseding

indictment was returned in May 2021, a month before he could have "indicated he would

challenge the allegations by rejecting the June 2021 plea offer;" (2) the plea offer would have

required him to plead guilty to one of the offenses that was first charged in the first superseding

indictment; and (3) his first motion to dismiss was filed after both superseding indictments were

returned.  Opp'n Second Mot. Dismiss at 12 (cleaned up).  As Alberts has not contradicted this

timeline, he has not borne his burden to show vindictiveness based on the timing of the plea offer

and the additional charges.  In any case, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified."  United States v. Goodwin, 457 U.S. 368, 382–83 (1982).  Thus, Alberts has not shown he was subject to vindictive prosecution.

Finally, Alberts claims he was selectively targeted for prosecution based on his political beliefs.  To succeed on a selective prosecution claim, a defendant must "show that the challenged prosecution policy has a discriminatory effect and that it was motivated by a discriminatory purpose."  United States v. Brock, No. CR 21-140 (JDB), 2022 WL 3910549, at *9 (D.D.C. Aug. 31, 2022) (cleaned up) (quoting United States v. Armstrong, 517 U.S. 456, 457 (1996).  Showing "discriminatory effect" requires proving that the government afforded different treatment to similarly situated persons.  Id. (cleaned up).  Courts "narrowly interpret the phrase 'similarly situated.'"  Id. (cleaned up).  Alberts primarily compares his case to: (1) a group that attacked a federal courthouse in Portland, Oregon in the summer of 2020; and (2) a January 6 counter-protestor whose gun charges reportedly were dropped.  Second Mot. Dismiss at 8–9; Reply Second Mot. Dismiss at 2.[5]  Courts in this district have rejected contentions of selective prosecution based on comparisons between January 6 defendants and the Portland protestors.  See, e.g., Brock, 2022 WL 3910549, at *9 (cleaned up) ("[T]he mob on January 6th . . . endangered hundreds of federal officials in the Capitol complex, including Members of Congress and their staffs, Vice President Pence, and the United States Capitol Police[.]"); United States v. Rhodes, No. 22-CR-15 (APM), 2022 WL 3042200, at *5 (D.D.C. Aug. 2, 2022).  This Court

---

[5] Alberts cursorily points to two other January 6 defendants who have had similar charges dropped.  Reply Second Mot. Dismiss at 3.  He also discusses how prosecutors have treated other political protests differently, including a protest at the U.S. Capitol in the 1930s and protests at state Capitols.  Id. 4–8.  These comparisons fail as Alberts has not offered any evidence that he is similarly situated to the persons he identifies.

follows suit for the same reasons.  Alberts also fails to show how he is similarly situated to the January 6 counter-protestor he identifies.  While Alberts carried a firearm on his person on Capitol Grounds, the counter-protestor apparently was stopped near the White House unaware that her father's gun was in the trunk of the vehicle she was driving.  Statement Facts at 2; Opp'n Second Mot. Dismiss at 7–8.  As a result, "distinguishable legitimate prosecutorial factors" exist that might "justify different prosecutorial decisions," including where the offense took place and where the firearms were found.  <u>Brock</u>, 2022 WL 3910549, at *9 (cleaned up).  Alberts's selective prosecution argument therefore fails too.

### IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [40] Defendant's Motion to Dismiss is **DENIED IN PART**.  It is further

**ORDERED** that [66] Defendant's Second Motion to Dismiss is **DENIED**.

**SO ORDERED**.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>November 23, 2022</u>