**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

-v-

CHRISTOPHER MICHAEL ALBERTS,

Defendant.

Criminal No. 21-CR-026 (CRC)

**DEFENDANT CHRISTOPHER MICHAEL ALBERTS' MOTION IN LIMINE TO EXCLUDE ARGUMENTS, EVIDENCE, OR CLAIMS AT TRIAL THAT ARE PREJUDICIAL AND NOT PROBATIVE**

Defendant Christopher Michael Alberts ("Alberts"), through the undersigned counsel, John M. Pierce, Esq., presents this motion for an order in limine to exclude from presentation or mention at trial of arguments, evidence, or claims that are unduly prejudicial.  Here, Defendant Albert seeks to exclude material whose probative value is substantially outweighed" but which essentially has no reasonable or realistic probative value whatsoever.  In support of his motion Alberts states as follows:

**I.   INTRODUCTION AND OVERVIEW**

Defendant Christopher Michael Alberts ("Alberts") is apparently not accused of entering the U.S. Capitol building on or about January 6, 2021.

Defendant Alberts is accused, *inter alia*, under Count III of the Second Superseding Indictment ("S.S.I.") dated November 10, 2021 of violating 18 U.S.C. 1751(a)(1) "Entering and Remaining in a Restricted Building or Grounds" enhanced by possession of a deadly or dangerous weapon under 18 U.S.C. 1751(b)(1)(A).

The operative indictment under which Alberts is scheduled to go to trial is only six (6) weeks old.  The S.S.I. is what is traditionally called in the law "threadbare."   There are no

factual allegations whatsoever of any kind in the operative indictment.  The S.S.I. presents only

conclusions of law standing naked and offers nothing more than the language of the statutes.  For

that reason at least, the S.S.I. is more than likely legally defective and subject to dismissal.

For today's purposes, however, we would appear to need to resort to the Statement of

Facts filed in this case as Docket Entry # 1-1, originally filed in a Magistrate case 1:21-mj-

000010, and originally filed on January 7, 2021, there, to "cure" – if such cure is possible for the

sake of argument at the moment – the complete lack of any factual allegations in the S.S.I.

It appears that the Government has alleged the Counts based only on the January 7, 2021,

Statement of Facts, but after reviewing the ECF docket sheet record there does not appear to be

any subsequent or amended or different Statement of Facts or other factual allegations but

Document Entry #1-1.

## II.   GOVERNING LAW WITH OVERALL ANALYSIS:

Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or

Other Reasons

> The court may exclude relevant evidence if its probative value is
> substantially outweighed by a danger of one or more of the following:
> unfair prejudice, confusing the issues, misleading the jury, undue delay,
> wasting time, or needlessly presenting cumulative evidence.

The DOJ has systematically repeated in many pleadings in many cases boilerplate

language such as *(emphases added):*

> As they entered the Capitol, they ***very likely*** crossed through numerous
> barriers and barricades and heard the violent outcries of a mob.
> Depending on the timing and location of their approach, ***they also may
> have observed*** extensive fighting between the rioters and police and
> smelled chemical irritants in the air.

Thus, here in this case, as in apparently every other January 6 related case brought for

sentencing, the USAO would have this Court consider what is "**very likely**" and what defendants "**may have observed.**" Thus the DOJ has abandoned the project of proving actual guilt by actual defendants with actual evidence.

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the D.C. Circuit Court examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding bstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw. As stated by the *Hunter* Court:

> [i]t is elementary that an information or indictment must set out the ***facts*** constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the ***exact*** crime which he is alleged to have committed.

*Id.* at 409, 410 *(emphasis added)* (internal quotation marks and citation omitted).

The *Hunter* Court also observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the

requirements of the established rules of criminal pleading," which in turn rendered it

"insufficient in law." *Id.* at 410.

    Specifically, here in this case, the Government has spread the false implication, like an

inkblot test, that the U.S. Capitol and its grounds are presumptively restricted areas.  But as

Federal courts in this District have reasoned in reaching legal conclusions:

> ***The Capitol Grounds*** (excluding such places as the Senate and House
> floors, committee rooms, etc.) ***have traditionally been open to the
> public***; indeed, thousands of people visit them each year. Thus, we
> cannot agree with the defendants that the Capitol Grounds have ever
> been characterized by the serenity and quiet of a hospital or library.

*Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) *(emphases*

*added)*.

> The courts in this jurisdiction have long recognized that ***"[t]he United
> States Capitol is a unique situs for demonstration activity"*** and ***"is a
> place traditionally open to the public thousands visit each year to
> which access cannot be denied broadly or absolutely,*** [a fact which
> must be weighed] against the government's interest in protecting against
> possible `damage to buildings and grounds, obstruction of passageways,
> and even dangers to legislators and staff.'" *Kroll v. United States*, 590 F.
> Supp. 1282, 1289, 1290 (D.D.C.1983) *(quoting Jeannette Rankin
> Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583-85 (D.D.C.),
> *aff'd mem.,* 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972)).

*Wheelock v. United States* 552 A.2d 503, 506 (D.C. 1988) *(emphases added).*

    So very public is the Capitol, that built into the physical building from its initial

construction are public viewing galleries allowing any member of the public – for no reason

other than a desire to watch their Representatives and Senators at work – may sit and watch the

House of Representatives and the U.S. Senate while in session. [12]

There is no physical barrier – even to this day – between the Chambers in session and the public watching from the balcony galleries.  If a member of the public wished to – certainly not advisable, of course – toss a candy bar down to his willing U.S. Senator, the physical structure of the Senate chambers would make that possible.

Public openness is literally built into the foundation of the United States of America.  No greater message of the very public nature of the Capitol can be found than the very architecture of the building designed as a meeting place between citizens and their leaders.

However, the Government has persistently misrepresented 18 U.S.C. 1752(a)(1) beyond the acceptable boundaries of advocacy.  It is completely false that the statute criminalizes mere presence in a restricted area.

18 U.S.C. 1752(a)(1) specifies that *(emphases added)*.

> **(a)** Whoever—
> **(1)** ___*knowingly*___ enters or remains in any restricted build-
> ing or grounds ___*without lawful authority to do so;*___
>     * * *
> or attempts or conspires to do so, shall be punished as
> provided in subsection (b).
>     * * *

Yet the DOJ has persistently – outside the permitted bounds of advocacy – tried to delete "___*knowingly*___" from the statute.

The contours of this theme are the subject of the remainder of the motion, *infra.*

---

[1] See:  Large Public Galleries in New Legislative Chambers, Library of Congress exhibit, **https://www.loc.gov/exhibits/uscapitol/s5.html** :  Thomas U. Walter. "Details of Gallery in Hall of Representatives," 1856. Ink and water color on paper. Architect of the Capitol (204)

[2] This is changed only in the sheer quantity of citizens in our growing nation and the num-ber of persons who want to watch from the viewing galleries, leading to time limits for rationing. But the public purpose of the U.S. Capitol has been set since the first construction blueprints were drawn.

Furthermore, the statute makes clear that it involves a _temporary_ restriction – not a building or grounds that are permanently restricted.  This is worse.  This means that the public would come to understand and expect that the building and/or grounds is normally _not_ restricted, but on a temporary, isolated occasion is momentarily so.  This requires more careful and effective efforts to notify the public so that they will not "***knowingly***" enter.

The statute refers to "restricted grounds" although everyone refers to this as a "restricted area."  This would appear to be because "grounds" are undefined. "Grounds" could be anything from a few hundred yards of grass to several hundred miles of land such as for Ft. Bragg.  Thus, all discussion is necessarily of a "restricted area" rather than "grounds."

No person can be charged consistent with Due Process with knowingly entering a restricted area _if that area cannot be determined with precision_.  No criminal charge can be brought accusing someone of being on _this_ side of a line instead of _that_ side of the line, if the line is unknown, imprecise, or indeterminate.  The ability under Due Process to charge someone with entering a "restricted area" cannot be separated from the necessity of precisely defining what that actual area is. One cannot be convicted of entering a "someplace."

One must be able to "knowingly" determine if they are on the legal or illegal side of the "restricted area" boundaries.  Otherwise, the Government cannot prosecute someone to a presumption of innocence unless proven guilty beyond a reasonable doubt standard of proof.

Shouldn't that be easy?  No because the circumstances changed continuously and somewhat dramatically and repeatedly throughout the day of January 6, 2021.

What may have been (at best) a restricted area at 12:00 PM would no longer be properly marked at 3:00 PM so as to place members of the public on notice that there is a line demarcating a restricted area.  Videos show people systematically removing bike racks and

fences with flimsy laminated paper "Restricted Area" signs affixed to them.  Therefore, the

Government must prove where there were signs giving notice at different times throughout the

day.  Could the USCP have posted more permanent signs?  Yes.  But the USCP did not.

Furthermore, the Government refuses to acknowledge that the U.S. Capitol Police in

December 2020 issued not one but six (6) permits authorizing demonstrations on the U.S.

Capitol Grounds on the afternoon of January 6, 2021.  Specifically, USCP Special Events officer

Scott Grossi issued at least the following permits:

1. **Brian Lewis Demo Pemit**
   https://www.patriotslegaldefense.org/s/Bryan-Lewis-Demo-Permit-1-6-2021.pdf
2. **Jesus Lives Demo Permit**
   https://www.patriotslegaldefense.org/s/Jesus-Lives-Demo-Permit-1-6-2021.pdf
3. **One Nation Under God Permit**
   https://www.patriotslegaldefense.org/s/One-Nation-Under-God-Permit-1-6-2021.pdf
4. **Rock Ministries Demo Permit**
   https://www.patriotslegaldefense.org/s/Rock-Ministries-Demo-Permit-1-6-2021.pdf
5. **Virginia Freedom Keepers Demo Permit**
   https://www.patriotslegaldefense.org/s/Virginia-Freedom-Keepers-Demo-Permit-1-6-2021.pdf
6. **Women For a Great America Demo Permit**
   https://www.patriotslegaldefense.org/s/Women-for-a-Great-America-Demo-Permit-1-6-2021.pdf

Thus, demonstrators on the U.S. Capitol Grounds – clearly not inside the building of

course [3] nor inside the obvious construction zone for the erection of the inaugural platform -- had

"lawful authority" to be on the U.S. Capitol Grounds.[4]  They are literally "invitees" in the

parlance of trespass law or its federal equivalents.

---

[3]    But Alberts is apparently not charged with entering the Capitol building.
[4]    One is asked to take care with this analysis.  Trespass and its state and federal equivalents
follow specific rules and procedures.  None of this argument

Because human beings cannot fly through the air, being invited to attend one or more or all of the six (6) permitted demonstrations necessarily implies the "lawful authority" to travel across the U.S. Capitol Grounds to or from or among those demonstrations for which the USCP issued lawful permits.  Again, clearly this refers only to walking on the Grounds.

Accusers in and out of government may wish to deflect by saying that the permits had limits on the number of attendees.  But that has no legal effect.  The invitees responding to those invitations were not made aware of those limitations.  While one is loathe to blame the USCP, the reality is that the USCP's procedures do not provide any mechanism by which attendees would become informed of any limits on attendance.  On any normal day, the USCP could post officers to guide the process, but they don't.  The USCP could post signs, but they don't.  The USCP could post signs posting a maximum number of people at each location.  But they did not. The USCP could require pre-registration by demonstration organizers, but they don't. This does not excuse any actual violence by some demonstrators who went bad and turned into rioters.  But it is simply a reality that demonstrators intending to attend announced demonstrations were not given any notice that there would be an limitations upon the number who could attend.

However, we would still not know about these demonstration permits if <u>Buzzfeed News</u> had not filed a lawsuit and forced the USCP to disclose the permits.[5]  If we were left to the goodwill of the Government, we would still be in the dark.

Meanwhile, prosecutors while enjoying many advantages such as nearly limitless government resources, must also meet more compelling and strict burdens than usual for

---

[5]     See:  Jon Moseley, "Are US Capitol Police Hiding Permit for January 6 Demonstrations? US Capitol Police refuse to answer if they issued a permit for Trump Supporters to Demonstrate," <u>National File</u>,  April 2021, (updated February 17, 2022), **https://nationalfile.com/are-us-capitol-police-hiding-permit-for-january-6-demonstrations/**

attorneys in other contexts.  To begin with, the Government enjoys wide discretion in when to

bring a criminal prosecution, to wait until it is ready and as ready as it wishes to be.  Defendants

by contrast must respond to the Government's allegations when brought.  However, any

weaknesses in the Government's case should be compared with its ability to wait up through the

Statute of Limitations period to proceed at the time most opportune to the Government and the

progress of its investigation and analysis of information.  It is no answer to suggest that the Court

should indulge the weaknesses of a prosecution's case, bending the U.S. Constitution's Due

Process and other provisions to benefit one side, especially when the unreadiness of the

prosecution is entirely within its own control.  The announced goal of this U.S. Attorney in

wanting to scramble January 6 to trial is not an excuse from doing criminal justice correctly.

      Furthermore:

> In *Berger v. United States*, Justice George Sutherland, who was part of
> the Schechter majority, said the following about ***the role of the
> prosecutor:***
>
> > **[He] is the representative not of an ordinary party to a
> > controversy, but of a sovereignty whose obligation to govern
> > impartially is as compelling as its obligation to govern at all;
> > and whose interest, therefore, in a criminal prosecution is not
> > that it shall win a case, but that justice shall be done. As such,
> > he is in a peculiar and very definite sense the servant of the
> > law, the twofold aim of which is that guilt shall not escape or
> > innocence suffer. He may prosecute with earnestness and
> > vigor-indeed he should do so. But while he may strike hard
> > blows, he is not at liberty to strike foul ones. It is as much his
> > duty to refrain from improper methods calculated to produce a
> > wrongful conviction as it is to use every legitimate means to
> > bring about a just one.** [7]

*Bennett L. Gershman, "Hard Strikes and Foul Blows:" Berger v. United States 75 Years After, 42
Loy. U. Chi. L. J. 177, 179 (2010). Available at:* ***http://lawecommons.luc.edu/luclj/vol42/iss1/8***
*(citing to  Berger v. United States, 295 U.S. 78, 88 (1935) (emphases added).*

      Perhaps even more compelling:

Also, there is little doubt that Justice Sutherland's articulation of the special obligation of the prosecutor to ensure that "justice shall be done" was influenced by then-Canon 5 of the Canons of Professional Ethics of the American Bar Association, which stated:

**"The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible."**

*Gershman,* at 194.

## III. ARGUMENT

### A.  CONJECTURE

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any element of a crime based upon the Government's conjecture rather than solid, admissible evidence that this Defendant in fact is guilty of each element of a crime beyond a reasonable doubt.

In Count I, the Government accuses Defendant Alberts of "an act to obstruct, impede, and interfere with a law enforcement officer" "incident to and during, the commission of a civil disorder."  But the Government has alleged no facts of any such crime.  It can only be imagined that the Government is planning to indulge in conjecture beyond the limits of known facts.

In Count II, the Government accuses that Defendant Alberts did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States … and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony."  But the Government has alleged no facts of any such crime.  It can only be imagined that the Government is planning to indulge in conjecture beyond the limits of known facts.

In Count IV, the Government accuses that Defendant Alberts "did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct."

But the Government has alleged no facts of any such crime. It can only be imagined that the Government is planning to indulge in conjecture beyond the limits of known facts.

Although Count IV includes the enhancement of possessing a deadly or dangerous weapon, that is a separate issue. Count IV first depends upon proving the items above of which there have been no factual allegations. We don't get to the possession of a gun under this particular statute without first probative proof of "knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct."

In Count V, the Government accuses that Defendant Alberts "did knowingly, engage in any act of physical violence against any person and property in a restricted building and grounds." But the Government has alleged no facts of any such crime. It can only be imagined that the Government is planning to indulge in conjecture beyond the limits of known facts.

In Count VII, the Government accuses that Defendant Alberts "willfully and knowingly engaged in disorderly and disruptive conduct within the United States Capitol and in any of the Capitol buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress."

In Count VIII, the Government accuses that Defendant Alberts "willfully and knowingly engaged in an act of physical violence within the United States Capitol Grounds and any of the Capitol Buildings."

But the Government has alleged no facts of any such crime.  It can only be imagined that the Government is planning to indulge in conjecture beyond the limits of known facts.

It would be prejudicial and confusing to the jury to offer the jury the Government's conjectures rather than actual, solid evidence of each element of a crime committed by an actual, identifiable Defendant.

## B.  SPECULATION

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any element of a crime based upon the Government's speculation rather than solid, admissible evidence that this Defendant in fact is guilty of each element of a crime beyond a reasonable doubt.

For the same reasons explained in Section B above, the Government has offered no factual allegations of the Counts identified therein, leading us to expect speculation instead.

It would be prejudicial and confusing to the jury to offer the jury the Government's speculation rather than actual, solid evidence of each element of a crime committed by an actual, identifiable Defendant.

## C.  MIND-READING

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any element of a crime based upon the Government's belief about what the Defendant was thinking or intended, rather than solid, admissible evidence that this Defendant in fact is guilty of each element of a crime beyond a reasonable doubt.  Not only has the Government not brought factual allegations to support its charges, but the circumstances actually negate the imagined intent or thinking of the Defendant as portrayed by

the Government.

### D.  GUILT BY ASSOCIATION

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any element of a crime based upon the guilt of other people, not this Defendant, as an argument of guilt by association, or the Defendant being in the vicinity of a crime, or merely existing near where a crime occurred.

### E.  NOT A CRIME TO ENTER A RESTRICTED AREA UNLESS DONE SO "KNOWINGLY"

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any crime of entering a restricted area unless the Government clearly informs the jury at the same time that the statute 18 U.S.C. 1752(a) makes such a crime only if the accused has done so "***knowingly***."

Not only would it be prejudicial and confusing to the jury not to clarify that merely being present in a restricted area is not (necessarily) a crime, but only knowingly entering a restricted area might be a crime, but to separate that clarification in time and substance would be unacceptably confusing and prejudicial.  Any reference to any alleged crime of being in a restricted area without also at the same time repeating that there is no crime unless it is done knowingly would be prejudicial and confusing to the jury.

### F.  "KNOWINGLY" ENTERING A RESTRICTED AREA REQUIRES CLEAR NOTICE OF ALTERATION OF THE STATUS QUO

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any crime of ***knowingly*** entering a restricted area unless the Government makes clear that the U.S. Capitol and Capitol Grounds are normally ***not***

restricted, such that any notice provided to the public of a temporary restriction must be especially clear and explicit to make the public understand that the status quo has changed.

Not only would it be prejudicial and confusing to the jury not to clarify that merely being present in a restricted area is not (necessarily) a crime, but separating in time over the spread of the trial the idea that the restriction is temporary and that any notice of a restriction must be a clear and explicit change from the normal status quo would be prejudicial and confusing to the jury.

### G.  RESTRICTED AREA THAT IS NOT DEFINED SHOULD BE EXCLUDED

The Government should be excluded from making reference to a "restricted area" unless such area is precisely defined.  It would be prejudicial and confusing to the jury to refer to a restricted area under 18 U.S.C. 1752(a) if it is left to the imagination or perhaps misunderstanding of the jury as to what contours of that area actually are.  Without a clear definition of where an area is restricted and where it is not restricted would have the almost inevitable result, beyond a danger, of leading the jury to misunderstand that people who were in an unrestricted area where actually in a restricted area instead. Vague, ambiguous, unclear references would be inconsistent with the requirements of Due Process, because they would invite the jury to assume guilt where there is in fact innocence.

### H.  RESTRICTED AREA THAT IS DEFINED IN THE WRONG PERIODS OF TIME SHOULD BE EXCLUDED

The Government should be excluded from making reference to a "restricted area" unless the relevant time period of when the contours are defined are specified.  Although simplicity would be desirable, the reality is that events were fluid and chaotic throughout the day of January 6, 2021.  The location of bike racks, similar barricades, and rolling mesh fences with small, flimsy, laminated paper "Restricted Signs" about 10 inches by 14 inches affixed on them

(generally with zip ties) changed throughout the day.  Videos show apparently systematic efforts to remove those items and signs, such that no signs remained visible by the time most of the crowds arrived at the U.S. Capitol or its grounds.

Due Process and proof beyond a reasonable doubt require that the Government prove that an individual Defendant, with particularity, saw or could have / should have seen notice of a restricted area.  The fact that hours earlier, for example, signs were visible, but not at the time a particular Defendant arrived at the location in question, does not provide notice to that Defendant.  The Government should be excluded from referring to a restricted area unless it at the same time can show that *at the time the Defendant would have / could have seen* notices, that those notices were there and visible to the Defendant.

It would be prejudicial and confusing to the jury to refer to a restricted area under 18 U.S.C. 1752(a) if an area was restricted at a different time of the day, but not restricted (that is, with no valid notice) at the pertinent time period.

## I.  NOTICE OF BRAWLING DOES NOT QUALIFY TO PROVIDE NOTICE OF A RESTRICTED AREA

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of any brawling, rioting, violence, or other disturbance at or around the U.S. Capitol or Capitol grounds on January 6, 2021, as allegedly providing notice to the public that any area is restricted.

The existence of a disturbance is completely unrelated to whether an area is restricted.  It is not logical or rational to confuse these different issues.  If the prosecutor is at a soccer stadium with 20,000 other fans watching a soccer match, and a few hundred soccer hooligans break out into a brawl, that would alert an observer that there is a brawl.  It would have absolutely no

probative value as to whether the soccer stadium was legally closed to the public because some people decided to get in a fight.

Every year, the U.S. Park Police hosts a New Year's Eve fireworks display with musical performances and likewise hosts July 4th celebrations with musical performances both on the "National Mall." If a few hundred attendees consuming too many adult beverages get into a fight, that does not mean that everyone on the National Mall is now guilty of being in a legally restricted area. Observing that would give rise to an expectation that those combatants will be arrested, but that the public event will continue despite the interruption.

The existence of misbehavior or even violence by some in an area is legally and logically disconnected entirely from the right of people to be in the area. The Government may not prove knowledge or intent with regard to a restricted area merely by showing that some people in the area were engaged in fighting.

An area can be unrestricted legally regardless of whether anyone in that area engages in any fighting. While there would be wisdom in leaving the area, there is no legal duty to do so. Witnessing some people engaging in fights, altercations, violence, brawling, or rioting imposes no obligation whatsoever upon bystanders to depart that area. Therefore, the area does not become restricted because of the misbehavior of other people. Any such reference or discussion would be prejudicial and unduly confusing to the jury. An area becomes restricted only when the Government provides clear, explicit, unambiguous noticed that the normal status of the area has been temporarily changed.

### J.  MOTION TO LIMINE TO EXCLUDE FALSIFIED PHOTOGRAPH

The Government has systematically attempted to rely on the following altered photograph to make it appear that the USCP defined a "restricted area."  However, this is a

bird's eye photograph of the U.S. Capitol from above, to which a red line has been digitally (by computer) added artificially.  There is no actual photograph of a red line painted on the ground. No red line was ever painted on the ground as the photograph purports to depict.



Because it is an altered photograph, that does not represent the real view of the Capitol, the photograph and any similar photographs should be excluded from evidence at trial. It would be unduly prejudicial and would confuse the jury.

Furthermore, it is difficult to envision how the photograph or similar photographs would be authenticated and sponsored into evidence.

### K. BIRD'S EYE PHOTOGRAPH OF CAPITOL IS NOT A DEMONSTRATIVE EXHIBIT

A litigator might try to argue that the altered photograph is not evidence but is a demonstrative exhibit designed to show other information.  The problem with this here is the Government must first prove – at every particular time of day that is material – the actual,

reliable evidence of where "Restricted Areas" were not only posted at one point in time but remained posted and remained visible at material points in time.  To use the photograph as a demonstrative exhibit, the Government must first prove each and every point and corner and turn of the red line added to the photograph.

### L.  PHOTOGRAPH WAS NEVER POSTED OR VISIBLE AT THE U.S. CAPITOL GROUNDS OR BUILDING

The Government should be excluded from making argument about, making reference to, presenting on or introducing evidence of the photograph of the Capitol above or any similar photographs unless the Government can prove that such photograph was prominently posted on the U.S. Capitol Grounds or at entrances to the Grounds or around the Capitol building.

The fact that no one in the public ever actually had access to this photograph with the added red line and no one had any notice of its purported contents renders it of no legal value and no probative value.  It would be prejudicial and confusing to the jury to refer to or show a photograph purporting to show where an area was restricted without the jury understanding that no one actually saw that photograph or anything like it visible on January 6, 2021, at or near the U.S. Capitol.  The photograph existed only in USCP files, not in the "real world" on site at the U.S. Capitol or Capitol Grounds.  The Government's persistent reference to this photograph that existed only in USCP filing cabinets or packets will confuse the jury into thinking that the public ever saw this altered photograph.

**CONCLUSION**

The Court should order each of the requested orders in limine considered separately.


Dated:  December 22, 2022              RESPECTFULLY SUBMITTED,


_John Pierce Law Firm_
_21550 Oxnard Street_
_3rd Floor, PMB #172_
_Woodland Hills, CA 91367_
_Tel: (213) 400-0725_
_Email: **jpierce@johnpiercelaw.com**_
_Attorney for Defendant_

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2022, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.

_/s/John M. Pierce_____
_John M. Pierce, Esq._