## UNITED STATES DISCTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | |
| vs. | Case No.  21-cr-026 (CRC) |
| CHRISTOPHER MICHEAL ALBERTS, | |
| Defendant. | HEARING REQUESTED |

## DEFENDANT'S MOTION TO CHANGE VENUE

COMES NOW, Defendant, CHRISTOPHER MICHEAL ALBERTS (hereinafter, "Defendant" or "Mr. Alberts"), by and through undersigned counsel, with this Motion to change venue pursuant Fed. R. Crim. P. 21(a), and respectfully requests this Honorable Court issue an order transferring the trial of this proceeding to another jurisdiction.

## LEGAL STANDARD

Transfer of a criminal proceeding is warranted if extraordinary local prejudice will prevent a fair trial, which is a basic requirement of due process. *United States v. Bills,* 93 F.Supp.3d 899 (N.D.Ill., 2015).  The three important factors to consider when assessing extraordinary local prejudice, for purposes of a motion to transfer venue in a criminal case, are: (1) the size and characteristics of the community in which the crime occurred; (2) whether media coverage of the crime contained a confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight; and (3) whether the time between the crime and the trial has diminished the level of media attention.  *United States v. Nassif,* 2022 WL 4130841 (D.D.C., 2022). Accordingly, the prejudicial fog clouding a trial's fairness so as to warrant transfer of venue may be established where the facts show that jury

prejudice should be presumed, and if prejudice should not be presumed, that the jury was actually prejudiced against the defendant. *U.S. v. Quiles-Olivo*, 684 F.3d 177 (C.A.1 (Puerto Rico),2012).

## ARGUMENT

### I.     Mr. Alberts is Entitled to a Fair Trial by an Impartial Jury.

The Fifth and Sixth Amendments of the Constitution of the United States entitle criminal defendants to a fair trial by an impartial jury. *See, In re Murchison*, 349 U.S. 133, 136 (1955). "The theory in our system of law is that conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence[.]" *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). Justice Hugo Black observed that the American justice system "has always endeavored to prevent even the probability of unfairness." *Id.* Accordingly, Federal Rule of Criminal Procedure 21(a) instructs that district courts "must transfer the proceeding . . . if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."

### II.    A Court May Grant a Motion to Change Venue When a Potential Jury Pool May Be Irredeemably Biased.

In *Irving v. Dowd*, the Supreme Court presciently observed:

> "In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as "indifferent as he stands unsworne." His verdict must be based upon the evidence developed at the trial. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies."

*Id.* 366 U.S. 717, 722 (1961) (internal citations omitted).

A potential jury pool may be determined to be irredeemably biased when the alleged crime results in "effects . . . on [a] community [that] are so profound and pervasive that no detailed discussion of the [pretrial publicity and juror partiality] evidence is necessary." *United States v. McVeigh*, 918 F. Supp. 1467, 1470 (W.D. Okla. 1996). When prejudice to a fair trial is threatened, many actions may be taken to reduce this harm, including:

> "(a) change of trial venue to a place less exposed to . . . intense publicity…;
>
> (b) postponement of the trial to allow public attention to subside;
>
> (c) searching questioning of prospective jurors . . . to screen out those with fixed opinions as to guilt or innocence;
>
> (d) the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court[;]
>
> (e) sequestration of jurors [to] . . . enhance[ ] the likelihood of dissipating the impact of pretrial publicity and emphasize[ ] the elements of the jurors' oaths."

*In re Halkin*, 598 F.2d 176, 195, (D.C. Cir. 1979) (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 563-64 (1976)).

Juror declarations of impartiality during *voir dire* are not absolute. *See Murphy v. Fla.*, 421 U.S. 794, 802 (1975) ("Even these indicia of impartiality [during voir dire] might be disregarded in a case where the <u>general atmosphere in the community</u> or courtroom is sufficiently inflammatory."). "[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity." *Sheppard v. Maxwell*, 384 U.S. 333, 362-63 (1966). [<u>Emphasis added</u>].

Where pervasive pretrial publicity has "inflamed passions in the host community" and "permeat[es] the trial setting . . . [such] that a defendant cannot possibly receive an impartial trial," <u>the district court must presume</u>

local prejudice and transfer the proceeding. *United States v. Quiles-Olivo*, 684 F.3d 177, 182 (1st Cir. 2012). *Cf. Mu'Min v. Virginia*, 500 U.S. 415, 429-430 (1991) ("Under the constitutional standard, on the other hand, 'the relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant.'" (citing *Patton v. Yount*, 467 U.S. 1025, 1035 (1984))).  [Emphasis added].

## III.    Federal Courts Regularly Grant and Uphold Motions to Change Venue Due to Pretrial Publicity

Indeed, the court in *McVeigh* summarily concluded that a trial of the Oklahoma City bombing suspects in federal court in Oklahoma City would be fundamentally constitutionally unfair. *McVeigh*, 918 F. Supp. at 1470. Even in cases with less publicity and infamy than that of the Oklahoma City Bombing, the United States District Court for the District of Columbia has upheld change of venue motions transferring cases to the District of Columbia.  *See, e.g.*, *United States v. Velsicol Chemical Corp.*, 498 F. Supp. 1255, 1256 (D.D.C. 1980) (permitting a proceeding which began upon an indictment for "misdemeanor charges of conspiring to conceal facts related to a contamination of animal feed" being returned in the Eastern District of Michigan to be transferred to the District of Columbia "upon a determination of possible prejudice and pretrial publicity preventing the defendants from obtaining a fair and impartial trial in the Eastern District of Michigan.").

Moreover, the Supreme Court of the United States has found that trial courts that have denied change of venue motions despite risk of prejudice violated the defendants' due process rights.  *See, e.g.*, *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963) (holding that "it was a denial of due process of law to refuse the request for a change of venue" when the potential jury members "had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged" because "[f]or anyone who has ever watched

television the conclusion cannot be avoided that this spectacle, to the tens of thousands of people who saw and heard it, in a very real sense *was* Rideau's trial").

## IV.   The District of Columbia Jury Pool Is Biased Against January 6th Defendants

### A.   The District of Columbia Jury Pool Is <u>Always</u> Pro-Government, Pro-Democrat, and Anti-Republican

The ten (10) square miles that encompasses the District of Columbia is the seat of the United States Government (Plaintiff), and it houses a high percentage of the Plaintiffs workforce[1] and lobbyists.[2] Historically and currently, lobbyist spending has disproportionately benefited the democrat party.[3]  Furthermore, a study analyzing types of witnesses who testify before congressional committees found that the vast majority of witnesses are government employees.[4]

This disproportionately government-involved jury pool knows that their lives and their careers depend on the federal government being large and expensive.  If Republican firebrands ever gain traction, their entire

---

[1] In 2010, the District of Columbia housed 38% of the U.S. Government's employees, a higher rate than any other state.  Lymari Morales, *Gov't. Employment Ranges From 38% in D.C. to 12% in Ohio*, GALLUP (Aug. 6, 2010), https://news.gallup.com/poll/141785/gov-employment-ranges-ohio.aspx.  By 2016, the District of Columbia continued to house the largest number of federal workers, at 245,368 employees.  EMPLOYMENT GUIDE, CAREERS IN GOVERNMENT, https://does.dc.gov/sites/default/files/dc/sites/does/publication/attachments/DOES _GovGuide.pdf.

[2] In 2019, Washington, D.C. housed nearly 12,000 lobbyists.  Tala Hadavi, *Lobbying in Q1 Topped a Record $938 Million, But Lobbyists Say Their Profession Is Misunderstood*, CNBC (Oct. 5, 2020), https://www.cnbc.com/2020/10/05/q1-lobbying-spend-was-record-938-million-but-lobbyists-decry-stereotype.html.

[3] OpenSecrets (July 26, 2022), https://www.opensecrets.org/industries/indus.php?ind=K02

[4] Pamela Ban, et al., "How are Politicians Informed?  Witnesses and Information Provision in Congress," *Yale* 9, (2021), https://csap.yale.edu/sites/default/files/files/hyy-apppw-9-1-21.pdf.

lives and careers will be ended, and they will need to earn their livings by producing goods and services in the private sector.

Jurors of this trial are being asked to sit in judgement of a case where their answer returning a verdict "not guilty" is a loss for their employer or the institution driving their livelihood and community.

At no point in history have we allowed those who work for or benefit directly from a company or institution to sit as jurors as this cannot meet the test of impartiality.

However, this is not true of the United States generally.  For instance, as of 2020, only 18% of Americans believed that their tax dollars were being spent the right way, and 51% of Americans thought that they were paying too much in taxes.[5]

### B.     The District of Columbia Jury Pool, Which Is Already Pro-Plaintiff, Pro-Democrat, and Anti-Republican, Became More Pro-Plaintiff, More Pro-Democrat, and More Anti-Republican in the Wake of January 6

As a whole, "Americans' political party preferences in 2021 looked similar to prior years, with slightly more U.S. adults identifying as Democrats or leaning Democratic (46%) than identified as Republicans or leaned Republican (43%).[6]  "However, the general stability for the full-year average obscures a dramatic shift over the course of 2021, from a nine-percentage-point Democratic advantage in the first quarter to a rare

---

[5] Huddleston, Cameron. "*Survey: Only 18% of Americans Believe Their Tax Dollars Are Being Spent the Right Way*," *GOBankingRates* (Feb. 12, 2020). https://www.gobankingrates.com/taxes/tax-laws/americans-believe-tax-dollars-spent-right-way/.

[6] Jones, Jeffrey M. "*U.S. Political Party Preferences Shifted Greatly During 2021*," *GALLUP* (Jan. 17, 2022). https://news.gallup.com/poll/388781/political-party-preferences-shifted-greatly-during-2021.aspx.

five-point Republican edge in the fourth quarter."[7]  Yet, in the District of Columbia, an overwhelming 92% of adult voters are Democrats.[8]

While 12% of Republicans and 52% of Independents believe that the event on January 6 was "an insurrection and a threat to democracy," an overwhelming 86% of Democrats believe this claim.[9]  Furthermore, per the chart below, 88% of District of Columbia registered voters polled believed that if a defendant went inside the Capitol building on January 6, 2021, he should be convicted of obstruction of justice and civil disorder.[10]



Further, Google analytics provide that residents of the District of Columbia overwhelmingly search the terms "Proud Boys," "Seditious

---

[7] *Id.*

[8] *Politics & Voting in Washington, District of Columbia*, BEST PLACES (last visited Aug. 14, 2022), https://www.bestplaces.net/voting/city/district_of_columbia/washington.

[9] Montanaro, Domenico. "A Majority Thinks Trump Is to Blame for Jan. 6 But Won't Face Charges, Poll Finds," *NPR* (July 21, 2022). https://www.npr.org/2022/07/21/1112546450/a-majority-thinks-trump-is-to-blame-for-jan-6-but-wont-face-charges-poll-finds.

[10] JOHN ZOGBY STRATEGIES, SURVEY OF WASHINGTON DC REGISTERED VOTERS ON OPINIONS CONCERNING THE JANUARY 6, 2021 EVENTS AT THE CAPITOL BUILDING (2022), https://www.thegatewaypundit.com/wp-content/uploads/Zogby-J6-Jury-Pool-STUDY-2.pdf.

Conspiracy," "Sedition," "Select Committee," "Jan. 6th Committee," "Insurrection," "Capitol Riot," and "White Supremacist" more than any other state in the nation;[11] a phenomenal feat in and of itself for an area comprised of ten (10) square miles.  This data overwhelmingly substantiates the impartiality of a Jury drawn from within the District of Columbia. The control slides compared to the relative slides clearly depict the unnatural and unequivocal interest in the subject matter.  This leads us to the willful engagement of the bias partisan data.  Willful engagement is more important and should be weighted as such when considering the elements of consumption of news vs. availability of news. The national availability of news is undisputed, the matter of who digested it is the argument. The slides entered as evidence clearly depict the way the information was willfully consumed.  One does not take the time to enter a search topic into their internet browser to ignore the results. The population contained within the D.C. clearly digested the news at rates of twenty to eighty five percent higher than the entirety of the rest of the country on topic after topic.  This data was provided by Google and shows the interest as it relates from the date of January 6th to December 7th 2022. You are seeing a representation of the searches performed per capita nationwide in the slides. This is indisputable and serves as mathematical proof displaying the clearly bias amount of interest in tainted information.

**C.    District of Columbia Residents Are Constantly Barraged with Bias Images, News, And Hearings Regarding January 6th**

All news sources have given close scrutiny to the defendant's arrest and to all subsequent events in this case, in an attempt to secure defendant's conviction. Such coverage vastly exceeds the privileges of the news media arising from the First Amendment, as is shown by the

---

[11] See, attached Exhibits A-H

newspaper articles and radio and television news broadcasts covering the period since January 6, 2021, daily.

As a result of the nature and amount of the news media coverage in this matter, and the number of persons in the District of Columbia regularly reading, viewing, and hearing the news media in proportion to the area's total population, it appears that virtually every household in the District of Columbia, and thus virtually every prospective juror, has been exposed to a constant barrage of inflammatory accounts, detailing in a manner highly prejudicial to the defendant every occurrence in this matter that has arisen since the defendant's arrest.

Moreover, the January 6th Committee Hearings have been promoted and publicized to citizens of Washington, D.C., with the city government sponsoring a viewing of the hearings at a public park.[12]

This local government "sponsored" interest and showing is not occurring in any other location in the world.  The sponsorship of this partisan event with no meaningful cross examination of witnesses tantamount to a court provides the citizens of D.C. with a false representation. The partisans bias goes unchallenged giving the potential juror the interpretation they are receiving factual accounts that are being led by a traditional Congressional Committee.

---

[12] Castronuova, Cara. "Gateway Pundit: Polls Show Extreme Jury Bias In January 6 Trials," *Your News* (July 19, 2022), https://yournews.com/2022/07/19/2380134/gateway-pundit-polls-show-extreme-jury-bias-in-january-6/.

DEFENDANT'S MOTION TO CHANGE VENUE



### D.    District of Columbia Residents Regard Themselves as Victims of January 6th Defendants[13], And Victims Cannot Be Unbiased Jurors Against Their Perpetrators

A victim of a crime and the victim's friends and family are generally held to be biased jurors in the victim's case.  *See, e.g.*, *State v. Montella*, 2022 Tenn. Crim. App. LEXIS 156 (holding that Defendant's right to a fair trial was violated and ordering a new trial because a juror failed to disclose his relationship with the victim's parents).  Furthermore, victims of certain types of crimes, such as domestic abuse and sexual assault, who do not disclose these types of crimes against themselves, are found to be potentially biased jurors in cases of similar types.  *See, e.g.*, *Sexton v. Slate*, 2019 Tenn. Crim. App. LEXIS 755 (holding that defendant's right to a fair trial and impartial jury was violated because a juror did not disclose her history of domestic abuse, and, during deliberations, she discussed her experiences as a victim of domestic violence and compared herself to the defendant's wife).

Eighty-two percent of the District of Columbia community "claim high levels of personal impact and perceived victimization caused by the events of January 6, including a feeling of an increased concern for safety, experiencing restrictions on the freedom of movement, identifying as a member of a group they believe was targeted, and being 'personally

---

[13] *See* Hector Alejandro Arzate et al., *'It Was An Attack On Our Hometown': How 11 Washingtonians Remember the Insurrection*, DCIST (Jan. 5, 2022), https://dcist.com/story/22/01/05/dc-locals-jan-6-capitol-insurrection-anniversary/.

affected' by the events of January 6th."[14]  Sixty-two percent of the community "feels that some or all of the events at issue were racially motivated, and most of the respondents who feel this way are non-white."[15]  *Id.*  Forty-four percent of the community "is a member of a group or class that they believe was targeted by events at issue in the case(s)."  Meanwhile, "only 6% to 18% of the potential jurors in the other test areas are expected to view the case(s) from this perspective."[16]

Therefore, if District of Columbia residents were permitted to serve on juries trying January 6th defendants, then, by these residents' own beliefs, the victims would be jurors trying their own alleged perpetrators.

### E.      District of Columbia Citizens Polled Have Openly Admitted That They Will Vote to Convict January 6th Defendants If Selected as Jurors Prior to hearing the merits of the case as it pertains to the individual.

A study comparing the opinions about January 6th defendants between residents of Atlanta and residents of the District of Columbia ("D.C.") shows that 84% of D.C. residents find "the people arrested for participating in the events at the U.S. Capitol on January 6" to be "unfavorable," while 54% of Atlanta residents feel this way.[17]  Further, 71% of D.C. residents believe that people arrested for January 6th activities are guilty of the charges brought against them.[18]  Most significantly, 52% of D.C. residents stated that they were likely to vote "guilty" if they were "on a jury for a defendant charged with crimes for his or her activities on January 6th."  Only 33% of these residents said that their vote would "depend," which plainly indicates that the majority of

---

[14] Castronuova, *supra.*
[15] Id.
[16] Id.
[17] Id.
[18] Id.

D.C. residents have preemptively decided guilt (for ALL J6 defendants as a class) prior to hearing a scintilla of supporting evidence at trial.[19]

Moreover, "[j]ury-eligible citizens of the District of Columbia are more likely by a statistically significant margin than their counterparts in the Atlanta division to believe the terms 'conspiracy theorists,' 'criminals,' 'white supremacists,' and 'members of a violent right-wing organization' accurately describe the January 6 defendants."[20]  When the proposed jury pool largely believes that the defendants in these cases seek death, disenfranchisement, or deportation of that jury and their loved ones, how could they be expected to be impartial?

F. **This Prejudicial Fog Permeates To All January 6th Defendants Who Cannot (and have not) Receive(d) A Trial by An Impartial Jury In This Venue.**

During Matthew Bledsoe's jury selection, a courtroom observer described the jury pool as comprised of "mostly far left liberals who admitted to getting their news from CNN and The Washington Post."[21] These potential jurors "made statements like 'what happened on January 6th is a stain in America's History' and admitted that they could not be 'fair and impartial' jurors."[22]  Yet, "two veterans and a military worker that were being considered as jurors . . . were immediately struck by the prosecution and did not make the jury."[23]  Despite many potential, and ultimately selected, jurors having admitted that they could not remain impartial, "Chief Justice Beryl Howell kept pushing forward potential jurors that clearly answered that they cannot remain impartial to 'put their feelings aside' and 'make a decision based on the evidence clearly presented by the government.'"[24]  Only by pressuring the potential jurors

---

[19] Id.
[20] Id.
[21] Id.
[22] Id.
[23] Id.
[24] Id.

was Chief Justice Howell able to 'rehabilitate' the jurors.[25]  Had these jurors been resistant to the pressures placed on them by a judge, there would not have been enough impartial jurors to serve on the jury.[26]

## V.    Conclusion

For the foregoing reasons, this Court should find that Mr. Alberts will not receive a fair trial by an impartial jury if the present matter remains in the District of Columbia and should grant Mr. Alberts' requested relief.

---

[25] Id.

[26] Id.

Dated: December 22, 2022                     Respectfully Submitted,

                                             /s/ John M. Pierce
                                             John M. Pierce
                                             John Pierce Law, P.C.
                                             2550 Oxnard Street
                                             3rd Floor,  PMB# 172
                                             Woodlands, Hills, CA 91367
                                             jpierce@johnpiercelaw.com
                                             (213) 279-7648
                                             *Attorney for Defendant*

# EXHIBITS A-H

EXHIBIT A- PROUD BOYS ANALYTICS



# Proud Boys

**https://trends.google.com/trends/explore?date=2021- 01-01%202022-12-07&geo=US&q=Proud%20Boys**



EXHIBIT B- SEDITIOUS CONSPIRACY ANALYTICS



# Seditious Conspiracy

**https://trends.google.com/trends/explore?date=2022-01-01%202022-12-07&geo=US&q=Seditious%20**



EXHIBIT C- SEDITION ANALYTICS



# Sedition

**https://trends.google.com/trends/explore?date=2021-01-01%202022-12-07&geo=US&q=Sedition**



EXHIBIT D- SELECT COMMITTEE ANALYTICS



# Select Committee

**https://trends.google.com/trends/explore?date=2022-01-01%202022-12-07&geo=US&q=Select%20Committee**



EXHIBIT E- JAN 6 COMMITTEE ANALYTICS



# Jan 6th Committee

**https://trends.google.com/trends/explore?date=2022-01-01%202022-12-07&geo=US&q=January%206th%20Committee**



EXHIBIT F- INSURRECTION ANALYTICS



# Insurrection

**https://trends.google.com/trends/explore?date=2021-01-01%202022-12-07&geo=US&q=Insurrection**



EXHIBIT G- CAPITOL RIOT ANALYTICS



# Capitol Riot

**https://trends.google.com/trends/explore?date=2021-01-01%202022-12-07&geo=US&q=Capitol%20Riot**



EXHIBIT H- WHITE SUPREMACIST ANALYTICS



# White

# Supremacist

**https://trends.google.com/trends/explore?date=2021- 01-01%202022-12-07&geo=US&q=White%20Supremacist**



# EXHIBIT I

EXPERT WITNESS REPORT IN SUPPORT OF DEFENDANT'S MOTION
FOR CHANGE OF VENUE TO NEBRASKA or NORTH DAKOTA SEEKING
A FAIR JURY TRIAL

Treniss J. Evans III

Founder of Condemned USA

Condemned USA is a legal advocacy group serving defendants investigative effort
and legal needs

210-571-2847

treniss@condemnedusa.com

1.    I, Treniss Evans hereby attest that the following facts are true and within my
personal and professional knowledge and experience, under penalties of perjury.  I
am older than the age of 18 years, and I am prepared to address, discuss, and
answer any questions regarding the facts in this declaration.  I can be reached at the
address and contact numbers listed above.

2.    I am the founder of the organization Condemned USA serving the interests of
January 6th defendants.  I have been researching and investigating the events and
related data of January 6th since January 6th 2021.  I have worked with numerous
individuals who are experts in their fields of data research. I began exploring the
data contained withing the report in August of 2022.  Samples were submitted to
numerous researchers and to data experts who supported the statements.  The

findings were supported not only by the instructions of the data collection application (Google Trends) .  The collective reasoning of the parties agrees that Google Trends serves as a meaningful and accurate representation of how data is compiled and digested.  Google data has been presented as evidence in countless January 6th cases by the government.

4.    I am regarded to be a leading expert serving in various capacities to educate the public on the January 6th event. Attributes include speaking at numerous engagements, authoring a book, leading efforts and serving as documentarian in a documentary film. I have reviewed thousands of hours of research videos, been a panelist, been on dozens of televised shows, and written or collaborated for numerous articles for newspapers, blogs, online publications and books.

5.   I recently concluded part one of a three part exhaustive research effort that began in August of 2022.  The research efforts continue to compile data and locate additional supporting information explaining how the January 6th Select Committee created a clear bias for the residents of Washington D.C.  The partisan based information clearly provided what people misidentify as a court and a tainting of the jury pool amongst other problematic matters.   I was able to conduct studies on the impact of the available information and how the willful engagement of the tainted and bias reporting affected the jury pool and an exponential rate in D.C.  Many polls and smaller data sets exist to point to this but this is a much larger set of data and the entire of the nation represented without knowing they were providing polling data.  The data has no opinion and clearly shows how people in The United States compared to Washington D.C. engaged in collecting information about the January 6th event at The United States Capitol. The Select Committee clearly has an opinion and the statements have infected the minds of

the Washington D.C. Jury pool. The most significant irrefutable constant was the irreparable damage the government has done to their own case.

6.    I have been asked to provide my expert opinion of whether defendants in cases stemming from the January 6, 2021 protest and demonstration at the U.S. Capitol can obtain a fair trial by the jury pool available in the District of Columbia (D.C.).

7.  Every J6 defendant that has been tried by Jury in Washington D.C. has been found guilty on nearly all charges related to January 6th

8.   In assessing this question, I reviewed dozens of sources of data and opinion surveys to include the change of venue motions that have been denied or are yet to see a ruling.

9.   The District of Columbia is the nation's capital.  It houses a high percentage of the federal workforce.  It has been estimated that thirty-eight percent of D.C. households contain a government employee.  Even those households without a government employee are disproportionately distributed related to all other parts of the country serving as federal contractors, federal licensees, and federal lobbyists. It has been estimated that a high percentage of lobbyists advocate <u>more</u> government.  A study two decades ago found that over 90 percent of witnesses who testify before congressional committees are government employees.  And of the rest, 99% testify that they advocate MORE and larger government.

        This disproportionate government jury pool knows that their lives, their careers and their fortune depend on the federal government being large, expansive, and…  If Republican firebrands ever gain traction their entire lives and careers will be ended, and they will need to earn their livings by producing goods and services in the private sector.

Government employees are the only sector of the population who support socialism, according to polls.

Obviously this is not true of the United States generally. Polling done by Gallup and other organizations consistently finds that a majority of the population has very little trust in the federal government. A majority of the population say that more than fifty cents out of every dollar received is wasted by the government.

III.     The D.C. jury pool—already pro-government, pro-democrat, and anti-republican—became more pro-government, more pro-democrat, and more anti-republican in the wake of the 2020 election, Trump's election claims, and the protest on January 6th..

A.     The D.C. Jury pool saw their city shut down with every trump rally; The pool associates or identifies trump supporters as they have been told by their leaders in government to recognize them.  racists, violent, white supremacist, domestic violent extremists, treasonous, sedition, violent mob.

B.     This information was falsely labeled as evidence as if it were deemed factual.

The January 6th protest was not the only Trump Rally in D.C. in the wake of the November election returns. On November 14th The Million MAGA March falsely labeled Trump Supporters as violent by politically motivated bias groups like the Southern Poverty Law Center.

IV.     The D.C. jury pool believes January 6th protestors are guilty resulting from information they have consumed supported by the one-sided narrative of the House Select Committee and their politically motivated investigation and findings.

V.      The D.C. jury pool has determined that the January 6th defendants are not simply guilty; the pool believes that January 6th defendants are truly dangerous and must be harmed, destroyed, or caged as this was an "attack on democracy."

VI.      Most significantly, D.C. residents regard themselves as victims of January 6th defendants in the same way victims of a hurricane see themselves as hurricane victims. No reasonable court in search of justice would allow the hurricane victims to put the hurricane on trial as the jurors. This like scenario would be a deprivation of the constitutional rights of the hurricane just as it is a deprivation of the constitutional rights of the defendants before this court.

We all recognize how victims of perpetrators cannot be unbiased.  A jury pool could not logically be formed of any of the victims, family friends of a victim. This matter is unique as much of the city feels they are victims of this "attack" on their Capitol.

In the case of January 6, however, the problem is even worse. Putting D.C. residents in the jury is like putting rape victims on a jury trying their own rapists.  Any verdict would be as legitimate.

D.C. residents at a public park—sponsored by city government, watching House January 6th committee hearings are further tainting the jury pool in an unprecedented fashion.  This increased exposure provides to the citizens in no uncertain terms that the committee is legitimate and serving the interest of the community.

Compared to other cities, D.C. jury pool is disproportionately African American. A majority believe January 6th defendants are "White Supremacists"

The D.C. Jury pool doesn't just regard the defendants as criminals, terrorists, and their own victimizers; the pool regards January 6th defendants as "white supremacists."

Patriotically & Respectfully,

Treniss Evans

210-571-2847

treniss@condemnedusa.com

www.condemnedusa.com