**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Case No.:  21-CR-026 (CRC)**

UNITED STATES OF AMERICA,
         Plaintiff,
    v.                                  Case No.  21-cr-026 (CRC)
CHRISTOPHER MICHAEL ALBERTS
         Defendant.

_____/

<u>ALBERTS FIRST PROPOSED JURY INSTRUCTIONS</u>

**COMES NOW, Defendant, CHRISTOPHER MICHAEL ALBERTS, (hereinafter, "Defendant" or "Alberts"), by and through undersigned counsel, with this first set of proposed jury instructions.  These proposals respond to the government's proposed instructions regarding the specific counts alleged.  (Alberts may have objections and proposals regarding certain general instructions as well; to be developed in other filings.)**

**Instruction No. 19:  Count One – Civil Disorder**
(18 U.S.C. § 231(a)(3); *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *United States v. Rupert*, No. 20-cr-104 (D. Minn. Mar. 12, 2021) (ECF No. 81); *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101))

Count One charges the defendant with committing or attempting to commit an act to obstruct, impede, or interfere with law enforcement officers lawfully carrying out their official duties incident to a civil disorder, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find the following <span style="color:red">five</span> ~~three~~ elements beyond a reasonable doubt:

**First,** the defendant knowingly committed an act or attempted to commit an act <span style="color:red">which obstructed, impeded, or interfered with</span> one or more law enforcement officers.

**Second**, <span style="color:red">in committing or attempting to commit that act, the defendant intended to obstruct, impede, or</span>

interfere with one or more law enforcement officers.

**Third**, at the time of the defendant's actual or attempted act, the law enforcement officer or officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

**Fourth**, the civil disorder in any way or degree obstructed, delayed, or adversely affected either commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. The defendant cannot be convicted for effects on commerce caused by government enforcement or regulation, but only for the effects he actually personally caused.

**Fifth,** the defendant's conduct was not protected expression, speech, political advocacy, or petitioning for redress of grievances under the First Amendment.

Definitions
(18 U.S.C. § 232; 18 U.S.C. § 6; 5 U.S.C. § 101; 2 U.S.C. §§ 1961, 1967; *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101))

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did or said.

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, ~~including the District of Columbia~~, and any other state, ~~including the District of Columbia~~. It also means

~~commerce wholly within the District of Columbia.~~[1] "Commerce" cannot pertain to commerce wholly within the District of Columbia.

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.

The term "department" includes executive departments. The Department of Homeland Security, which includes the United States Secret Service, is an executive department.

The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.

For the U.S. Capitol Police and the Metropolitan Police Department, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.

]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]

### Instruction No. 20:  Count Two – Assaulting, Resisting or Impeding Certain Officers

(18 U.S.C. § 111(a)(1); O'Malley, Grenig, and Lee, Federal Practice and Instructions § 24:03 (6th ed.); *United States v. Feola*, 420 U.S. 671, 684 (1975); *United States v. Arrington*, 309 F.3d 40, 44-45 (D.C. Cir. 2002))

Count Two charges the defendant with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer or an employee of the United States who was then engaged in the performance of his official duties, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of forcibly assaulting, resisting, opposing,

---

[1] Modified definition of 18 U.S.C. § 232(2) from jury instructions *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021). *See United States v. Webster*, No. 21-cr-208 (APM) (ECF 101 at 16).

impeding, intimidating, or interfering with an officer or an employee of the United States who was then engaged in the performance of his official duties, while making physical contact with the person or acting with the intent to commit another felony, you must find the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer Shauni Kerkhoff, Sergeant Adam DesCamp, Sergeant Matthew Flood, Officer Eugene Goodman, Officer Stephen Sherman, Officer Brett Sorrell, or Inspector Amy Hyman, or another officer from the United States Capitol Police.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties, or any person assisting such an officer or employee in the performance of that officer's duties.

Fifth, the defendant made physical contact with and assaulted a person who was an officer or an employee of the United States who was then engaged in the performance of his official duties, or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count One.

<u>Definitions</u>

The defendant acted "forcibly" if he used force, attempted to use force, or threatened to use force against an officer. A threat to use force at some unspecified time in the future is not sufficient to establish that the defendant acted forcibly.

The term "assault" means any intentional attempt or threat to inflict injury upon

someone else, when coupled with an apparent present ability to do so.  A finding that one used force (or attempted or threatened to use it) isn't the same as a finding that he attempted or threatened to inflict injury.  In order to find that the defendant committed an "assault," you must find beyond a reasonable doubt that the defendant acted forcibly and that the defendant intended to inflict or intended to threaten injury.

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.

You are instructed that Officer Shauni Kerkhoff, Sergeant Adam DesCamp, Sergeant Matthew Flood, Officer Eugene Goodman, Officer Brett Sorrell, and Inspector Amy Hyman are officers of the United States Capitol Police and that it was a part of the official duty of such officers to protect the U.S. Capitol complex on January 6, 2021, and detain individuals who commit crimes. who lacked authorization to enter the restricted area around the complex.[2]  It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was, at that time, a federal officer carrying out an official duty so long as it is established beyond a

_____

[2] Alberts contests both that areas outside the Capitol building are lawfully restricted, and that officers have probable cause to arrest people who are merely present on the Capitol's steps, grounds, or walkways. *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972). In *Jeannette Rankin Brigade* a special 3-judge panel of the DC District Court held that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making *Jeannette Rankin Brigade* binding precedent. 409 U.S. 972 (1972). Later, in *Community for Creative Non-Violence v. Kerrigan* ("CCNV"), the DC Circuit held that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding as "a reasonable time, place or manner restriction" a regulation limiting the length of time during which demonstration "props and equipment" may remain on the Grounds). Clearly, therefore, the "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was designed--legislating"-- is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." *Jeannette Rankin Brigade*, 342 F. Supp. at 584.  Indeed, in *Jeannette Rankin Brigade*, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion." *Id.*

reasonable doubt that the victim was, in fact, a federal officer acting in the course of his duty and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.

**Instruction No. 21:  Count Three – Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon or Firearm**

(18 U.S.C. §§ 1752(a)(1) and (b)(1)(A), 3056; *United States v. Jabr*, 4 F. 4th 97, 101 (D.C. Cir. 2021)**;** *United States v. Robertson*, No. 21-cr-34 (CRC) (ECF 86 at 20)

Count Three of the indictment charges the defendant with entering or remaining in a restricted building or grounds with a deadly or dangerous weapon or firearm, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of entering or remaining in a restricted building or grounds, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, that the defendant did so knowing that the building or grounds was properly restricted.

In order to find the defendant guilty of entering or remaining in a restricted building or grounds with a deadly or dangerous weapon or firearm, you also must find that the government proved the following element beyond a reasonable doubt:

That during or in relation to the commission of the offense, the defendant used or carried a deadly or dangerous weapon or a firearm for an unlawful purpose.

The grounds of the U.S. Capitol are a traditional public forum, and are required to be generally open to the public.[3]

---

[3] See *Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972).  In Jeannette Rankin Brigade, a special three-judge panel of the D.C. District Court concluded that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making Jeannette Rankin Brigade binding precedent. 409 U.S. 972 (1972). Later, in *Community for Creative Non-Violence v. Kerrigan* ("CCNV"), the D.C. Circuit observed that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding as "a reasonable time, place or manner

<u>Definitions</u>

(18 U.S.C. §§ 1752(c), 921(a)(3); *United States v. Webster*, No. 21-cr-208 (APM), (ECF No. 101); *United States v. Robertson*, No. 21-cr-34 (CRC) (ECF 86 at 20); Seventh Cir. Pattern Criminal Jury Instructions; *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005)).

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service[4] is or will be temporarily visiting. <span style="color:red">The phrase "temporarily visiting" does not include</span>

---

restriction" a regulation limiting the length of time during which demonstration "props and equipment" may remain on the Grounds). The "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was designed--legislating"--is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." Jeannette Rankin Brigade, 342 F. Supp. at 584.  Indeed, in Jeannette Rankin Brigade, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion."

[4] 18 U.S. Code § 1752, the federal trespassing statute, is being misapplied across hundreds of January 6 cases. Congress never intended such applications when it enacted the law; and prior to the January 6 litigation, no courts had ever allowed such widespread criminal prosecutions as applied in January 6 prosecutions.

The statute reads:

18 U.S. Code § 1752 - Restricted building or grounds

(a)Whoever—

(1)knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

(2)knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

(3)knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstructs or impedes ingress or egress to or from any restricted building or grounds; or [1]

(4)knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; [2]

(5)knowingly and willfully operates an unmanned aircraft system with the intent to knowingly and willfully direct or otherwise cause such unmanned aircraft system to enter or operate within or above a restricted building or grounds;

or attempts or conspires to do so, shall be punished as provided in subsection (b).

(b)The punishment for a violation of subsection (a) is—

(1)a fine under this title or imprisonment for not more than 10 years, or both, if—

(A)the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon or firearm; or

(B)the offense results in significant bodily injury as defined by section 2118(e)(3); and

(2)a fine under this title or imprisonment for not more than one year, or both, in any other case.

(c)In this section—

(1)the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(A)of the White House or its grounds, or the Vice President's official residence or its grounds;

(B)of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C)of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

cannot include the daily or common work space of a government official under Secret Service protection.[5]

---

(2)the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

By its plain language, this statute was intended to apply to the grounds of the White House, which have ten-foot-tall fencing all the way around.  The application to the grounds of the Capitol, on the other hand, is problematic.  In numerous cases, courts have held that the Capitol's grounds are to be open to the public and are a free-speech forum area. See Jeannette Rankin Brigade v. Chief of Capitol Police, 342 F. Supp. 575 (D.D.C. 1972).  In *Jeannette Rankin Brigade*, a special three-judge panel of the D.C. District Court concluded that the Capitol Grounds are "an area to which access cannot be denied broadly or absolutely." 342 F. Supp. 575, 583-84 (D.D.C. 1972). The Supreme Court summarily affirmed, making *Jeannette Rankin Brigade* binding precedent. 409 U.S. 972 (1972). Later, in *Community for Creative Non-Violence v. Kerrigan* ("CCNV"), the D.C. Circuit observed that "there is no doubt that the Capitol Grounds are a public forum." 865 F.2d 382, 383, 387 (1989) (upholding as "a reasonable time, place or manner restriction" a regulation limiting the length of time during which demonstration "props and equipment" may remain on the Grounds).
The "Grounds (excluding such places as the Senate and House floors, committee rooms, etc.) have traditionally been open to the public," and "the primary purpose for which the Capitol was designed--legislating"--is entirely consistent "with the existence of all parades, assemblages, or processions which may take place on the grounds." Jeannette Rankin Brigade, 342 F. Supp. at 584.  Indeed, in Jeannette Rankin Brigade, the district court observed that "the fundamental function of a legislature in a democratic society assumes accessibility to [public] opinion." Id.

Prior to January 6, every court to consider the question has recognized that the Capitol Grounds as a whole meet the definition of a traditional public forum: They have traditionally been open to the public, and their intended use is consistent with public expression.

As Chief Justice Marshall wrote in 1819: "[t]he government proceeds directly from the people; is 'ordained and established,' in the name of the people... [and] is emphatically and truly, a government of the people. In form, and in substance, it emanates from them. Its powers are granted by them, and are to be exercised directly on them, and for their benefit." McCulloch v. Maryland, 17 U.S. 316, 403-05 (1819).  The people own the Capitol—and rule over it; not the other way around.  "It is said to be the right of the citizen of this great country, protected by implied guarantees of its Constitution, 'to come to the seat of government to assert any claim he may have upon that government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions.'" Crandall v. Nevada, 6 Wallace, 36, 44 (1868).

The statute's reference to "where the President or other person protected by the Secret Service is or will be temporarily visiting" plainly is informed by the definition directly above it "(A)" which specifies "of the White House or its grounds, or the Vice President's official residence or its grounds."  Obviously, the congressional intent was to protect the President and Vice President and their families from being disturbed in their sleep and living comforts.  ("Temporarily visiting" must be read as the temporary residence of the President or Vice President.)  The statute's reference to "temporarily visiting" cannot be read to prohibit access to a place where the Vice President works daily, meets with people and has an office protected by dozens of armed security staff.  (Of course, the Vice President presides over the Senate on a daily basis; so the Capitol cannot be construed as a restricted area as defined in the statute.)  A construction that Capitol grounds can be restricted because the Vice President presides over the Senate plainly violates Jeannette Rankin Brigade line of cases.

[5] The government cites *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021) but seems to articulate a construction of the statute not sanctioned in the *Jabr* decision.  *Jabr* suggested that "a rational trier of fact could have found, based on all the evidence, that *Jabr* lacked lawful authority to enter the White House" based on evidence that *Jabr* "knew that nobody was

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restricted building or grounds, you may consider all of the evidence, including what the defendant did or said.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant knowingly entered or remained in a restricted building, you may consider all of the evidence, including what the defendant did or said.

An object is a "deadly or dangerous weapon" if it is capable of causing serious bodily injury or death to another person and the defendant used it in that manner. In determining whether the object is a deadly or dangerous weapon you may consider both physical capabilities of the object used and the manner in which the object is used.

A "firearm" is defined as any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; or any destructive device.

---

supposed to go up there" and needed to "scale two fences, one of which contained a padlock, but once she got past the fences, she ran with her head ducked down because she "saw a cop car parked." *Jabr*, at 105. Thus, *Jabr* construed "without lawful authority" to mean that a defendant was aware she was without lawful authority.

**Instruction No. 22:  Count Four – Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon or Firearm**
(18 U.S.C. § 1752(a)(2) and (b)(1)(A); *United States v. Webster*, No. 21-cr-208 (APM) (ECF 101 at 21); *United States v. Robertson*, No. 21-cr-34 (CRC) (ECF 86 at 23))

Count Four of the indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon or firearm, which is a violation of federal law.

Elements

In order to find the defendant guilty of disorderly or disruptive conduct in a restricted building or grounds, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, that the defendant engaged in disorderly or disruptive conduct in, ~~or in proximity to~~, any restricted building or properly cordoned-off grounds.

Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

In order to find the defendant guilty of disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon or firearm, you also must find that the government proved the following element beyond a reasonable doubt:

That during or in relation to the commission of the offense, the defendant used or carried a deadly or dangerous weapon or a firearm without the right to do so.

The grounds of the Capitol are a free speech forum area, where people have a general right to access and protest.

Definitions

(Redbook 6.643; 18 U.S.C. § 921(a)(3); *United States v. Webster*, No. 21-cr-208 (APM), ECF No. 101 *United States v. Robertson*, No. 21-cr-34 (CRC) (ECF 86 at 23))

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by roughly shoving or elbowing ~~jostling against or unnecessarily crowding~~ that person.[6]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The term "restricted building or grounds" has the same meaning as described in the instructions for Count Three.

The term "knowingly" has the same meanings as described in the instructions for Count One.

The term "deadly or dangerous weapon" has the same meaning as described in in the instructions for Count Three.

The term "firearm" has the same meaning as described in the instructions for Count Three.

---

[6] The word "jostle" is a term which seems to not be in regular use.  Webster's Dictionary, 3d Ed. (1967), defines "jostle" as "to bump or push, as in a crowd; to elbow or shove roughly."

**Instruction No. 23:  Count Five – Engaging in Physical Violence in a Restricted Building or Grounds**
(18 U.S.C. § 1752(a)(4) and (b)(1)(A))

Count Five of the indictment charges the defendant with engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon or firearm, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of engaging in physical violence in a restricted building or grounds, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, that the defendant engaged in any act of physical violence against any person ~~or property~~ in, ~~or in proximity to~~, any <span style="color:red">properly</span> restricted building or grounds.

Second, that the defendant did so knowingly.

<span style="color:red">The Capitol Grounds are a free speech forum area which must be generally open and accessible.</span>[7]

<u>Definitions</u>

(Redbook 6.643; 18 U.S.C. § 921(a)(3); *United States v. Webster*, No. 21-cr-208 (APM), ECF No. 101)

The term "act of physical violence" means any act involving an assault or other infliction or threat of death or bodily harm on an individual; or damage to, or destruction of, real of personal property.

The term "restricted building or grounds" has the same meaning as described in Count Three.

The term "knowingly" has the same meanings as described in the instructions for Count

---

[7] Jeannette Rankin Brigade v. Chief of Capitol Police, 342 F. Supp. 575 (D.D.C. 1972).

One.

**Instruction No. 24:  Count Six – Unlawful Possession of a Firearm on Capitol Grounds or Buildings**
(40 U.S.C. § 5104(e)(1)(A); *United States v. Bryan*, 524 U.S. 184, 190 (1998); *United States v. Ibrahim*, No. 1:21-cr-496 (TJK) (D.D.C. Mar. 3, 2023))

Count Six of the indictment charges the defendant with unlawful possession of a firearm on Capitol Grounds or Buildings, which is a violation of federal law in some instances.

## Elements

In order to find the defendant guilty of this offense, you must find that the government  proved each of the following element beyond a reasonable doubt:

That the defendant carried in any of the United States Capitol Buildings or restricted Grounds a firearm, dangerous weapon, explosives, or an incendiary device.

The Grounds of the Capitol are a public free speech forum, and must be generally open and accessible to all people.[8]

## Definitions
(40 U.S.C. §§ 5101, 5102; Pub. L. 96-432 (1980))

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The "Capitol Grounds" are defined by the United States Code, which refers to a 1946 map on file in the Office of the Surveyor of the District of Columbia.  The boundaries of the Capitol Grounds include all additions added by law after that map was recorded.  The Capitol Grounds  includes the portion of Pennsylvania Avenue Northwest from the west curb of First Street Northwest to the curb of Third Street Northwest.

---

[8] Jeannette Rankin Brigade v. Chief of Capitol Police, 342 F. Supp. 575 (D.D.C. 1972).

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning as that described in the instructions for Count

One.

**Instruction No. 25: Count Seven – Disorderly Conduct in a Capitol Building or Grounds**
(40 U.S.C. § 5104(e)(2)(D); *United States v. Bryan*, 524 U.S. 184, 190 (1998))

Count Seven of the indictment charges the defendant with disorderly conduct in a Capitol Building or Grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government  proved each of the following elements beyond a reasonable doubt:

First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or properly restricted Grounds.

Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, that the defendant acted willfully and knowingly.

Definitions
(40 U.S.C. §§ 5101, 5102; Pub. L. 96-432 (1980))

The term "United States Capitol Buildings" has the same meaning as described in Count Six.

The term "Capitol Grounds" has the same meaning as described in the instructions for Count Six.

The term "disorderly or disruptive conduct" has the same meaning as described in the instructions for Count Four defining "disorderly conduct" and "disruptive conduct."

The term "willfully" has the same meaning as described in the instructions for Count Six.

The term "knowingly" has the same meaning as that described in the instructions for Count

One.

**Instruction No. 26:  Count Eight – Act of Physical Violence in the Capitol Grounds or Building**
(40 U.S.C. § 5104(e)(2)(F); *United States v. Bryan*, 524 U.S. 184, 190 (1998))

Count Eight of the indictment charges the defendant with an act of physical violence in the Capitol Grounds or Building, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government  proved each of the following elements beyond a reasonable doubt:

First, that the defendant engaged in an act of physical violence in any of the United States Capitol Buildings or Grounds.

Second, that the defendant acted willfully and knowingly.

<u>Definitions</u>
(40 U.S.C. §§ 5101, 5102; Pub. L. 96-432 (1980))

The term "United States Capitol Buildings" has the same meaning as described in Count Six.

The term "Capitol Grounds" has the same meaning as described in the instructions for Count Six.

The term "act of physical violence" has the same meaning as described in the instructions for Count Five.

The term "willfully" has the same meaning as described in the instructions for Count Six.

The term "knowingly" has the same meaning as that described in the instructions for Count One.

**Instruction No. 27:  Count Nine – Carrying a Pistol Without a License Outside Home or Place of Business**
(D.C. Code § 22-4504(a); 1 Criminal Jury Instructions for DC Instruction 6.500)

Count Nine of the indictment charges the defendant with carrying a pistol without a license, which is a violation of D.C. law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government  proved each of the following elements beyond a reasonable doubt:

First, that the defendant carried a pistol on or about his person within the District of Columbia <span style="color:red">without a right to do so.</span>

Second, he did so voluntarily and on purpose, and not by mistake or accident.

Third, the defendant was not licensed to carry the pistol by the Chief of Police of the District of Columbia.

~~Fourth, he carried the pistol in a place other than his home, place or business, or land or premises controlled by him.~~ [9]

<u>Definitions</u>
(D.C. Code § 22-4501; D.C. Code § 7-2501.01;
1 Criminal Jury Instructions for DC Instruction 6.500)

The term "pistol" means a firearm that has a barrel less than 12 inches in length or that was originally designed to be fired with a single hand.  The term "firearm" means a weapon, regardless of operability which will or is intended to expel a bullet by the action of an explosive.

A person carries a pistol on or about his person if it was on his person or if it was

---

[9] This sentence is plainly inaccurate, given the Supreme Court's 2022 ruling in *New York State Rifle & Pistol Association Inc. v. Bruen*, 597 U.S. _____(2022).

conveniently accessible to him and within his reach.

### Instruction No. 28:

### First Amendment Rights

Every person has the right to petition his or her government, and express ideas and bring their concerns to their legislators. Citizens also have the right to peaceably assemble with others to petition their government. And under the First Amendment, a person has a constitutional right to make violent or antigovernment statements and threats and may call upon others to act violently, except in rare circumstances where the speaker knows such violent threats have an immediate likelihood of getting others to immediately carry out such violence and reasonably knows that others have the ability and are likely to carry out such threats.

These First Amendment rights apply to every count in the indictment. If you find that the defendant's conduct was First Amendment protected speech, expression, or advocacy, you must find the defendant not guilty. The United States Capitol is one of America's largest public buildings. It is the headquarters of the Legislative Branch of government, where the American people have broad rights to petition, advocate, protest, and meet with members of Congress and staff in order to promote or prevent the advancement of legislation or other congressional acts.

### Instruction No. 29:

### The Second Amendment Right to Bear Arms

The right to carry a firearm in public for self-defense is deeply rooted in history, and is a first-class right of the same importance as the 1st amendment. No showing of "special need" is needed to exercise the right to carry arms. While some "sensitive places" restrictions might be appropriate, public forums are not "sensitive places." The Second Amendment right applies to every count in the indictment. If you find that the defendant's conduct was protected by the Second Amendment, you must find the defendant not guilty.

]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]]

**Proposed Instruction No. __**

MERE PRESENCE

Mere presence at the scene of a crime or mere knowledge that a crime is being committed is not sufficient to establish that the defendant committed the crimes of unlawful entry or unlawful picketing and parading. The defendant must be a participant and not merely a knowing spectator. The defendant's presence may be considered by the jury along with other evidence in the case.

**Proposed Instruction No. __**
**Guilt Must be individualized**

Guilt by association is not allowed under the American Constitution. The determination of guilt must be an individualized matter. Defendant Thomas cannot be convicted of crimes by a mob or group, unless you find beyond a reasonable doubt that Thomas himself committed such crimes.

The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1992); Scales v. United States, 367 U.S. 203, 229 (1961); *Carr v. District of Columbia*, 561 F. Supp. 2d 7, 13 (D.D.C. 2008). See also *Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006). "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another ...."

# Instruction No. 40: Delivering the Verdict

When you have reached your verdict, just send me a note informing me of this fact, and have your foreperson sign the note. Do not tell me what your verdict is. The foreperson should fill out and sign the verdict form that will be provided. I will then call you into the courtroom and ask your foreperson to read your verdict in open court.

Thank you. You may now retire to begin your deliberations.

Respectfully Submitted,
/s/ John M. Pierce
John M. Pierce
John Pierce Law, P.C.
21550 Oxnard Street
3rd Floor,
PMB 172 Woodland Hills, CA 91367

jpierce@johnpiercelaw.com
(213) 279-7648
Attorney for Defendant
CERTIFICATE OF SERVICE
I hereby certify that on April 9, 2023, a true and accurate copy of the forgoing was electronically filed and
served through the ECF system of the U.S. District Court for the District of Columbia