UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 21-cr-00026 (CRC) |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER MICHAEL ALBERTS, | : | |
| | : | |
| Defendant. | : | |

### MOTION TO EXCLUDE THE PROPOSED EXPERT TESTIMONY OF STEVE HILL AND DICK HELLER AND TO STRIKE AFFIRMATIVE DEFENSES

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, moves to exclude the defendant's proposed expert testimony of Steve Hill and Dick Heller and strike his affirmative defenses, each of which is contrary to law.

The defendant should be barred from presenting the proposed expert testimony for multiple reasons, including that (1) defendant's belated notices – submitted after the Pretrial Conference and just three days before trial – fail to comply with Fed. R. Crim. P. 26; (2) Mr. Hill is not qualified to opine on the particular subjects for which he is noticed; (3) Mr. Hill's and Mr. Heller's areas of purported expertise are irrelevant and would introduce improper testimony; and (4) both individuals would testify regarding issues of law and meritless defenses.

Alberts also should be prohibited from eliciting testimony, presenting evidence, or arguing to the jury about his affirmative defenses,[1] which previously were the subject of the government's motion in limine. Those purported defenses improperly seek jury nullification and

---

[1] The government does not seek to prevent Alberts himself from testifying as to his own observations, intent, state of mind, or motives where relevant to the jury's consideration of the crimes charged. However, argument, evidence, and testimony related to these meritless defenses should be prohibited.

raise legal arguments already rejected by this Court.

## BACKGROUND

### I. Factual Background

On January 6, 2021, a large crowd, including defendant Christopher Alberts, gathered on restricted Capitol grounds and forced its way to the exterior façade of the Capitol Building as a joint session of Congress convened to certify the vote count of the Electoral College for the 2020 Presidential Election. ECF No. 1-1 at 1. Alberts wore a gas mask and body armor containing metal front and back plates, among other items. He carried a loaded firearm. As officers attempted to prevent the assembled rioters from advancing further onto restricted grounds and toward the Capitol Building, Alberts brandished a wooden pallet-type object and used it as a makeshift battering ram as he ascended the Northwest Steps at 1:54 p.m. He advanced toward the police line, making physical contact with the uniformed U.S. Capitol Police (USCP) officers, in an attempt to break through their position.[2] *See* ECF No. 69 at 3. Some rioters eventually rushed past those officers and violently forced entry into the Capitol; others remained outside attacking officers and attempting to breach the building elsewhere. *Id.*

At around 7:22 p.m., MPD Officer Dallan Haynes was among a group of uniformed officers enforcing a 6:00 p.m. to 6:00 a.m. curfew enacted by the D.C. Mayor. As Alberts and other rioters begrudgingly moved past, while in a Capitol parking lot on Pennsylvania Avenue between First and Third Street NW, Officer Haynes observed a bulge on Alberts's right hip, consistent with the shape of a handgun. He used his MPD-issued baton to tap the object, which

---

[2] Video of Alberts's assault on the USCP officers can be seen in Government's Trial Exhibit 308, or approximately 5:37 to 5:50 in this video: Trump Supporters Storm Capitol Building during January 6 Insurrection - 4K Footage - YouTube

2

made a metal sound and seemed to have the characteristics of a firearm. In a lawful search and seizure, a loaded firearm (containing 13 rounds of ammunition) was found inside a holster recovered from Alberts's right hip area. The officers also recovered another magazine, containing 12 rounds of ammunition, a pocket knife, and other items.

Alberts is charged with nine crimes: (1) civil disorder; (2) assaulting, resisting, or impeding federal officers; (3) entering and remaining on restricted grounds with a deadly weapon; (4) disorderly or disruptive conduct within restricted grounds with a deadly weapon; (5) engaging in physical violence in restricted grounds; (6) unlawful possession of a firearm on Capitol grounds; (7) disorderly conduct within Capitol grounds; (8) physical violence within Capitol grounds; and (9) carrying a pistol without a license.

## II. Procedural Background

Alberts is scheduled for jury trial on April 11, 2023. On January 13, 2023, the government requested reciprocal discovery from Alberts pursuant to Fed. R. Crim. P. 16, including disclosure of expert witnesses under Rule 16(b)(1)(C). *See* Ex. A. Alberts did not respond or otherwise provide such disclosures. The parties' exhibit lists were required to be exchanged by January 16, 2023. The government filed its objection to certain of Alberts's exhibits (and categories of exhibits that are inadmissible) on January 26, 2023. Alberts did not submit a response. The government then filed a motion in limine seeking to exclude improper arguments and evidence on March 2, 2023. Alberts did not respond by the March 17, 2023 deadline or at any time prior to the April 5, 2023 pretrial conference. However, at that conference, Alberts for the first time alerted the Court and the government that he intended to rely upon expert witnesses and present certain defenses. Neither the witnesses nor the defenses had been raised by Alberts during the pendency of this case.

3

Then, during the evening of Friday April 7, 2023 and the morning of Saturday April 8, 2023, Alberts notified the Court and the government that (1) he intended to designate Steve Hill "as the defense team's expert on the evaluation of in the fields of [*sic*] use-of-force, self-defense, and crowd control," ECF No. 119 at 1; (2) he intended to designate Dick Heller as "an expert on D.C. politics, D.C. community culture, the Second Amendment and D.C. gun regulation and culture," ECF No. 120 at 1; and (3) he asserted affirmative defenses of "The Second Amendment Right to Bear Arms in Self Defense," "Justifiable Use of Force," "Necessity," "The First Amendment right to petition government for redress, and to free speech, press, and assembly," and "Civil Disobedience, with regard to the gun counts and the purported curfew in this case," ECF No. 121 at 1. Alberts further requested an evidentiary hearing "to determine any additional facts necessary for establishing these defenses at trial." *Id.*

## ARGUMENT

Alberts has provided improper notice of his intent to call two expert witnesses: Steven Hill and Dick Heller. Neither Mr. Hill nor Mr. Heller should be qualified as an expert on the matters for which the defendant seeks to call them. Even if they could be so qualified, both alleged experts appear to base their opinions on speculation and/or insufficiently reliable facts. Finally, even if the defense could surmount those first two hurdles, each issue that the defendant seeks to have Mr. Hill and Mr. Heller opine about to the jury is either irrelevant or otherwise an improper legal conclusion. The Court should not permit Mr. Hill or Mr. Heller to provide their opinions on any of these topics. Moreover, the Court should strike Alberts's affirmative defenses for the reasons previously set forth in the government's motion in limine, ECF No. 106, and as set forth below.

**I.      Legal Standard**

Under Fed. R. Crim. P. 16, a defendant must make expert disclosures by a deadline "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). The disclosure for each expert witness must contain, (1) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief," (2) "the bases and reasons for them," (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years," and, (4) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(b)(1)(C)(iii).

> Federal Rule of Evidence 702 principally governs the admission of expert testimony:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) [t]he testimony is based on sufficient facts or data; (c) [t]he testimony is the product of reliable principles and methods; and (d) [t]he expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court has "the responsibility of acting as [a] 'gatekeeper[]' to shield unreliable or irrelevant expert testimony and evidence from the jury. *United States v. Sutton*, No. CR 21-0598 (PLF), 2022 WL 16960338, at *2 (D.D.C. Nov. 16, 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). Thus, "the twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance." *FTC v. Whole Foods Mkt., Inc.*, No. 1:07-cv-1021 (PLF), 2007 WL 7632283, at *1 (D.D.C. July 27, 2007). "With respect to relevance, the Court must determine whether the proffered testimony is sufficiently tied to the facts of the case and whether it will aid the factfinder in resolving a factual

5

dispute." *FTC v. Whole Foods Mkt., Inc.*, 2007 WL 7632283, at *1 (citing *Daubert*, 509 U.S. at 592-93). In addition to presenting reliable and relevant testimony, "an expert witness also must be "qualified" under Rule 702[,]" such that they possess sufficient "knowledge skill, experience, training or education," for their conclusions. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 49 (D.D.C. 2017) (quoting Fed. R. Evid. 702).

The defendant cannot meet these standards for either purported expert, at least not on the topics for which their claimed expert testimony is proposed.

**II.     Steve Hill**

The defendant intends "to designate Steve Hill as the defense team's expert on the evaluation of in the fields of [*sic*] use-of-force, demonstration crowd control[,] and police civil liability." ECF No. 119 at 1; *see also id.* at 2 (Mr. Hill "stands ready to testify on his evaluation of the fields of law enforcement use-of-force, demonstration crowd control, police civil liability, and the movement and actions of the crowd"). According to the defendant and Mr. Hill's resume, Mr. Hill is a retired police officer, systems engineer, and "protective force" trainer. *Id.* at 4-5; *see also* ECF No. 119-1 at 1.

Initially, the defendant's Rule 16 disclosure regarding Mr. Hill is deficient. The government requested Rule 16(b)(1)(C) disclosures no later than January 13, 2023. *See* Ex. A. Although the Court did not set a deadline for expert witness disclosures, a date four days before trial (and following the pretrial conference) is not "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). Moreover, the notice does not remotely set forth "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and

6

"the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). The only opinions set forth – in just three sentences – are that (1) law enforcement officers were "required to consider" that their conduct was not justified; (2) the use of less-than-lethal force violated official policies and procedures; and (2) officers responded with "overly aggressive tactics which was dangerous and provocative, in violation of their training and the standards governing police use of force." ECF No. 119 at 3. Mr. Hill also apparently is intended to serve as "a rebuttal witness" regarding "the use-of-force by the defendant and [ ] the use-of-force by police officers when confronted by citizens in possession of various weapons." *Id.* at 5.

Alberts provides little to no bases for these opinions. He states only that Mr. Hill will "testify about video recordings" and that unidentified conduct by undisclosed officers constituted "prohibited and illegal practices in violation of the officers' training and the standards[.]" *Id.* at 4. Alberts neglects to identify any training, policies, or procedures on which Mr. Hill bases his opinions. He also does not set forth the video recordings reviewed by Mr. Hill to inform his conclusions.

Mr. Hill's expert testimony has been rejected before. On April 6, 2023, a defendant represented by Alberts's counsel attempted to call Mr. Hill to offer his opinion on nearly identical matters during the ongoing trial of *United States v. Pezzola*, No. 1:21-cr-175-TJK (6) (Tr. of Jury Trial Day 61 at 17299-30). In fact, portions of the defendant's notice for Mr. Hill in this case appear to be cut-and-pasted from those provided in the Proud Boys case. *See* ECF No. 119 at 1-7 (erroneously titled, "NOTICE OF EXPERTS-BARNETT"); *see also id.* at 3 n.2 ("I believe that it is undisputed between the parties that after the "first breach", a large crowd continued to gather on the side of the scaffolding, where the officer's police line gathered at the top of the steps. This is

7

the area where Pezzola is alleged to have robbed a shield. This is also the only area this Notice refers to with regards to expert Hill."). Judge Kelly excluded Mr. Hill's proposed expert testimony "both on notice grounds and on relevance grounds and on 403 grounds, to the extent there is any relevance, because I do think it would be extremely difficult for the jury, even if there was some relevance to it, to pull that apart from a, sort of, self-defense theory that I've excluded and that Mr. Pezzola is not saying he's offering that for."

Mr. Hill's proposed expert testimony about the officers' use-of-force on January 6, 2021 also has been excluded by this Court in *United States v. Barnett*, No. 1:21-cr-38-CRC, and by Judge Mehta in *United States v. Rhodes*, No. 1:22-cr-15-APM, ECF Nos. 267, 285.

### A. Mr. Hill is not qualified to opine on USCP Training, Policies, or Procedures.

Even if the subjects of his testimony were relevant and admissible – which they are not – Mr. Hill is not qualified to speak on the topics for which the defendant has noticed him as an expert and seeks to allow the jury to hear his unfounded opinions. And Mr. Hill's trial testimony would be limited to the contents of his Rule 16 notice. *See United States v. Robinson*, 258 F. Supp. 3d 85, 86 (D.D.C. 2017) (granting government's motion in limine to exclude expert testimony not previously disclosed).

According to the defendant's notice, he specifically wishes to call Mr. Hill to opine based upon unidentified video evidence that unidentified officers engaged in excessive force and otherwise acted contrary to unspecified law enforcement training, policies, and procedures. *See* ECF No. 119 at 3. But Mr. Hill is not a current or former USCP officer, does not appear to have undergone training as a USCP officer, and claims no familiarity with the policies and procedures of USCP. *See* ECF No. 119-1. Mr. Hill worked as a police officer in Albuquerque, New Mexico,

8

and as a systems engineer at the Sandia National Laboratory from 1986 until the present. *Id.* Although he claims to have trained dignitaries and students in topics including less-lethal munitions between 2000 and 2003, while he intermittently served as an adjunct instructor at the Department of Energy National Training Center, *id.* at 3, his knowledge of the subject matter of his testimony appears to be sparse. There is no indication that Mr. Hill ever served in a riot control capacity or is familiar with the less-lethal tools employed by the USCP on January 6, 2021 or at any time.[3]

Mr. Hill appears to have *no* background or experience with Congress, the USCP, the MPD, or the U.S. Capitol building and grounds – and certainly does not have the specialized experience that would qualify him as an expert. He does not claim knowledge about the crowd control techniques or devices utilized by the USCP or the conditions under which they were used on January 6, 2021. Consequently, there is no basis for allowing him to muse to the jury about what he thinks the USCP should have done differently to deter Alberts (who, clad in body armor and a gas mask, attacked them with a wooden pallet), clear the rioters, secure the building, and resume the certification proceeding. These are matters beyond his knowledge and experience. On these topics, he is an outsider or armchair quarterback, not an expert.

>   B.  Mr. Hill's proffered opinions are irrelevant and based on defenses that should be disallowed.

Even if Mr. Hill were qualified to render expert opinions on the topics noticed, and even if those opinions were based on reliable principles and methods, the Court should still preclude

---

[3] Mr. Hill's lack of knowledge of the specifics of January 6, 2021 is further shown by his unfounded suggestion that USCP officers on the NW Steps utilized "rubber pellets" to deter Alberts and the other members of his mob. *See* ECF No. 119 at 3. They did not.

Mr. Hill from testifying as an expert on these matters because his opinions on them are irrelevant. First, whether officers from USCP violated their internal training, policies, or procedures when attempting to repel an armed and violent mob on January 6, 2021 is entirely irrelevant to Alberts's guilt of the nine crimes for which he is charged. As the government explained in its still-uncontested motion in limine, Alberts is not entitled to raise self-defense ECF No. 106 at 5-6. "A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself." *Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (internal quotation marks and citation omitted); *see also United States v. Peterson,* 483 F.2d 1222, 1231 (D.C. Cir. 1973) ("If one has reason to believe that he will be attacked, in a manner which threatens him with bodily injury, he must avoid the attack if it is possible to do so, and the right of self-defense does not arise until he has done everything in his power to prevent its necessity"). That principle applies fully to § 111 prosecutions. *See, e.g., United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019).

Alberts cannot establish a prima facie case of self-defense or necessity, and therefore is not entitled to present evidence in support of that defense at trial. *United States v. Cramer*, 532 F. App'x 789, 791 (9th Cir. 2013) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)). To justify a self-defense instruction in Superior Court (in a non-§ 111 case), a defendant must establish that "(1) there was an actual or apparent threat to the defendant; (2) the threat was unlawful and immediate; (3) the defendant honestly and reasonably believed that he was in imminent danger of death or serious bodily harm; and (4) the defendant's response was necessary to save himself from danger." *Waters,* 896 F.3d at 569 (quoting *Murphy-Bey v. United States*, 982 A.2d 682, 690 (D.C. 2009)). To raise a valid claim of self-defense to a charge of assault

10

under § 111, the defendant must show: (1) that he did not know the official status of the person assaulted; (2) that he reasonably believed that he was being attacked; and (3) that he used reasonable force to defend himself. *United States v. Jennings*, 855 F. Supp. 1427, 1435 (M.D. Pa. 1994), *aff'd*, 61 F.3d 897 (3d Cir. 1995) (citing E. Devitt, C. Blackmar, and K. O'Malley, 2 Federal Jury Practice and Instructions § 23.12)).

Alberts cannot do so. There is no question that Alberts was wearing a gas mask and body armor (which protected him from injury and neutralized the officers' use of pepper balls and other less-than-lethal tools) and himself acted as an aggressor. So any alleged wrongdoing by USCP officers is irrelevant to his guilt and Mr. Hill's opinion testimony would be inappropriate.

### III. Dick Heller

The defendant identifies Mr. Heller "as an expert on D.C. politics, D.C. community culture, the Second Amendment and D.C. gun regulation and culture." ECF No. 120 at 1. His opinion testimony is intended to "support defendant Alberts' Second Amendment and necessity defenses regarding the firearm counts in the indictment." *Id.*

Even more than Mr. Hill, the Fed. R. Crim. P. 16 notice for Mr. Heller is deficient. It was submitted on Saturday, April 8, 2023, just three days prior to trial. *Id.* It includes *none* of the disclosures required under the Federal Rules. That is, Alberts fails to identify *any* opinion to which Mr. Heller will testify, the basis for that opinion, his qualifications as an expert, or a list of the cases for which he previously has provided expert testimony. *See* Fed. R. Crim. P. 16(b)(1)(C)(iii). Again, his testimony at trial – even if admissible – would be limited to the opinions that he has disclosed on his Rule 16 notice. *Robinson*, 258 F. Supp. 3d at 86. And he has disclosed none. The Court also has no basis to evaluate his intended testimony under

11

*Daubert*.

> A. Mr. Heller is not permitted to opine on questions of law, and evidence and testimony purporting to interpret the law should be barred.

Mr. Heller's opinion testimony appears to be intended to support Alberts's legal argument that his Second Amendment right to bear arms prevents conviction for entering and remaining on restricted grounds with a deadly weapon, disorderly or disruptive conduct within restricted grounds with a deadly weapon, unlawful possession of a firearm on Capitol grounds, and carrying a pistol without a license. *See* ECF No. 121 at 1-2. His testimony also seems to bolster a newly identified theory of necessity – that "Alberts reasonably anticipated that he and other protestors for fair elections would face threats of violence on Jan. 6 and that his armed presence would protect himself and fellow protestors from potentially deadly attacks." *Id.* at 4. But these theories are ones of law and are entirely inappropriate for expert testimony.

The D.C. Circuit has held that "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect, and thus it is not [ ] admissible." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (internal quotations omitted). Legal conclusions "intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law." *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002).

And even if an individual could serve as a trial expert on issues of law reserved to the Court, Mr. Heller is not a judge or a lawyer. He has no legal training. He has no other experience with criminal law. He also has no expertise that would provide a basis for him to determine whether Alberts's actions are legally sufficient to establish a necessity defense. *See Sutton*, 2022 WL 16960338, at *11 (expert cannot provide testimony on defendant's state of mind).

### B. Mr. Heller's testimony would undermine the Court's prior determinations in this case.

The Court has previously denied three motions to dismiss submitted by Alberts. *See* ECF No. 77; ECF Entry, 4/6/2023. It has rejected Alberts's arguments that the charged firearms violations are invalid under the Second Amendment in light of the Supreme Court's recent ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *See* ECF No. 77 at 5-7. The Court also joined many other judges of this District to determine that the First Amendment does not prevent prosecuting January 6 rioters under the statutes underlying counts one, two, five, seven, and eight of the Second Superseding Indictment. *Id.* at 9-10. Mr. Heller cannot opine on these issues, and any such evidence or argument is inappropriate for presentation at trial.

It is beyond question that a litigant cannot raise, under the guise of expert testimony, legal issues that already have been decided. "These issues are irrelevant, inappropriate for consideration by the jury, invite jury nullification, and distract from the issues at trial" *United States v. Sutton*, No. 1:21-cr-598 (PLF), 2022 WL 13940371, at *18 (D.D.C. Oct. 23, 2022). Mr. Heller should not be permitted to testify to his opinion that Alberts's alleged conduct on January 6, 2021 was permitted by the First Amendment and Second Amendment, because that would be false.

### C. Mr. Heller's areas of expertise appear to be irrelevant to Alberts's guilt.

Although there is no indication of the opinions he would present at trial, most of the areas of Mr. Heller's purported expertise have nothing to do with Alberts's guilt or innocence. His testimony therefore would confuse the issues, mislead the jury, and waste time. *See* Fed. R. Evid. 403. Again, Mr. Heller purports to be "an expert on D.C. politics, D.C. community culture, the

13

Second Amendment and D.C. gun regulation and culture." Whatever the basis of that expertise, it is not clear how the Court might analyze the reliability of any opinions of Mr. Heller, nor how Mr. Heller's proffered expertise on broad subjects like politics, culture, and firearms law would be relevant or admissible here. He should be excluded.

### C. Motion to Strike Defenses

As described above and in the government's motion in limine, Alberts should not be permitted to elicit testimony or submit evidence or argument on issues of law, and he cannot encourage jury nullification. *See* ECF No. 106. Although Alberts never opposed the government's motion, each of the defenses he raised on April 8, 2023 is meritless and would, at the very least, confuse the issues and mislead the jury in violation of Fed. R. Evid. 403.

A defendant is not entitled to assert a defense that is invalid under the law or unsupported by fact. He may not introduce irrelevant evidence which "has the effect of inspiring sympathy for the defendant." *United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974). And he may not make arguments or introduce evidence that encourage jury nullification. *United States v. Washington,* 705 F.2d 489, 494 (D.C. Cir. 1983). Each of Alberts's asserted defenses run afoul of this well-established law.

Initially, his First and Second Amendment defenses, both previously rejected by the Court, are contrary to law and irrelevant to the jury's determination. Second, his justification defense is barred because he used force to resist the lawful actions of the police and he was the aggressor. Third, his purported necessity defense cannot be established because it requires the absence of any legal alternative to the contemplated illegal conduct which could reasonably be expected to abate an imminent evil. *Bailey*, 444 U.S. at 410 (alternative exists if there is "a

chance both to refuse to do the criminal act and also to avoid the threatened harm") (quoting W. LaFave & A. Scott, Handbook on Criminal Law 379 (1972)).

Finally, "civil disobedience" does not appear to be a recognized defense to any violation of law. "[C]ivil disobedience is a defense made to reduce or nullify sentencing. Therefore, a properly asserted defense of civil disobedience would essentially admit criminal liability to focus on the sentencing." Samuel H.J. Schultz, Civil Disobedience: A Constitutional Alternative to Injustice, 45 Mitchell Hamline L. Rev. 650, 681 (2019). That Alberts claims to have willfully violated the law on January 6, 2021 as a means of social or political protest is irrelevant to his factual guilt. Any such evidence or argument at trial would be prejudicial and should be excluded. *United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974).

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court preclude the defendant from presenting his proposed experts' testimony on the topics he noticed. Should the Court find that it lacks sufficient information to rule at this time, however, the United States requests a *Daubert* hearing. In addition, the United States requests that the Court strike Alberts's affirmative defenses and prohibit testimony, evidence, and argument related to them.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

    */s/ Jordan A. Konig*
    JORDAN A. KONIG
    Supervisory Trial Attorney,
    Tax Division U.S. Department of Justice
    Detailed to the U.S. Attorney's Office
    For the District of Columbia

P.O. Box 55 Washington, D.C. 20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov

*/s/ Samuel S. Dalke*
SAMUEL S. DALKE
Assistant United States Attorney
Detailee, U.S. Attorney's Office for the District of Columbia
Phone: (717) 221-4453
samuel.s.dalke@usdoj.gov

*/s/ Shalin Nohria*
SHALIN NOHRIA
Assistant U.S. Attorney
United States Attorney's Office
District of Columbia
601 D St. NW
Washington, D.C. 20001
Shalin.Nohria@usdoj.gov