## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No.** |
| | : | |
| **CHRISTOPHER MICHAEL ALBERTS,** | : | **1:21-cr-0026 (CRC)** |
| | : | |
| **Defendant** | : | |
| —————————————————— | : | |

## MEMORANDUM OF LAW IN SUPPORT OF CHRISTOPHER ALBERTS' OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE

COMES NOW, Defendant CHRISTOPHER MICHAEL ALBERTS ("ALBERTS"), by and through the undersigned counsel, hereby files his Opposition to the Motion in Limine of the U.S. Government, which is docketed at Dkt # 106, and was filed on March 2, 2023. In support of his Opposition ALBERTS states as follows:

## I.   INTRODUCTION AND OVERVIEW

The Government aims to manipulate the motion in limine procedure in this case and in all related January 6, 2021, cases by prejudging the defendants' arguments prior to trial, thereby depriving the Defendant of the due process protections guaranteed by the U.S. Constitution. This is clearly not a normal use of a motion in limine due to The U.S. Department of Justice ("DoJ") and the U.S. Attorney's Office ("USAO") effort to abuse the process of the criminal justice system in their favor, while simultaneously denying the Defendant's right to due process and a fair trial.

Evidence is excluded from trial on a motion in limine only if it is determined to be

inadmissible on all conceivable bases. *See United States v. Blake*, 195 F. Supp. 3d 605 (S.D. N.Y. 2016); *see also Romanelli v. Long Island R. Co.*, 898 F. Supp. 2d 626 (S.D. N.Y. 2012). A Motion in Limine, which arises in both civil and criminal litigation, is most frequently used to exclude prejudicial language, argument, or evidence, almost entirely when non-prejudicial, non-inflammatory variations may be used instead. *See Redding v. Ferguson*, Tex.Civ.App. [1973], 501 S.W.2d 717, 724.  It is a pre-trial motion designed to prevent the opposing party's attorney from bringing up or offering evidence that are so "highly prejudicial" to the moving party, that it cannot overcome it "prejudicial influence on the jurors' minds" and cannot be resolved by a motion to strike or a jury instruction (instructing them to disregard the issue). *See United States v. Davis*, 208 F. Supp. 3d 628 (M.D. Pa. 2016).

Here, the Government is attempting to establish the following in this case without the benefits of a fair trial:

A) "The Court Should Preclude Defendant from Arguing or Presenting Evidence Regarding Non-Testifying Officers' Conduct, Law Enforcement Policies or Procedures, and Legal Issues Not Properly Before the Jury." (ECF 106 at 1).

B) "Preclude the Defendant from Arguing That Alleged Action or Inaction by Law Enforcement Officers Made His Conduct on January 6, 2021 Legal." (ECF 106 at 3).

C) "Preclude the Defendant from Arguing Self Defense or Defense of Others." (ECF 106 at 4).

D) "Whether the Court Should Preclude the Defendant from Arguing in a Manner That Encourages Jury Nullification, Whether During Voir

Dire or During Trial." (ECF 106 at 7).

E)  Whether the Defendant "should be barred from providing evidence or argument to establish that his conviction would undermine the United States Constitution or dishonor him as a veteran of its military." (ECF 106 at 9)

F)  Whether the Defendant "should be prohibited from providing evidence or argument related to his purported attempt to assist a USCP officer." (ECF 106 at 9).

Unfortunately for the Government, they have decided to charge this and other Defendants with alleged crimes for which they must prove for each element the Defendants' intent and the circumstances giving rise to the charge.

Here, the Government has charged the Defendant with the following:

1.  Count I alleges Civil Disorder [that is, interfering with a law enforcement officer while engaged in his official duties in response to a civil disorder, so as to affect interstate commerce or a federal function] in violation of 18 U.SC. 231(a)(3).

2.  Count II alleges Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. 111(a)(1).

3.  Count III pursuant to 18 U.S.C. 1752(a)(1) in combination with and enhanced by (b)(1)(A).  However, Count III requires proof of disorderly and disruptive conduct, to which possession of a gun is an enhancement. Count III is not a stand-alone charge of merely possessing a gun without more.  Proving that Alberts possessed a gun is insufficient to prove a

violation of 18 U.S.C. 1752(a)(1) even where enhanced by (b)(1)(A).

4.   Count IV pursuant to 40 U.S.C. 5104(e)(1)(A)(i), whose constitutionality is
     questionable after recent U.S. Supreme Court precedents.

5.   Count V alleges Engaging in Physical Violence in a Restricted Building or
     Grounds in violation of 18 U.S.C. 1752(a)(4).

6.   Count VI pursuant to 40 U.S.C. 5104(e)(1)(A)(i) alleges Unlawful
     Possession of a Firearm on Capitol Grounds or Buildings.

7.   Count VII alleges Disorderly Conduct in a Capitol Building in violation of
     40 U.S.C. 5104(e)(2)(D).

8.   Count VIII alleges Acts of Physical Violence in the Capitol Grounds or
     Buildings in violation of 40 5104(e)(2)(F). (ECF 34)

9.   Count IX pursuant to D.C. Code Title XXII Section 4504(a), Carrying a
     Pistol without a License [Outside Home or Place of Business], which may
     be constitutionally invalid under recent U.S. Supreme Court precedents.

10.  Count X pursuant to D.C. Code Title XXII Section 2506.01(b), Possession
     of a Large Capacity Ammunition Feeding Device.

The standard in all criminal cases is that an accused, is presumed innocent until proven guilty beyond a reasonable doubt. *See, e.g., Taylor v. Kentucky*, 436 U.S. 478 (1978). As such, the Defendant begins the trial with a clean slate, so the presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case. While it is a necessary balance between the right of party presentation against the Rules of Evidence and guardrails of admissible evidence, the constitutional due process right to a fair trial is also in the

mix. As such, the Due Process Clause of the United States Constitution, also requires the prosecution to prove beyond a reasonable doubt every element of the charged criminal offense. *See, In re Winship*, 397 U.S. 358, 364 (1970). The burden to prove or disprove an element of the offense may not ever be shifted to the defendant. *Id.;* see *Patterson v. New York*, 432 U.S. 197, 215 (1977).

In this Motion in Limine, what the Government is attempting to exclude are actually elements of the crimes charged by them, that they are accusing the Defendant of committing. Not only is the Defendant Christopher Alberts constitutionally entitled to put on a defense, but the matters the Government wishes to bar are actually the intent elements of the crimes that the Government (not the Defendant) is required to prove beyond a reasonable doubt. However, with this motion in limine, the Government attempts to conceal the flaws in their decision to charge offenses that cannot be proven and improperly exclude certain arguments or evidence of the Defendant without justification. Defendant's freedom is currently on the line, he deserves to have a fair trial, one that is not clouded or overshadowed with bias or prejudice. Thus, Albert's motion in opposition should be granted and the Prosecution's request should be denied.

## II. GOVERNING LAW

A *motion in limine* is one that acts as a "protective order against prejudicial questions and statements... and to avoid injection into trial, matters which are irrelevant, inadmissible and prejudicial. *See Redding v. Ferguson*, Tex.Civ.App. [1973], 501 S.W.2d 717, 724. Ironically, there are no Federal Rules of Criminal Procedure that explicitly refers to a motion in limine. Whereas it is not our intention to deny the possibility or existence of such a motion, but rather to clarify and limit its purpose in the interests of fairness and justice. Consequently, the Government continues to improperly use a motion in limine by exceeding its scope, attempting

to have it serve as the criminal equivalent of "summary judgment," or even to dismiss a

defendant's affirmative defenses before they are even offered in an evidentiary context at trial.

Thereby, depriving the Defendant of a fair trial and his Constitutional rights as a result.

> (1) *In General.* A party may raise by pretrial motion any defense,
> objection, or request that the court can determine without a trial on the
> merits. Rule 47 [1] applies to a pretrial motion.

* * *

The Federal Rules of Evidence provide:

### Rule 401. Test for Relevant Evidence

Evidence is relevant if:
**(a)** it has any tendency to make a fact more or less probable than it
would be without the evidence; and
**(b)** the fact is of consequence in determining the action.

### Rule 402. General Admissibility of Relevant Evidence

Relevant evidence is admissible unless any of the following provides
otherwise:
- the United States Constitution;
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

Irrelevant evidence is not admissible.

### Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons

---

[1]  Rule 47 concerns the forms of motions and supporting affidavits

The court may exclude relevant evidence if its probative value is
substantially outweighed by a danger of one or more of the following:
unfair prejudice, confusing the issues, misleading the jury, undue delay,
wasting time, or needlessly presenting cumulative evidence.

**FRE Rule 106. Remainder of or Related Writings or Recorded
Statements, provides**:

If a party introduces all or part of a writing or recorded statement, an
adverse party may require the introduction, at that time, of any other part
— or any other writing or recorded statement — that in fairness ought to
be considered at the same time.

According to the Legal Information Institute of Cornell Law School's
legal encyclopedia "WEX," "[t]his additional evidence is called
explanatory evidence, and its purpose is to qualify, explain or put in
context the original piece of introduced evidence. The explanatory
writing does not have to be part of same writing or recording.

Here, under the Rule 401 test for relevance, the Government cannot show any evidence
of the crime they are charging the Defendant without resorting to evidence that is intending to
cause the jury anger or an emotional response to the Defendant's action rather than to the crime
he is actually being charged with. The sole purpose of the Government's evidence is to involve
images in the jury's mind that would lead to an emotional response and negativity towards the
Defendant and would lead to confusion and misleading them to a guilty verdict based on Defend-
ant's character or generalized act rather than the elements of the crimes he is actually charged
with. As such, the Government cannot offer such evidence as it's prejudicial value certainly out-
weighs any counterbalancing interests.

Rule 403 provides that relevant evidence "may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice... confusion of the issues and
misleading the jury." Although any evidence that is relevant and a "fact of consequence" to the
action should be admitted, Rule 403 specifies that, "relevant evidence may be excluded if

unfairly prejudicial." *See Huddleston v. United States*, 485 U.S. 681, 687 (1988).

Relevant evidence properly admitted over a Rule 404(b) objection always poses the risk of unfair prejudice to some degree, for a jury considering the evidence might draw the inference from character barred under the rule's first sentence. *See United States v. Rogers*, 287 U.S. App. D.C. 1, 918 F.2d 207, 211 (1990). At the same time, "the evidence might also prejudice a defendant if the jury thinks his act particularly repugnant", shocking, or offensive. In either case, Rule 403 protects defendants by requiring that a judge evaluate the risks of harm that would result to the Defendant (unfair prejudice, confusion, misleading) and to balance them against the probative value of the evidence, taking into account, "the probable effectiveness or lack of effectiveness of a limiting instruction." Fed. R. Evid. 403 advisory committee's note. *Id.* citing E. Imwinkelried, *Uncharged Misconduct Evidence* §§ 8:23 to 8:28 (1990)).

Unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). Evidence is "unfairly prejudicial" when it "tends to suggest a decision on an improper basis." *See United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016). Evidence is also considered prejudicial if it "creates a risk that invites an irrational emotional response from the jury." *See United States v. Seals*, 813 F.3d 1038, 1043 (7th Cir. 2016). The inquiry then rests upon whether the undue prejudicial effect of the evidence substantially outweighs its probative value. The function of Rule 403 is to exclude only evidence of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *See United States v. McRae*, 593 F.2d 700 at 707 (1979).

However, in reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting

instruction. *See* FRE 106 [now 105]. Additionally, even otherwise inadmissible evidence, such as hearsay, can be admissible under this rule if it is necessary to correct any confusion or wrongful impression created by the admission of the original evidence. Nor does the FRE relegate the complete document or video to the back of the bus, as a second class matter raised only in the defense's case in defense after the jury has already prematurely made up its mind. On the other hand, Rule 106 does require the objecting defendant to point the Court and the prosecution in the direction of what else should be included or for the Court to guess about what might need to be included. But once the Defendant has invoked Rule 106 and demanded that other parts of the document or video be also shown to the jury, there is no decision or discretion left and it must be done. No part of the document or video is admissible unless all that is necessary to show the true, entire, accurate picture is shown to the jury as well.

Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, *"some* evidence of guilt" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) (emphasis added).

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969) or indulge in a lawless verdict.

This is an especially compelling concern where (1) the jury is mostly or entirely lay persons not accustomed to separating legal issues with fine lines and meticulous distinctions, (2)

a case is highly complex with many counts most of which have many elements to the crime, and (3) the jury has obviously been drowned in pre-trial publicity in which judges, members of Congress, the Attorney General, the President of the United States and the news media has harshly proclaimed the Defendants to be obviously guilty without question over the last two years.  This last includes the absurd but chronic suggestion that everyone on January 6 all did the same thing in unison like unthinking automatons sharing a hive mind.

The prosecution must state all elements of the crime with specificity and then prove beyond a reasonable doubt each element of every crime charged. Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). There can be no "maybes" as to guilt in criminal prosecutions.

To further highlight the law on the topic of what is charged and what the government must prove at trial, "No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital." *United States v. Hess*, 124 U.S. 483, 486 (1888). (Emphasis added).  The government cannot testify through questions and recital arguments. Criminal law does not allow inferences upon inferences upon inferences to be considered "evidence" or proof of an act that caused anything.

## III. ARGUMENT

## HOWEVER, MATTERS IN QUESTION ARE REQUIRED ELEMENTS OF THE CRIMES CHARGED BY THE GOVERNMENT

Defendant Christopher Michael Alberts ("Alberts") is accused by the Second Superseding Indictment ("S.S.I.") dated November 10, 2021.  There are no factual allegations

whatsoever of any kind in the operative indictment.  The S.S.I. presents only conclusions of law and offers nothing more than the language of the statutes.  For that reason at least, the S.S.I. is more than likely legally defective and subject to dismissal.   For today's purposes, we resort to the Statement of Facts filed in this case as Docket Entry # 1-1, originally filed in a Magistrate case 1:21-mj-000010, and originally filed on January 7, 2021, there.

It is curious that the Government has alleged many of these Counts based only on the January 7, 2021, Statement of Facts, but after reviewing the ECF docket sheet record there does not appear to be any subsequent or amended or different Statement of Facts or other factual allegations but Document Entry #1-1. (ECF #1-1)  Yet the Government issued a Second Superseding Indictment November 10, 2021, without any material developments since January 7, 2021. Furthermore, Defendant Alberts is also charged most seriously with possessing a gun and gun magazine, specifically:

- Count III pursuant to 18 U.S.C. 1752(a)(1) in combination with and enhanced by (b)(1)(A).  However, Count III requires proof of disorderly and disruptive conduct, to which possession of a gun is an enhancement.  Count III is not a stand-alone charge of merely possessing a gun without more.  Proving that Alberts possessed a gun is insufficient to prove a violation of 18 U.S.C. 1752(a)(1) even where enhanced by (b)(1)(A).

- Count IV pursuant to 40 U.S.C. 5104(e)(1)(A)(i), whose constitutionality is questionable after recent U.S. Supreme Court precedents.

- Count VI pursuant to 40 U.S.C. 5104(e)(1)(A)(i) alleges Unlawful Possession of a Firearm on Capitol Grounds or Buildings.

- Count IX pursuant to D.C. Code Title XXII Section 4504(a), Carrying a Pistol without a

License [Outside Home or Place of Business], which may be constitutionally invalid under recent U.S. Supreme Court precedents.

- Count X pursuant to D.C. Code Title XXII Section 2506.01(b), Possession of a Large Capacity Ammunition Feeding Device.

In its threadbare speculations and conjectures about intent, the Government of course cannot rise above its own admitted facts that at no time did Alberts ever draw, expose, reveal, or use this gun. The Government's own sworn facts are that Officer D.H. discovered the existence of the gun, by claiming to see a bulge. The Government then accuses Alberts of being surprised from behind, shaken and grabbed by Officer D.H. Thus, the Government negates its own attempts as to motive, intent, or knowledge.

The facts alleged prove, being the Government's own sworn claims, that Alberts possessed a gun purely for his own self-defense, as shown by his actions.

The facts of the Government prove that Alberts was on his way out of the area when Metropolitan Police Department Officer D.H. pounced on Alberts from behind on suspicion of concealing a gun. Therefore, the Government cannot sustain any intent of Alberts other than he was leaving the area having never used, drawn, or revealed the gun, and would have continued out of the area if not interrupted from doing so.

The Government has chosen to charge Defendant Alberts with specific intent crimes where an element of the Government's burden of proof is not merely an intentional (as opposed to involuntary or inadvertent) act but acts pursuing specific goals or motives.

This concern here in this Motion in Limine is not with the sufficiency of the Counts of the indictment nor even the terms of the statute but with the nature of the ***EVIDENCE*** that it appears the Government will present to try to prove the charges of the indictment.

While a Motion in Limine should not itself be motivated purely by speculation, there is significant risk and concern based upon the volleys back and forth in the pleadings that the Government does actually believe that it can convict Alberts based upon what other people did, what a crowd said, what some unidentified person cried out in the middle of a crowd, etc.

The exchange of pleadings has raised a very significant concern – confirmed by the Government's Opposition – that the Government will intentionally or inadvertently from its understanding of the case use *evidence* to try to *prove* the Counts of the Second Superseding Indictment that would amount to speculation, conjecture, imagination, group liability, guilt by being in the vicinity of crimes committed by others, guilt by association, etc.

The Government's Opposition responds that simply because there have been no facts alleged – the Opposition is about the first place that any concrete facts have been alleged – that is the reason why the Defendant is legitimately concerned about the will improperly resort to "conjecture," "speculation," "mind reading," and "guilt by association."

While that is not untrue, it is more what the Government keeps saying over and over in various pleadings that raises the concerns that the Government does not believe in the standard of presuming the Defendant innocent until proven – in each element of the crime charged – beyond a reasonable doubt.  The Government's presentations in pleadings keep repeating its perspective that the Government need not prove that the Defendant is ***individually*** guilty rather than simply being in the vicinity of others who committed a crime.

The Government has not provided any actual evidence besides using language such as "likely" and "may" in order to purposely cause the jury to view the Defendant in a negative light solely for being present on the grounds of the Capitol, rather than on the crime he is actually being charged with. The Government cannot admit pieces of items into evidence or state their

arguments in a matter of mere "conjecture" the failure of the Government to provide actual evidence instead of relying on hearsay and assumptions proves that their goal in admitting this evidence is solely to cause an emotional response in the jury and distract that from the actual crime the Defendant is being accused of. They refer to social media statements made by the Defendant solely for the jury to convict the Defendant based on the repugnant nature of his social media activity and not on obstruction of a proceeding that was no longer in session.

The Government cannot convict Defendant Alberts by arguing in effect "Well, it could have happened."  The Government cannot put on some or all of its case arguing "It is not impossible that the Defendant is guilty."

In addition, The Government referencing and presenting evidence to convict the Defendant based on the guilt of other people and the acts of others that the Defendant had no control over is extremely prejudicial towards the Defendant and tries to prove his guilt solely by association of people he did not know.

The Government is attempting to charge the Defendant with a crime solely by his presence and vicinity near others and they are attempting to do  this by providing evidence that have a probative value but in comparison to the damage that could be caused to the Defendant is outweighed by its prejudicial nature.

The Defendant is not seeking to exclude evidence simply because it is negative towards him, he is seeking to exclude evidence that would cause the jury to decide the case on emotional responses and ignore the law, which would rob him of any chance to defend himself and deprive him of the right to a fair trial.

For example, the Opposition states that "Context for the Defendant's actions, and the civil disorder in which he is accused of participating, will be provided through the testimony of

law enforcement officers, including anticipated witnesses from the U.S. Capitol Police, Metro-politan Police Department, U.S. Secret Service, and/or Federal Bureau of Investigation."

The consistent, indeed uniform without exception, pattern is that by "context" the Gov-ernment means presenting evidence by officials who know nothing about Defendant Christopher Albert, have no first-hand knowledge of any of the charges against Alberts, who will testify in 40,000 foot views (as the cliché goes) and broad brush strokes about what other people did at various different places around Capitol Hill.  All of this never relates to the individual Defend-ant.  Therefore, the Defendants' counsel expects the same consistent pattern here:   The context that witnesses will testify to involves the guilt of other people – not Defendant Alberts.

We have dozens of examples by now in which the same U.S. Attorney's Office presents the exact same presentation, consisting of only inflaming the jury with the actions of crowds un-related to the Defendant on trial.

However, the Motion in Limine addresses *improper* evidence of the Defendant's knowledge or intent.  For example, what a crowd did is not what Alberts did.  What a crowd in-tended is not what Alberts intended.  A person could stand and listen to a crowd say all kinds of things and be thinking the whole time "Wow, that is nonsense, I don't believe a word of any of that."  What someone in a crowd yelled out – someone not even identified – is not what Alberts believed.

The Government thinks it can show from Alberts words (social media posts or other statements) his knowledge or intent.  That the Government may attempt.

If so, there is no need to resort to what a crowd did or what a crowd collectively intended like a hive mind.  There should be no need to consider what unknown people did or what

unknown people yelled.  The Government's argument would counsel restricting the evidence to Alberts own words, not the words of other people.

Once again, the Government repeats its mindset that the mere existence of a restricted area (grounds or building) is sufficient.  It is not.  A person does not violate the statute by entering or being in a restricted area.  A person violates the statute only by _knowingly_ entering a restricted area (grounds or building).

### A)  "THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING OR PRESENTING EVIDENCE REGARDING NON-TESTIFYING OFFICERS' CONDUCT, LAW ENFORCEMENT POLICIES OR PROCEDURES, AND LEGAL ISSUES NOT PROPERLY BEFORE THE JURY."

It is difficult to know exactly what their argument means, when it is vague and overly broad and it attempts to suppress the Defendant's evidence without any justification, even though nearly all of the Government's trial presentations in every previous January 6, 2021, trial has focused overwhelmingly on the actions of others, not the Defendant then at bar in each case. The Government consistently bases its attempt at prosecution only upon the guilt of people who are not the Defendant or other people's actions as a whole, yet at they same time they hypocritically seeks to prevent the Defendant from using the same arguments they do.

The Government states that, the Defendant, "identified dozens of police body-worn camera, surveillance, and open-source videos that would show the actions of non-testifying individuals whose conduct was not directly observed by Defendant and who were not in close proximity to him..." (ECF 106 at 2). Yet, how can the Defendant be expected to have a fair trial when the Government attempts to exclude evidence that the Defendant wants to admit in order to provide foundation and show the situation that was occurring that lead to his supposed "criminal actions." However, the Government claims by showing irrelevant evidence and videos that do

not include the Defendant, they are seeking to paint a picture or put the lack of evidence against individual Defendants "in context."  Specifically, the USAO repeatedly insists upon showing videos in which the individual Defendant *does not appear* or is unrelated to the Defendant, based on their excuse in showing the overall context of what other people did. In addition, the Government also uses arguments or admits video evidence of the Defendant but will insert statements made by the Defendant without providing a corroborating witness that has personal knowledge or allowing the Defendant the constitutional right to confront his accusers.

How is the Defendant trial fair when that same USAO argues that the Defendant should be precluded from showing evidence of the context since the Defendant is not present in the videos. How can that evidence be prejudicial, irrelevant, or lead to jury confusion if the Government is doing the exact same thing.

The Opposition of the Government argues that "The Defendant …  suggests his intent to introduce arguments and evidence challenging his treatment upon arrest and during his prosecution, and alleging that law enforcement officers on January 6, 2021 did not comply with standard police policies and procedures and committed acts of wrongdoing with regard to other individuals who were on Capitol Grounds."

While Alberts objects to the threats made in pressuring him on a plea, he does not intend to argue before a jury trial or present any issue during the prosecution of this case.  However, recall that unlike most January 6 Defendants, Alberts was arrested on the Capitol Grounds as he was leaving, and a police officer Hane accosted Alberts from behind by surprise and wrestled Alberts unnecessarily around, while Alberts did not know who was accosting him or why, and then sought to blame Alberts for resisting an attack Alberts could not identify or understand coming from behind him.  This is shown on body-worn camera video.

As to police officer conduct, the video evidence that the Government must be fully aware of and know well demonstrates among other evidence the excessive use of force by _some_ – certainly not all, but some – police officers on the Capitol Grounds on January 6, 2021.  Clear misconduct appears to be highly concentrated among the District of Columbia's Metropolitan Police Department ("MPD") and not among the U.S. Capitol Police.  In one video recording provided from the Government, USCP officers confront MPD officers and demand to know "**_What_** are you doing???"

Other videos clearly show that while there were malefactors on both sides, lamentably, that the outbreak turning at least calm if not peaceful presence of protestors into a localized brawl at places was initiated by law enforcement.  Video recordings clearly show that the police fired off a tear gas cannon (not hand thrown canisters) and the cannon failed and mis-fired and dropped the tear gas munition only about two feet away inside the police lines.  Thus, the video proves that the police gassed themselves, then blamed that on the protestors gassing the police.

The evidence will show that in violation of police procedures and laws, the police fired from above toward the heads of protestors with rubber bullets and pellets, injuring previously-peaceful demonstrators.  One protestor had a hole the size of a quarter or silver dollar blown through his cheek by police fire.  In response to this, some of the crowd grew violent also.

It is sometimes difficult to remember that the USAO has over-charged January 6 Defendants with so many Counts that there are "Legal Issues Properly Before the Jury" beyond the main issues in the case that are center stage in our thinking.  Therefore, a circumstance that might not seem relevant to one of the Counts might be relevant to another Count with which Alberts is charged.

The conduct of law enforcement officers other than those cherry-picked to testify are

required with regard to the elements of the crimes with which the Defendant is charged.

The Government then attempts to bar Defendant's argument about police conduct, along with actual video evidence but their motion has no merit, because they merely rely on speculation and possible theories rather than proof. The Government erroneously states, "Based on these exhibit titles and the public statements recently made by Alberts," and cite a video on a website titled "Rumble.com." (ECF 106 at 2). They even brazenly claim that Alberts, "**apparently intends to introduce** argument and evidence claiming that officers did not provide timely care...," this a clear violation of Defendant's constitutional rights especially to a fair trial. *Id.* The Government is literally attempting to bar a possible argument that the Defendant could make without having any evidence or proof that he will even make that argument in the first place. They are fishing at this point and prejudicially listing all the arguments Defendant might make (even if he won't) and before he even makes them in an attempt to prevent the jury from hearing it and barring it completely.

However, the Government hypocritically prevents the Defendant again, from using the exact same argument made by them. Such as when they state that certain pre-trial arguments made by the Defendant are just, "parrot theories that have gained online notoriety by those seeking to minimize their own criminal conduct and that of others on January 6, 2021. And each can be refuted on its own merits. But they are entirely irrelevant to Alberts's guilt of the nine offenses, and their airing would carry the substantial risk of confusing the issues and misleading the jury." (ECF #1-1 at 3). Basically, only the Government can throw around arguments that don't make sense and are based on speculation but when the Defendant does it only then will the jury get confused. Even more outrageously, they use a conclusory argument that each can be refuted in its own merit without saying what or how.

Additionally, the Government incorrectly alleges, "[w]hether officers engaged in misconduct with regard to other individuals or violated policies, procedures, or rules has no bearing on Defendant's guilt for his violent assault on officers on January 6, his active participation in a civil disturbance, and his armed and unlawful presence on restricted Capitol Grounds...", they even go so far as to claim that none of those incidents are relevant to Defendant's state of mind because they were far from him and have no tendency to make a fact of consequence more or less probable. *Id.*

**Count I alleges Civil Disorder [that is, interfering with a law enforcement officer while engaged in his official duties in response to a civil disorder] in violation of 18 U.SC. 231(a)(3).**

The conduct of law enforcement, as well as of the crowds in general, even if they are not called to testify, is clearly relevant to the existence of a civil disorder (poorly defined), the location(s) and geographic extent of civil disorder(s), the duties of law enforcement officers engaged in responding to civil disorder(s) and whatever might strike the fancy of the Government – such as talking to law enforcement officers – as interfering with the conduct of those officers' duties.

Clearly, the material that the first Motion in Limine seeks to exclude are not only relevant to but necessary to Count I, both as to the Government's burden and to a proper defense.

*(i)*     **Count II alleges Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. 111(a)(1).**

For the same reasons and reasoning as under (i), the material challenged is necessary to the Government's burden and a proper defense.

*(ii)*    **Count III pursuant to 18 U.S.C. 1752(a)(1) in combination with and**

**enhanced by (b)(1)(A).**

Count III requires proof of disorderly and disruptive conduct, to which possession of a gun is an enhancement.  Count III is not a stand-alone charge of merely possessing a gun without more.  Proving that Alberts possessed a gun is insufficient to prove a violation of 18 U.S.C. 1752(a)(1) even where enhanced by (b)(1)(A).

**(iii)  Count IV pursuant to 40 U.S.C. 5104(e)(1)(A)(i), Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon.**

For the same reasons and reasoning as (iii), the Government must prove intent, not accident.  The behavior of law enforcement officers and the crowd are relevant to whether Defendant's conduct was disorderly and disruptive or merely reactive to other people's actions.  The Government must prove intent, not accident. (As a simplistic example, if a tourist in the Capitol Rotunda slipped and fell and broke his arm, and cried out in pain, loud cries would be technically disruptive.  But lacking specific intent, the injured tourist could not be charged with Disorderly and Disruptive Conduct for crying out in pain, lacking the specific intent to be disorderly or disruptive.)

**(iv)  Count V alleges Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. 1752(a)(4).**

For the same reasons and reasoning as (iii), the Government must prove intent, not accident.  The behavior of law enforcement officers and the crowd are relevant to whether Defendant's conduct was engaging in physical violence or defending himself from other people's actions.

**(v)  Count VI pursuant to 40 U.S.C. 5104(e)(1)(A)(i) alleges Unlawful**

**Possession of a Firearm on Capitol Grounds or Buildings.**

No comment is made in this context.

*(vi)*     **Count VII alleges Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. 5104(e)(2)(D).**

For the same reasons and reasoning as (iii), the Government must prove intent, not accident.  The behavior of law enforcement officers and the crowd are relevant to whether Defendant's conduct was disorderly or merely reactive to other people's actions.

*(vii)*    **Count VIII alleges Acts of Physical Violence in the Capitol Grounds or Buildings in violation of 40 5104(e)(2)(F).**

For the same reasons and reasoning as (iii), the Government must prove intent, not accident.  The behavior of law enforcement officers and the crowd are relevant to whether Defendant's conduct was engaging in physical violence or defending himself from other people's actions.

*(viii)*   **Count IX pursuant to D.C. Code Title XXII Section 4504(a), Carrying a Pistol without a License** [Outside Home or Place of Business]

No comment is made in this context.

*(ix)*     **Count X pursuant to D.C. Code Title XXII Section 2506.01(b), Possession of a Large Capacity Ammunition Feeding Device.**

No comment is made in this context.


**B) "PRECLUDE THE DEFENDANT FROM ARGUING THAT ALLEGED ACTION OR INACTION BY LAW ENFORCEMENT OFFICERS MADE HIS CONDUCT ON JANUARY 6, 2021 LEGAL."**

Here, the Government argues that an illegal act cannot be authorized to be legal by an action

or declaration of an official such as a police officer, as mistakenly reasoned in *United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33. The Government cites *Chrestman* to the effect that "it is beyond the power of the President to unilaterally abrogate criminal laws to shield a subgroup of his most vehement supporters from liability for their actions." The Defendant's actions in this case are legal because they are legal, not because some official has magically transformed what is unlawful conduct into lawful conduct.

What is unlawful is often dependent upon the circumstances. Such as, if a protestor jumped the fence of the White House and rushed the front door, it would be unlawful. But if the then President saw the protestor, loved his sign, and gestured for the protestor to come in to the White House, the protestor's actions would be completely lawful. An invitee cannot be a trespasser if they were invited, escorted, or instructed to what door they could enter, especially when the building is one that is traditionally open to the public. Thus, the act of being ***permitted*** to be in the White House marks the difference between lawful and unlawful conduct.

For example, the Government refuses to grasp that 18 U.S.C. 1752(a)(1) charged in Count III applies only when a person ***knowingly*** enters or remains in a restricted building or grounds without lawful authority to do so." The Government has the burden of proving beyond a reasonable doubt that Defendant Alberts ***knowingly*** entered a restricted building or grounds. That is, the Government must prove beyond a reasonable doubt that Alberts ***knew*** that the area was restricted, knew ***where*** the line of restriction was even after all signs were removed, and acted knowingly and intentionally in entering a restricted area. It is impossible to have a restricted area of the Capitol Grounds without the public knowing where the line is, that on one side of the line it is legal but on the other side of that line presence is illegal.  Where there is no such notice clearly visible to the public at the time – not in a doctored photograph prepared

afterwards for litigation purposes – there can be no restriction.  There can be no violation of 18 U.S.C. 1752(a)(1) without proof that the Defendant knew not only of a restriction but the precise area so restricted, where is the line.

Here, **Defendant Alberts never entered the Capitol building.** Therefore, the conduct and behavior of non-testifying police officers is necessary to consideration of Count III, especially if they gave permission to be in the area. The Court may not consider the prosecution of Count III without a full presentation on all sides of the element that Alberts entered a restricted area ***knowingly.*** Where police officers manifested the appearance that the public was permitted to enter the Capitol grounds, even if their behavior gave a mistaken impression, the Defendant acted ***lawfully*** in entering the Capitol grounds. It is a perfect defense for Defendant Alberts not because an official magically waved a hand over an illegal act and made it legal, but because the act is only illegal if done ***knowingly***.  If non-testifying law enforcement officers created the impression, even if unintended, that entering the Capitol grounds was not restricted, then no law was broken.

Quite powerfully and simply – no public notice means there was no restriction. On April 6, 2022, Judge Trevor McFadden provided a very interesting split decision, including in *United States v. Matthew Martin*, Case No. 1:21-cr-00394, in this District. In which, Judge McFadden found Matthew Martin not guilty because the U.S. Capitol Police had not given notice to the public (that is, it was not still visible after efforts by some to remove barricades) and police officers did not express any discouragement of Martin entering the Capitol. *Id.*

But McFadden found another Defendant had crawled over walls and other obstructions to enter the Capitol.  Thus, Judge McFadden found, the second co-Defendant did not need to see signs posted to realize that he was not supposed to be entering the building, if he had to crawl

over walls to do it.  But the Government has stretched or misunderstood Judge McFadden's rulings. The ruling was not that simply seeing other people engaged in misconduct causes one to be guilty.  Seeing guilt does not create guilt.  Seeing people brawling would lead a reasonable person to conclude that those people will be arrested, and the remainder of the crowd may continue to demonstrate.

Similarly, in Count V, the Government refuses to grasp that 18 U.S.C. 1752(a)(4) also depends upon a Defendant **_knowingly_** where

> **(a)**Whoever—
> 
>                          * * *
> 
> **(4)** **_knowingly_** engages in any act of physical violence against any person or property in any restricted building or grounds;
> 
>                          * * *

Clearly, the meaning of 18 U.S.C. 1752(a)(4) requiring proof beyond a reasonable doubt of acting **_knowingly_** is that the Defendant **_knew_** that he was "in any restricted building or grounds." The conduct of non-testifying police officers in giving the impression that it was acceptable for Defendant Alberts to enter part of the Capitol grounds would be probative on the question of knowingly entering a restricted building or grounds and in no way prejudicial to the jury and even then a limiting instruction could be put in its place.

Again, we should recall that Alberts did not enter the building.  This applies only to the Capitol grounds as a public park.

> **_The Capitol Grounds_** (excluding such places as the Senate and House floors, committee rooms, etc.) **_have traditionally been open to the public_**; indeed, thousands of people visit them each year. Thus, we cannot agree with the defendants that the Capitol Grounds have ever been characterized by the serenity and quiet of a hospital or library.

*Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) *(emphases added)*.

> The courts in this jurisdiction have long recognized that **"[t]he United States Capitol is a unique situs for demonstration activity"** and **"is a place traditionally open to the public and thousands visit each year to which access cannot be denied broadly or absolutely,** [a fact which must be weighed] against the government's interest in protecting against possible `damage to buildings and grounds, obstruction of passageways, and even dangers to legislators and staff.'" *Kroll v. United States*, 590 F. Supp. 1282, 1289, 1290 (D.D.C.1983) (*quoting Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583-85 (D.D.C.), *aff'd mem.,* 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972)).

*Wheelock v. United States* 552 A.2d 503, 506 (D.C. 1988) *(emphases added).*

Thus, there is clear evidence with a very high probative value and very low to insignificant risk of prejudice that the Defendant's argument in which the action/inaction of police made his conduct legal should be included due to the relevance in making a fact of consequence more or less probable. The Government's argument has no merit whatsoever, that is similar to a situation in which a police station hires an individual to hack a computer or steal evidence and the individual had no reason to believe their actions were illegal but since the officers are not testifying, then only the Defendant can be found guilty. Officers do not get to escape liability, because they avoided testifying and Defendant should be allowed to use those facts and arguments as a defense to that charge. As a result, if an officer gave Defendant permission or told him where to enter then the Defendant should not be found guilty due to their mistaken belief and non-criminal state of mind.

### C) "PRECLUDE THE DEFENDANT FROM ARGUING SELF DEFENSE OR DEFENSE OF OTHERS."

Defendant Alberts will prove at trial, if necessary from his own testimony as having been there as an eyewitness, in addition to the use of video well-known to the Government and of which the Government must by now be fully aware, that significant use of excessive force by police required that Alberts act to defend himself and others from over-zealous and indeed

panicky violence from law enforcement officers. Alberts specifically contends that because at times the officer's behavior constitutes excessive use of force, it is unlawful.

The Government argues in its Opposition that:

> To establish a prima facie case of self defense, the Defendant must make an offer of proof of "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006).

Although we must depend crucially upon Defendant Alberts sincere belief that there was an imminent threat of unlawful violence by some over-zealous law enforcement, and in response he fended off that violence to only the minimum extent necessary in defense of himself and others. However, the Government constantly claims that "***Alberts and others*** were illegally present... ***Alberts and other individuals*** violently entered, committed his actions so ***other rioters*** could advance..." (ECF #1-1 at 6). So, if the Government can establish guilt by including the Defendant with the actions of others, then the Defendant should be given the same opportunity based on the Defendant's ***and others*** sincere belief of the need to defend themselves ***and others*** due to the actions of the officers. Not to mention the fact that for self-defense the force required is no more than necessary. Here, there is nothing to show that the Defendant ever exceeded the scope or gave more force than the officers did.

While having to interpret the vague and evasive allegations by the Government, the Counts evidently refer to Alberts allegedly holding back violence by some police officers with a pallet and the like.  That is, the Government evidently contends that Alberts interposed an object between himself and other protestors and amped-up police officers. Which is well established on video recordings, whether or not Alberts testifies, these facts are clear and can be strongly established. The Defendant using a pallet as a shield, having a gun on his person that was taken

apart (where the ammo was not in the gun and in a completely different pocket), or even having

a bullet proof vest do not amount to excessive force or force that exceeds the scope of the

aggressor.

### (i)   Count I alleges Civil Disorder

The fact that Alberts had to fend off excessive use of force by some officers – with

nowhere to retreat to with the crush of crowds behind him – makes this defense highly relevant

to Count I. There was a necessity for the Defendant to have some type of cover or protection that

would prevent any harm to come to him based on the violence exhibited by certain police

officers (i.e., pepper spray) or on the actions of others.

### (ii)   Count II alleges Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. 111(a)(1).

Again, as under (i), the assaulting, resisting, or impeding certain officers charged

involves Alberts' acts of self defense of himself and others.  The evidence will show that the

conduct charged was reactive to violence initiated by certain officers

### (iii)   Count IV Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon.

Again, as under (i), the disorderly and disruptive conduct charged involves Alberts' acts

of self-defense of himself and others, as is known to the Government from the videos disclosed.

### (iv)   Count V alleges Engaging in Physical Violence in a Restricted Building or Grounds.

Again, as under (i), the physical violence charged involves Alberts' acts of self-defense

of himself and others, as is known to the Government from the videos disclosed.

### (v)   *Count VII alleges Disorderly Conduct in a Capitol Building.*

Again, as under (i), the disorderly and disruptive conduct charged involves Alberts' acts of self-defense of himself and others, as is known to the Government from the videos disclosed.

**(vi)** *Count VIII alleges Acts of Physical Violence in the Capitol Grounds or Buildings in violation of 40 5104(e)(2)(F).*

For the same reasons and reasoning as (iii), the Government must prove intent, not accident. The behavior of law enforcement officers and the crowd are relevant to whether Defendant's conduct was disorderly and disruptive or merely reactive to other people's actions.

Thus, the Defendant's right to use self-defense cannot be taken from him solely based on the actions of others. Nor can the Government attribute to the Defendant hypotheticals or speculation that he engaged in a violent attack because of his location in proximity. The Government needs to prove all elements and defenses beyond a reasonable doubt, which is a high burden to prove. As such, saying the Defendant engaged in a violent attack, without more proof is insufficient, as well as saying "if" the Defendant used "excessive force," is a conclusory statement unable to satisfy the burden of proof. (ECF #1-1 at 7).

**D) Whether during Voir Dire of during Trial the Court Precludes the Defendant from Arguing in a Manner that Encourages "Jury Nullification."**

The Defendant may appeal to the jury to disregard the law in what is commonly referred to as "jury nullification," even though the Defendant has made no suggestion that his innocence is not established by currently governing law. As a result, the Government has by the end of trial failed to prove Defendant's guilt in every element of the crimes charged. Due to the fact that in every stage, the Government demonstrates that it did not actually investigate the potential guilt or innocence (or uncertainty of guilt) of individual Defendants but ng.

Unlike the USAO's constant attempts to inflame and incite January 6 juries to lawless

verdicts, such as parading around the courtroom totally irrelevant guns in the trial of Oath

Keepers in *United States v. Stewart Rhodes,*[2] and showing videos in which Defendants do not

appear showing a few areas of violence unrelated to the Defendants at bar in various trials,

Defendant's counsel has not suggested at any time any intent to appeal to jury nullification.

 The Government bases its concern about an appeal to jury nullification, despite its own

appetite for appealing to juries to hate even innocent Defendants, on a podcast[3] by the Defendant

himself argued that:

> I've told everybody that If I'm found guilty, you don't have a bill of
> rights and you don't have a Constitution … My trial is the fight for
> America. If an army veteran cannot peacefully assemble, peacefully
> address his government for grievances, and peacefully practice his
> Second Amendment while politicians can, then we, like I said, we are
> way, way farther lost than I thought.

https://rumble.com/v285g76-j6-chris-alberts-shane-jenkins-love-wins-dc-gulag-justice-injeopardy-day-7.html at 50:41 – 51:13.

 But the Government is unable to understand these comments as Alberts asserting that

Alberts is, in fact, innocent of the charges.  Defendant's claim that "If an army veteran cannot

peacefully assemble, peacefully address his government for grievances, and peacefully practice

his Second Amendment while politicians can..." is asserting that he did not, in fact, violate the

laws charged against him. This is not an appeal to jury nullification, but an assertion that the

correct result under currently-existing law, without the need for any jury nullification should lead

to acquittal.  While Defendant could respond that the fourth request for a Motion in Limine is

moot because Defendant makes no such claim, this would be inadequate and prejudicial in

---

[2] Guns that played no role in any event on January 6, 2021, and never came within eight
hundred miles of Washington, D.C

implying that acquittal based on the facts and the law is not attainable.

### E) ALBERTS SHOULD BE PROHIBITED FROM PROVIDING EVIDENCE OR ARGUMENT RELATED TO HIS PURPORTED ATTEMPT TO ASSIST A USCP OFFICER.

The Government argues that "in addition to being false, such information is irrelevant to Alberts's guilt and should not be raised at trial." However, again, the Government must prove *intent* of the Defendant. If the Defendant proves at trial that he assisted a U.S. Capitol Police officer, that would be probative of whether he actually did or intended at other times to:

- interfere with a law enforcement officer while engaged in his official duties in response to a civil disorder under Count I;
-  assault, resist, or impede certain officers under Count II ;
- engaged in physical violence in a restricted building or grounds under Count III;
- engaged in disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon under Count IV;
- engaged in physical violence in a restricted building or grounds under Count V;
- engaged in disorderly conduct in a Capitol building under Count VII; or
- engaged in acts of physical violence in the Capitol grounds or buildings under Count VIII;

This could raise or resolve in Defendant Alberts favor doubts about whether Alberts, in fact, actually did those things if he in fact was helping police officers. Obviously, the issue is whether the Defendant ever actually assaulted anyone at all. Yet, based on the Government's own words, "the individual whom Alberts likely observed being provided water because he was feeling dizzy, was a Metropolitan Police Department officer." (ECF #1-1 at 9). Due to that admission alone it proves at the very least, that the Defendant had personal knowledge that an officer was given water and received help from an individual in the capitol (whether or not it was the Defendant). Additionally, there is a high probative value and low prejudicial risk based on the relevancy of the evidence and its tendency to prove or disprove a fact of consequence. Nevertheless, the Defendant has a much stronger argument because it is based on personal knowledge and testimony, whereas the Government continues to rely on inferences and

speculation. For example, "likely observed" is an attempt to undermine the Defendant's claim about providing assistance to an officer without proving their own argument. They used a conclusory statement that the officer only needed water, because he was dizzy without establishing proof that those facts occurred or providing testimony of a witness.

Also, the Government improperly claims that Defendant's actions and supposed assistance of an injured officer is "irrelevant to Alberts's guilt and should not be raised at trial." (ECF #1-1 at 9). On the contrary, it is actually the opposite of irrelevant, because the Defendant's state of mind can negate an element of the crime charged. In addition, that evidence is clearly probative and has little to no prejudicial value, which supports this evidence being raised at trial. The jury might well decide that the Defendant probably did not assault or interfere with police officers, etc., if he were intent on helping police officers.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant Alberts, respectfully requests this Court deny the Government's Motion in Limine and Grant any and all other relief deemed equitable and fair by this Honorable Court.

Dated: April 09, 2023

Respectfully Submitted,

*/s/ John M. Pierce*
John M. Pierce
John Pierce Law, P.C.
21550 Oxnard Street
3rd Floor,
PMB 172 Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7648
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2023, a true and accurate copy of the forgoing was electronically filed and served through the ECF system of the U.S. District Court for the District of Columbia.