# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| *Complainant* | : | |
| | : | |
| *v.* | : | **Criminal Case No.** |
| | : | |
| **CHRISTOPHER MICHAEL ALBERTS,** | : | **1:21-cr-0026 (CRC)** |
| | : | |
| *Defendant* | : | |
| | : | |

_____

### DEFENDANT CHRISTOPHER ALBERTS'
### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### RULE 29, MOTION FOR A JUDGEMENT OF ACQUITTAL
### AND RULE 33, MOTION FOR A NEW TRIAL

Defendant CHRISTOPHER ALBERTS, by and through the undersigned counsel files this Motion and Memorandum of Points and Authorities, in support thereof, pursuant to Rule 29 and also Rule 33 of the Criminal Rules of Procedure for the District of Columbia, and requests oral argument.

## I.     INTRODUCTION

Defendant CHRISTOPHER MICHAEL ALBERTS ("ALBERTS") was accused by the Second Superseding Indictment ("S.S.I.") dated November 10, 2021.  That is, the operative indictment was only six (6) weeks old.  The S.S.I. was "threadbare" with no factual allegations whatsoever.  The S.S.I. presents only conclusions of law standing naked.  The Statement of Facts was Docket Entry # 1-1, originally filed in Magistrate case 1:21-mj-000010, on January 7, 2021.

## II.    PROCEDURAL BACKGROUND

Defendant Alberts was charged and on April 19, 2023, found guilty by jury verdict of:

1. Count I alleges affecting commerce through interference with law enforcement officers during a Civil Disorder in violation of 18 U.SC. 231(a)(3).

2. Count II alleges Assaulting, Resisting, or Impeding Certain Officers in violation of 18 U.S.C. 111(a)(1).

3. Count III pursuant to 18 U.S.C. 1752(a)(1) in combination with and enhanced by (b)(1)(A).  However, Count III requires proof of disorderly and disruptive conduct, to which possession of a gun is an enhancement.  Proving that Alberts possessed a gun is insufficient to prove a violation of 18 U.S.C. 1752(a)(1) even where enhanced by (b)(1)(A).

4. Count IV pursuant to 40 U.S.C. 5104(e)(1)(A)(i) Firearms, dangerous weapons, explosives, or incendiary devices on Capitol Grounds

5. Count V alleges Engaging in Physical Violence in a Restricted Building or Grounds in violation of 18 U.S.C. 1752(a)(4).

6. Count VII alleges Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. 5104(e)(2)(D).

7. Count VIII alleges Acts of Physical Violence in the Capitol Grounds or Buildings in violation of 40 5104(e)(2)(F).

8. Count IX pursuant to D.C. Code Title XXII Section 4504(a) carrying concealed weapon within the District of Columbia.

2

**II.  GOVERNING LAW**

**A.  Rule 29, Fed R. of Crim P. allows a judgment of acquittal upon a motion**:

> \* \* \*

> **(c) Motion After Jury Verdict or Discharge**.

>> (1)  Time for a Motion. A defendant may move for a judgment of acquittal , or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

>> (2)  Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and return an acquittal.

>> (3) *No Prior Motion Required*. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

> (d)  **Conditional Ruling on a Motion for a New Trial**.

>> (1) *Motion for a New Trial*. If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination.

>> (2) *Finality*. The court's order conditionally granting a motion for a new trial does not affect the finality of the judgment of acquittal.

>> (3) *Appeal*.

>> (A) Grant of a Motion for a New Trial. If the court conditionally grants a motion for a new trial and an appellate court later reverses the judgment of acquittal, the trial court must proceed with the new trial unless the appellate court orders otherwise.

>> (B) Denial of a Motion for a New Trial. If the court conditionally denies a motion for a new trial, an appellee may assert that the denial was erroneous. If the appellate court later reverses the judgment of acquittal, the trial court must proceed as the appellate court directs.

> \* \* \*

**B.  Rule 29 states that a Court may grant a judgment of acquittal when the prosecution fails to prove all elements of a crime charged**.

**1**.  The Court must examine what was proven, not what might have been proven.  In many cases, the Government here did not prove or at times even address the elements of the crimes charged.  The Court might indulge in flights of imagination that it believes certain things to be true.  But the question is what did the Government actually prove, not what it could have possibly proven.  Even if a Court is convinced that the prosecution could have proven a point, yet didn't actually do so, the Court must analyze that point as not having been established.  Evaluation is limited to what is in the record, not to what could have been placed into evidence.

**2**.  The Court must grant a motion for judgment of acquittal if "a reasonable juror must necessarily have had a reasonable doubt as to the defendant[']s guilt." *See United States v. Weisz*, 718 F.2d at 437 (emphasis in original) (*citing United States v. Singleton*, 702 F.2d 1159, 1162-63 (D.C. Cir. 1983)). *See also United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977); *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) ("[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion [for judgment of acquittal] must be granted."), *cert denied*, 331 U.S. 837 (1947). *United States v. Jabr*, 2019 U.S. Dist. LEXIS 238718, *9-10, 2019 WL 13110682 (D.D.C., May 16, 2019).

"The court may not permit a jury to render a guilty verdict based on 'ambiguous evidence' from the government, which encourages the jury to 'engage in speculation.' *Bailey v. United States*, 416 F.2d 1110, 1116 (D.C. Cir. 1969); see also *United States v. Preston*, 331 F. Supp. 457, 459 (D.D.C. 1971) ("[S]uspicion is not enough to permit the case to go the jury."). At

the Rule 29 stage, the Court does not analyze whether there is a "visceral or moral" doubt about guilt, but whether there is "a doubt upon the record," whereby "the lack of essential proof creates the doubt as a legal matter." *Hiet v. United States*, 365 F.2d 504, 506 (D.C. Cir. 1966).

**3**.  <u>This Court must make a reasonable assessment and give the government the benefit of only "*legitimate inferences*.</u>" *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C. Cir. 1983). In other words, this court should not speculate or rescue the government by reconstructing the indictment or bending statutes to lend credence to the government's invented narrative where or where some acts of others and irrelevant evidence are given any weight.

> **Moreover, Rule 29 does not require the Court to view the evidence through dirty windowpanes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt. *See Curley*, 160 F.2d at 233 (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"). Rather, in order to find a legitimate and nonspeculative inference of guilt the government must articulate a rational basis in the evidence upon which that inference can arise.**

*United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989).

**4.**  Therefore, even after giving the government the benefit of the most favorable light, if a reasonable trier of fact would have a reasonable doubt as to the existence of any of the essential elements of the crime, the Court must acquit [or order acquittal]. *United States v. Durant*, 208 U.S. App. D.C. 374, 648 F.2d 747 (D.C. Cir. 1981); *see also United States v. Foster*, 251 U.S. App. D.C. 272, 783 F.2d 1087, 1088 (D.C. Cir. 1986).

**5.**  The prosecution must state all elements of the crime with specificity and then prove

beyond a reasonable doubt each element of every crime charged. Evidence is insufficient to sustain a conviction when it goes no further than to "raise a question [of guilt] in a reasonable man's mind" or "create suspicion." *Cooper v. United States*, 218 F.2d 39, 42 (D.C. Cir. 1954). Even when evidence raises a "grave suspicion" in the reasonable juror's mind as to guilt, it is insufficient to support a verdict, unless proof of guilt beyond "a reasonable doubt" is possible on the evidence. *Scott v. United States*, 232 F.2d 362, 364 (D.C. Cir. 1956). In other words, *"some* evidence of guilt" is not enough. *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015) *(emphasis added).* There can be no "maybes" as to guilt in criminal prosecutions.

6.   To further highlight the law on the topic of what is charged and what the government must prove at trial, "No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital." *United States v. Hess*, 124 U.S. 483, 486 (1888). (Emphasis added). The government cannot testify through questions and recital arguments. Criminal law like civil law does not allow inferences upon inferences upon inferences to be considered "evidence" or proof of an act that caused anything, such as obstruction of a proceeding or commerce.

7.   In considering a Rule 29 motion this Court must determine whether upon the evidence, viewed "in a light most favorable to the Government giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence and draw justifiable inference of fact," a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989); *see United States v, Kayode*, 254

F.3d 204, 212-13 (D.C. Cir. 2001) (*quoting United States v. Harrington*, 108 F.3d 1460, 1464, (D.C. Cir. 1997)); *U.S. v. Safavian*, 451 F. Supp. 2d 232, 238 (D.D.C. 2006); *United States v. Safavian*, 644 F. Supp. 2d 1, 7-8 (D.D.C. 2009); *United States v. Duran,* 884 F. Supp. 577, 583 (D.D.C. 1995)*, affd*, 96 F.3d 1495 (D.C. Cir. 1996). The Court must "accord[] the government the benefit of all legitimate inferences," *see United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983), *cert denied* 465 U.S. 1027 (1984), and deny the motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Arrington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (emphasis in original) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## I. RULE 29 MOTION FOR JUDGMENT OF ACQUITAL

Defendant states the following grounds:

### A.  Government Cannot Rise Above its Concessions by Estoppel

In its threadbare speculations and conjectures about intent, the Government of course cannot rise above its own admitted facts that at no time did Alberts ever draw, expose, reveal, or use his gun.  The Government's own sworn facts are that Officer D.H. discovered the existence of the gun.  Thus, the Government negates its own attempts at spin as to motive, intent, or knowledge.  The facts conclusively proved, being the Government's own sworn claims, that Alberts possessed a gun purely for his own self defense, as shown by his actions.

The facts of the Government prove that Alberts was on  his way out of the Capitol area when Metropolitan Police Department Officer D.H. pounced on Alberts from behind on suspicion of concealing a gun.  Therefore, the Government cannot sustain any mind-reading

exercise of Alberts other than he was leaving the area having never used, drawn, or revealed the gun, and would have continued out of the area if not interrupted from doing so.

Moreover, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." United States v. Stone, 2012 U.S. Dist. LEXIS 41434, *20 (citing Stirone v. United States, 361 U.S. 212, 215-16, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960)). "This is because defendants are entitled to have fair notice of the criminal charges against them so that they can prepare a defense." Id. (citing United States v. Combs, 369 F.3d 925, 935 (6th Cir. 2004)).

**B.  Alberts' firearm possession counts must be dismissed under newly prevailing Second Amendment law.**

The defense is cognizant of the Court's pretrial rulings regarding the application of the Second Amendment.  However, the government's factual case regarding the defendant's firearm possession now make clear that the defendant's conduct is protected by the Second Amendment. This is especially true in light of the Supreme Court's landmark decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, issued on June 23, 2022.  The Bruen decision is directly on point.

In *Bruen*, the Supreme Court wrote that "We too agree, and now hold, consistent with Heller and McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 142 S. Ct. at  2122.

Alberts' trial failed to show evidence justifying conviction on Counts 3, 4, 6, 9 and 10. The evidence showed that Alberts safely wore a pistol and ammunition for self protection on Jan.

6.  The government failed to show Alberts ever entered any sensitive areas where firearm possession could be proscribed. Nor did the government put on any evidence that Alberts misused, abused, or improperly displayed the firearm.

The *Bruen* Court loudly and explicitly invalidated every such prohibition nationwide.

> The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees. McDonald, 561 U. S., at 780. We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense.

*Bruen* at 2156.

The Bruen Court suggested that certain unusually dangerous guns might be restricted, or that certain highly secured or restricted areas might be subject to some restrictions.  But Mr. Alberts is accused of merely bearing a "Taurus G2C semi-automatic handgun"—a commonly owned firearm sold at most gun stores—in an outdoor area near the Capitol.

Bruen laid down a presumption favoring the right to bear arms. See id at 2126 ("[W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct").  Thus, 18 U.S.C. § 1752(a)(1) and (b)(1)(A), referenced in Count 3, which accuses Mr. Alberts of entering the Capitol grounds while carrying a "deadly and dangerous weapon, that is, a Taurus G2C semi-automatic handgun," is presumptively invalid.

> "Heller further confirmed that the right to "bear arms" refers to the right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for

9

> offensive or defensive action in a case of conflict with another person." Id., at 584 (quoting Muscarello v. United States, 524 U. S. 125, 143 (1998) (Ginsburg, J., dissenting); internal quotation marks omitted). Bruen at 2134. "This definition of "bear" naturally encompasses public carry. Most gun owners do not wear a holstered pistol at their hip in their bedroom or while sitting at the dinner table. Although individuals often "keep" firearms in their home, at the ready for self-defense, most do not "bear" (i.e., carry) them in the home beyond moments of actual confrontation. To confine the right to "bear" arms to the home would nullify half of the Second Amendment's operative protections.

Id. at 2134-45.

Moreover, confining the right to "bear" arms to the home would make little sense given that self-defense is "the central component of the [Second Amendment] right itself." Id. (emphasis added), quoting Heller, 554 U. S., at 599; see also McDonald, 561 U. S., at 767. After all, the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation," Heller, 554 U. S., at 592, and confrontation can surely take place outside the home.

Accordingly, Counts 3, 4, 6, 9 and 10 against Christopher Alberts must be dismissed. Even when viewed in the light most favorable to the government, the allegations involve nothing more than possession of a typical handgun in an outside area in circumstances where self defense might become necessary. It is the right of every American to keep and bear arms in such situations.

The evidence introduced by the United States showed Alberts arrested with a gun and ammunition late in the day on Jan. 6, 2021 as a curfew was being announced, at a location hundreds of yards away from what most people (and common sense) regard as the grounds of the Capitol. The government produced no evidence (other than mere testimony of biased officers) that the parking area on west Pennsylvania Avenue where Alberts was arrested was posted as

part of "Capitol grounds."  Indeed, the evidence showed Alberts was arrested at a location closer to the Perkins Labor Building than to the Capitol.  Nor did the government introduce any evidence that the area where Alberts was arrested for possessing a gun was a "sensitive place" as required by the Supreme Court's recent Bruen decision.

### C.  Alberts was denied his right to have the jury, and not the judge, decide whether his prosecution for mere firearm possession violated the Constitution.

The landmark Bruen decision overturned 75 years of law.  Prior to the decision, courts had routinely held that the question of whether the Second Amendment applies was a question of law for judges.  But the Bruen decision requires that the Second Amendment be regarded as a fundamental right on par with the First Amendment and the other highest protections in the Bill of Rights.  Thus it is a question of fact for the jury whether the area where Alberts possessed a gun was a "sensitive place" where Alberts could be constitutionally punished for possessing firearms.

Alberts was denied his right to a Second Amendment jury instruction—and his right to present evidence that the areas Alberts possessed a firearm in were not sensitive places.

### D.  Alberts was denied a self-defense jury instruction.

Courts generally hold that it requires very little evidence to merit a self-defense jury instruction.  In Alberts' trial there was sufficient indicia that Alberts' momentary use of force were in response to excessive force by law enforcement.  For example, the evidence consisted of video and images of Alberts with pepperball residue near his groin area, which is evidence of unlawful excessive force.

There was also evidence in Alberts trial that officers were hitting protestors in the head

11

and face with pepperballs or rubber bullets.  This is also unlawful excessive force.

### E.        Alberts was denied his expert witness, Steven Hill.

The Court denied Alberts' use-of-force expert Steven Hill.  Hill is an expert on use-of-force by officers and officer-involved violent episodes.  In this case, Mr. Hill would have assisted the jury in understanding Mr. Alberts' limited, mild use of force in the context of the chaotic setting in which Mr. Alberts found himself.

### F.        Alberts was denied a First Amendment jury instruction.

Lack of a First amendment jury instruction, and the ability to say Alberts had First amendment rights (except for a bare assertion that Alberts went there to "make his voice heard") led the jury to believe that Alberts' political speech and participation in a political protest was entirely criminal.

Alberts' case plainly involved joining a massive political protest at the US Capitol in support of former President Trump. Alberts entered the grounds of the Capitol where he engaged with both fellow demonstrators and with law enforcement.  The government used large amounts of video evidence of Mr. Alberts' speeches and expressions on Capitol Grounds to support Alberts convictions for participating in a civil disorder and disorderly conduct with intent to interrupt official proceedings.  But the Court deprived the jury (and Alberts) from assessing the same evidence under the light of the First Amendment.

### G. <u>MULTIPLITIOUS CHARGES and Double Jeopardy</u>

Where one act or transaction violates multiple statutory provisions, the applicable test to determine whether the Double Jeopardy clause has been violated is whether each provision requires proof of a fact which the other does not."
*Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Under this test, "unless

each statute requires proof of an additional fact which the other does not, the Double Jeopardy clause prohibits successive prosecutions."  Brown v. Ohio, 432 U.S. 161, 166 (1977) (emphasis added).

Furthermore, while on the face of an indictment the same statutory violation may not be alleged twice, "[i]t has been long understood that separate statutory crimes need not be identical – either in constituent elements or in actual proof – in order to be the same within the meaning of the constitutional prohibition." Id. at 164.  Here, in violation of the Double Jeopardy Clause, the government charges Mr. Meggs with two statutes requiring proof of no facts that are unique as to each other. In Albernaz v. United States, 450 U.S. 333 (1981), the Supreme Court held that, "[i]t is well settled that a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy clause." Id. at 345 n. 3.  In Albernaz, however, the defendants were charged with conspiracy to import marijuana and conspiracy to distribute marijuana, which required proof of two different ends of the proscribed object of the conspiracy.

Furthermore, while on the face of an indictment the same statutory violation may not be alleged twice, "[i]t has been long understood that separate statutory crimes need not be identical – either in constituent elements or in actual proof – in order to be the same within the meaning of the constitutional prohibition." Id. at 164.  Here, in violation of the Double Jeopardy Clause, the government charges Mr. Meggs with two statutes requiring proof of no facts that are unique as to each other.

13

### H. The Rule of Lenity and Ambiguities in the Statute

As we previously argued but bears repeating, Christopher Alberts' argument showed true ambiguity of the text at a minimum, which the court implicitly recognized when the court 'wished' for the original drafters.  Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. *See United States v. Bass*, _____at 348 ("[Because] of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity"). Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear. In the instant case, the rule directly supports petitioner's contention that the Government must prove knowledge of illegality to convict him under § 2024(b)(1).' ___Id. at  427-428.

That is the point, that the statute at a minimum is unclear in its application to congress, because it is not at all express that the Sedition statute intends to include congressional members who recess because a protest has come into the building, who do not execute the law.  Even if one accepts the government charge that these Defendants "halted" Congress, which is disputed, that hardly "overthrows" the government.  Defendants left the Capitol without incident, and CHRISTOPHER ALBERTS was back at his hotel by curfew.  No officer arrested

14

him that day, or alleged his co-conspirators, and Congress resumed its normal duties.  These facts, undisputed from the trial, bring the question of "throwing their bodies" at the cause, which the government now alleges is the "use of force" highlights the ambiguity of statute. That ambiguity becomes the relevant point because it should be resolved in the Defendant's favor.

## CONCLUSION

ACCORDINGLY, for all the reasons described above, Alberts respectfully moves for acquittal, dismissal, and a new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.


Dated:  May 18, 2023                    RESPECTFULLY SUBMITTED

**CHRISTOPHER ALBERTS**
*By Counsel*

John M. Pierce, Esq.
John Pierce Law Firm
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: *jpierce@johnpiercelaw.com*


## CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this May 18, 2023, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.

_____/s/_____

John M. Pierce, Esq.

15