UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 21-cr-00026 (CRC) |
| | : | |
| CHRISTOPHER MICHAEL ALBERTS | : | |
| | : | |
| Defendant. | : | |

**OPPOSITION TO DEFENDANT'S MOTION FOR A JUDGMENT
OF ACQUITTAL AND MOTION FOR A NEW TRIAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, opposes defendant Christopher Alberts's Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29 and Motion for a New Trial pursuant to Fed. R. Crim. P. 33. The evidence established beyond a reasonable doubt that Alberts was guilty of the nine crimes of which he was convicted by a jury, and the interest of justice does not require a new trial. Accordingly, his motions should be denied.

**BACKGROUND**

**I.      Facts Established at Trial**

Christopher Alberts traveled from his home in Maryland to attend the Stop the Steal rally near the Ellipse in Washington, D.C. on January 6, 2021. Alberts carried with him a two-way radio, earpiece, throat mic, bungee cords, binoculars, flashlight, MRE (meal-ready-to-eat kit), a medical and decontamination kit, ski mask, gas mask, body armor with metal plates, two knives, a loaded 9-millimeter pistol with hollow point and high-pressure rounds, and an extra magazine loaded with similar ammunition.

At approximately 12:38 p.m., after attending part of the Stop the Steal rally, Alberts walked

towards the Capitol building and recorded a video of himself during which he yelled, "Taking over the Capitol, Patriots, let's go!" At approximately 1:04 p.m., shortly after the Peace Circle had been breached and before the former President finished his speech to the rally, the Defendant reached the West Lawn area near the Pennsylvania Avenue Walkway – well within the restricted perimeter and on the Capitol grounds. To reach that location, Alberts passed through various obstacles including snow fencing, bike rack barricades, the Olmstead wall, and lines of officers. At around 1:10 p.m., he told other rioters who were interfering with USCP officers, "We'll get them soon." Alberts donned his gas mask at around 1:20 p.m., waved to the crowd, and confronted riot police, yelling, "you've got the wrong motherfucker, you see that right there?" (while pointing to military patches on his body armor).

  At approximately 1:48 p.m., with his gas mask on, the Defendant climbed a metal bike rack barrier to reach and progress up the Northwest Steps ("the Steps"). Members of the U.S. Capitol Police were guarding that stairwell to prevent rioters from reaching the Upper West Terrace as it contained far more points of access to the Capitol Building than the Lower West Terrace. With the aid of his gas mask and body armor, Alberts persisted through the deployment of less lethal measures (chemical spray and pepper balls) from the USCP officers to stop him and other rioters from moving up the stairwell even as others were incapacitated. At 1:54 p.m., Alberts was the first rioter to go hands-on with officers on the Steps. Alberts then brandished a large wooden pallet, grappled with a USCP officer to maintain control of the pallet, and used the pallet as a makeshift battering ram as he charged the USCP officers at the top of the steps, made physical contact, and attempted to break through their position.

  Alberts was the first rioter to reach the landing at the Steps and to push against the police

2

line there. The USCP officers were able to force Alberts back down the Steps before another rioter discharged pepper spray at the USCP officers. Alberts was on the Steps for total of 22 minutes. Alberts then was one of the first rioters to rush up the Steps. He waved to the massive crowd behind him multiple times, encouraging them to follow. Alberts was among the first fifteen rioters to reach the Upper West Terrace. Thousands of other rioters followed him to the Upper West Terrace, and many forced their way through the barricades and police lines and then into the Capitol Building through the nearby Senate Parliamentarian and Senate Wing doors. Partially as a result of Alberts's assault on the USCP officers at the Steps and his momentum at each barricade, the Capitol building was breached, and for several hours Congress was prevented from continuing with its constitutionally and statutorily required Joint Session to certify the results of the 2020 presidential election.

As others invaded the Capitol Building, Alberts was temporarily stalled by the chemical spray used by the USCP Officers. Alberts remained on Capitol Grounds for several hours and berated a line of MPD officers who had arrived to reinforce the USCP officers. Alberts called the officers "domestic terrorists" and "treasonous, communist motherfuckers." Alberts complained that the officers were preventing him and other rioters from "doing what's right," and indicated it was his duty "to overthrow the government and reinstate a new government for the people." He stated, "y'all wanted the war. You asked for it. You got it."

At approximately 4:27 p.m., Alberts was still on the Upper West Terrace screaming at police officers who were attempting to regain control of the area. He then circled back around to the West Front and rejoined a line of rioters who refused to leave. Alberts and other rioters confronted a line of police officers. As the other rioters threw various objects at the officers,

including a chair and bike rack, Alberts joined in and threw a bottle at the police line. Alberts later shone his flashlight into the faces of officers before retrieving a bullhorn and berating officers.

Alberts remained on the Capitol Grounds for three more hours, continuing to yell at uniformed officers from various jurisdictions. At 7:22 p.m., after Alberts had been unlawfully present on Capitol Grounds for over six hours, an officer enforcing a 6:00 p.m. curfew order observed a bulge on Alberts's right hip that the officer believed to be a firearm. Alberts was found to be in possession of a loaded pistol and was arrested. Alberts admitted to having carried the loaded 9-millimeter pistol with hollow point bullets and extra magazine for the entire day, including on the Steps, West Terrace, and while he was just steps away from the Capitol Building.

Alberts has steadfastly maintained that he is a "hero" for his criminal acts on January 6, 2021, and argued to the jury that he should be credited as a "protector" of officers and other rioters.

## II.     Procedural Background

Alberts was charged by criminal complaint on January 7, 2021 and a four-count indictment was issued by the Grand Jury on January 27, 2021. *See* ECF No. 7. A Second Superseding Indictment, which was the operative pleading at trial, was issued on November 10, 2021. *See* ECF No. 34. During the pendency of the case, Alberts filed three motions to dismiss the indictment, *see* ECF Nos. 40, 66, 83, a motion to suppress the firearm, *see* ECF No. 74, and a motion to change venue, *see* ECF No. 86. All motions were denied in relevant part. *See* ECF No. 77; ECF Entry, 4/06/2023.

A jury trial commenced on April 11, 2023. *See* ECF Entry, 4/11/2023. At the conclusion of the United States' case-in-chief, Alberts moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. *See* Trial Tr. at 687:7 – 691:2. The Court deferred ruling on the motion until after a

jury verdict. *Id.* at 695:22 – 696:1. On April 19, 2023, Christopher Alberts was convicted of the nine counts remaining in the Second Superseding Indictment. He was found guilty of: (1) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); (3) Entering or Remaining on Restricted Grounds with a Deadly or Dangerous Weapon or Firearm, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); (4) Disorderly or Disruptive Conduct on Restricted Grounds with a Deadly or Dangerous Weapon or Firearm, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); (5) Engaging in Physical Violence on Restricted Grounds, in violation of 18 U.S.C. § 1752(a)(4); (6) Unlawful Possession of a Firearm on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(1)(A); (7) Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); (8) Act of Physical Violence on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F); and (9) Carrying a Pistol Without a License Outside Home or Business, in violation of D.C. Code § 22-4504(a).

Alberts now renews his motion for judgment of acquittal and seeks a new trial pursuant to Fed. R. Crim. P. 29 and 33. *See* ECF No. 160. He appears to contend that (1) the evidence was insufficient for conviction for any firearms crime since he did not "draw, expose, reveal, or use his gun" and it was only possessed for self-defense; (2) his conviction for gun offenses was improper under the Second Amendment; (3) his Second Amendment defense should have been determined as a matter of fact by the jury; (4) the jury should have been instructed on self-defense and his First Amendment theory; (5) the Court erred in excluding expert testimony by Steven Hill; (6) certain charges of conviction violate the Double Jeopardy clause; and (7) the Rule of Lenity applies to unidentified statutory text, possibly 18 U.S.C. § 2384 (criminalizing seditious conspiracy). These arguments are meritless, unsupported by fact or law, and do not justify the extraordinary remedy

of a judgment of acquittal or new trial. The motions must be denied.

## LEGAL STANDARD

Under Rule 29 of the Federal Rules of Criminal Procedure, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Insufficiency of the evidence is "the only ground on which the Court may order the entry of a judgment of acquittal" under Rule 29. *United States v. Naegele*, 537 F. Supp. 2d 36, 40 (D.D.C. 2008). Alleged errors in the Court's instructions to the jury and disagreements with the Court's evidentiary rulings do not justify a new trial under Rule 29. *See United States v. Davis,* 2020 WL 929538, at *2 (W.D. Va. Feb. 26, 2020); *United States v. Castro,* 669 F. Supp. 2d 288 (E.D.N.Y. 2009). The Court "must accept the jury's guilty verdict if it concludes that *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Barnett*, No. 1:21-cr-38 (CRC), ECF No. 203 at 3 (cleaned up) (quoting *United States v. Branham*, 515 F.3d 1268, 1273 (D.C. Cir. 2008)).

Rule 33(a) "permits a court to 'vacate any judgment and grant a new trial if the interest of justice so requires.'" *Barnett*, ECF No. 203 at 3 (quoting Fed. R. Crim. P. 33(a)). To obtain a new trial, the defendant "must overcome a strong presumption … in favor of upholding the jury verdict." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014)). Granting a new trial "is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." *Id*.

## ARGUMENT

Alberts fails to establish that the evidence was insufficient to sustain his convictions. Indeed, Alberts's only argument related to the sufficiency of the evidence relies upon his

6

incorrect belief that he cannot be convicted of firearms-related offenses for possession of a firearm without evidence of brandishing or use.[1] Alberts's remaining claims of error challenge well-supported legal determinations which plainly do not require a new trial in order to remedy a "serious miscarriage of justice."

## I. Firearms Offenses

Alberts first seeks acquittal or a new trial because the evidence established that he possessed – rather than used, drew, revealed, exposed, or brandished – a loaded 9-millimeter pistol. His argument is easily refuted by the statutes themselves. Alberts was convicted of four offenses involving a firearm: Count Three, Entering or Remaining on Restricted Grounds with a Deadly or Dangerous Weapon or Firearm, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Count Four, Disorderly or Disruptive Conduct on Restricted Grounds with a Deadly or Dangerous Weapon or Firearm, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); Count Six, Unlawful Possession of a Firearm on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(1)(A); and Count Nine, Carrying a Pistol Without a License Outside Home or Business, in violation of D.C. Code § 22-4504(a). Each of these crimes requires proof that Alberts *possessed* or *carried* a firearm – an accusation that Alberts readily and repeatedly admitted at trial. *See, e.g.,* Trial Tr. at 916:23 – 919:24. The statutes do not require evidence that he used or brandished the weapon, and his professed intent for carrying a loaded 9-millimeter pistol is irrelevant to the sufficiency of the evidence at trial.

---

[1] Because Alberts does not otherwise challenge the sufficiency of the evidence of his convictions, the United States does not further address the sufficiency of the evidence justifying the jury's verdicts on Counts One through Nine of the Second Superseding Indictment.

The statutory language is clear: 18 U.S.C. § 1752(b)(1)(A) enhances the punishment of an individual who "during and in relation to the offense, uses or *carries* a deadly or dangerous weapon or firearm." (emphasis added). 40 U.S.C. § 5104(e)(1)(A)(i) requires that a person "may not *carry on or have readily accessible* … on the Grounds or in any of the Capitol Buildings, a firearm, a dangerous weapon, explosives, or an incendiary device[.]" (emphasis added). And the D.C. Code states that "[n]o person shall *carry* within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law[.]" (emphasis added). As the Supreme Court has explained, "[n]o one doubts that one who bears arms on his person 'carries a weapon.'" *Muscarello v. United States*, 524 U.S. 125, 131 (1998). Considering the meaning of the word "carry" in the context of 18 U.S.C. § 924(c) (using or carrying a firearm during and in relation to any crime of violence or drug trafficking crime), the Court found that "the 'generally accepted contemporary meaning' of the word 'carry' includes the carrying of a firearm in a vehicle" as well. *Id.* at 139. Because the undisputed evidence established that Alberts carried an unlicensed Taurus G2C semi-automatic handgun in an under-the-waistband holster while he was on restricted Capitol Grounds on January 6, 2021, he is not entitled to judgment of acquittal or a new trial under Rule 29 or 33.

## II. Second Amendment Under *Bruen*

Alberts next challenges his firearms convictions by claiming that his carrying and possession of a loaded firearm on restricted Capitol grounds on January 6, 2021 "is protected by the Second Amendment" in light of the Supreme Court's ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Initially, Alberts's contention that, under *Bruen*, his conviction of Counts Three, Four, Six, and Nine violate the Constitution is not properly raised

8

in a motion for a judgment of acquittal. *See Naegele,* 537 F. Supp. 2d at 40 (insufficiency of the evidence is the only ground on which a court may order the entry of a judgment of acquittal under Rule 29). Moreover, the Court has already explained that "neither the Second Amendment nor *Bruen* shields Alberts from criminal liability for violating the charged statutes." *United States v. Alberts*, No. 1:21-cr-26 (CRC), ECF No. 77 at 5.

As the Court determined when rejecting Alberts's motion to dismiss Counts Three, Four, and Six,

> *Bruen* does not undermine the constitutionally of these statutes. To the contrary, *Bruen* affirmed that regulations prohibiting the carrying of firearms in "sensitive places" such as "legislative assemblies, polling places, and courthouses" are constitutionally permissible. 142 S. Ct. at 2133-34; *see also id*. at 2162 (noting that *Bruen* should not "cast doubt" on "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" (Kavanaugh, J., concurring)). Surely restricted areas where the President or other Secret Service protectees are visiting, and areas of the Capitol within range of lawmakers, qualify as "sensitive places."
>
> Because *Bruen* did not affect laws restricting firearms in sensitive places, this Court remains bound by the D.C. Circuit's holding in *United States v. Class*, which rejected an as-applied Second Amendment challenge to § 5104(e). 930 F.3d 460, 463 (D.C. Cir. 2019) (noting that *Heller I* characterized firearm prohibitions in sensitive places as "presumptively lawful" and categorizing a parking lot on Capitol grounds as a sensitive place (quoting *District of Columbia v. Heller (Heller I),* 554 U.S. 570, 626, 627 n.26 (2008)). Accordingly, the laws underlying counts three, four, and six do not violate the Second Amendment.

*Id.* at 6.

The Court also held that the District of Columbia's licensing statute as it existed on January 6, 2021 complied with *Bruen* and therefore that dismissal of Count Nine was not required. *Id.* at 7 (quoting *Bruen*, 142 S. Ct. 2123-24 & 2161 (Kavanaugh, J., concurring) and *Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017)).

Alberts was convicted by a unanimous jury of four firearms offenses,[2] each of which pass muster under the Second Amendment and *Bruen*. Accordingly, a new trial is not required in order to remedy a "serious miscarriage of justice."

### III. Questions of Law are Reserved to the Court, Not the Jury

Alberts argues that *Bruen* "overturned 75 years of law" such that the constitutionality of his conviction for firearms crimes, and whether he possessed a firearm in a "sensitive place," "is a question of fact for the jury." ECF No. 160 at 11. He is incorrect.

It is axiomatic that the jury sits as a finder of fact and the trial judge determines issues of law. As the D.C. Circuit explained over 180 years ago,

> [T]he immediate and direct right of deciding upon questions of law, is intrusted to the judges; that in a jury, it is only incidental; that, in the exercise of this incidental right, the latter are not only placed under the superintendence of the former, but are, in some decree, controllable by them; and therefore that in all points of law, arising on a trial, the jury ought to show the most respectful deference to the advice and recommendation of judges.

*Stettinius v. United States,* 22 F. Cas. 1322, 1329 (D.C. Cir. 1839). A question of law is for the trial judge, not for the jury. *Morton v. United States*, 147 F.2d 28, 31 (D.C. Cir. 1945) (citing 3 Wigmore, Evidence (3d ed. 1940) § 821). And this Court, applying the D.C. Circuit's decision in *United States v. Class*, found that parking lots on Capitol grounds and "restricted areas where the President or other Secret Service protectees are visiting, and areas of the Capitol within range of lawmakers, qualify as 'sensitive places.'" ECF No. 77 at 6 (citing *Bruen*, 142 S. Ct. at 2133-34

---

[2] To the extent that Alberts seeks to challenge the sufficiency of evidence that he possessed a firearm in restricted grounds or on Capitol Grounds, his argument is meritless. Restricted grounds and Capitol Grounds both are defined by statute. And Alberts admitted that he possessed a firearm while beyond the cordoned-off area of the Upper West Terrace, on Capitol Grounds, and just steps from the Capitol Building. *See* Trial Tr. at 954:3 – 958:16.

10

& 2162 (Kavanaugh, J., concurring) and *Class*, 930 F.3d at 463). Accordingly, Alberts's conviction for Counts Three, Four, Six, and Nine were supported by sufficient evidence and the interest of justice does not require a new trial on these counts of conviction.

### IV. Self Defense and First Amendment Jury Instructions

Alberts further contends that the jury verdict may not stand because the Court declined to provide proposed jury instructions on self-defense and the First Amendment. *See* ECF No. 130, 131. Initially, a challenge to the Court's instructions does not implicate the sufficiency of the evidence, so it cannot form the basis for a Rule 29 judgment of acquittal. *See Naegele*, 537 F. Supp. 2d at 40.

In addition, the Court's rejection of these proposed instructions was correct. As the Court explained in rejecting any self-defense instruction,

> In order to, I believe, establish the right to an instruction or to justify an instruction, there must be sufficient evidence from which a reasonable juror might infer that either the defendant did not know the identity of the law enforcement officer – here there's testimony that the defendant obviously knew that the people at the top of the stairs were law enforcement officers – or that the law enforcement officer's use of force viewed from the perspective of a reasonable officer at the scene was objectively unreasonable under the circumstances.
>
> Based on the evidence presented, the Court finds that no reasonable juror that could conclude that the use of nonlethal pepper spray, tear gas, and plastic projectiles to protect rioters from scaling the stairs to eventually breach the Capitol who, from the perspective of the officers, were unauthorized to be there under all the circumstances reflected in the video and given the uses of those forms of lethal – of nonlethal force testified to by Officer Kerkhoff, the Court does not think that there is sufficient evidence to justify a self-or-others defense instruction to a charge of assault against a law enforcement officer. And that is especially so given that there is no evidence of any injuries resulting from that use of nonlethal force other than the superficial injuries that Mr. – that the defendant has testified to.

Trial Tr. at 1088-89; *see also United States v. Drapeau,* 644 F.3d 646, 653 (8th Cir. 2011) ("An individual is not justified in using force for the purpose of resisting arrest or other performance

11

of duty by a law enforcement officer within the scope of his official duties."); *United States v. Branch,* 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."); *Waters v. Lockett,* 896 F.3d 559, 569 (D.C. Cir. 2018) ("A defendant cannot claim self-defense if he was the aggressor or if he provoked the conflict upon himself.").

The Court also denied Alberts's request for a proposed First Amendment instruction, which would have informed the jury – contrary to law – that, "[y]ou may not use the defendant's protected speech, petitioning, advocacy or expression as support for the government's allegations. If you find that the defendant's conduct was First Amendment protected speech, expression, or advocacy, you must find the defendant not guilty." ECF No. 130 at 1. Rejecting the proposed instruction, the Court stated, "[w]ith respect to the First Amendment, the defendant is not being charged with a speech. He's being charged with specific conduct. None of the statutes that he has been charged under have been held to violate First Amendment; and, moreover, the government can place reasonable time, place, and manner restrictions on First Amendment activity." Trial Tr. at 1116-17; *see also* ECF No. 77 at 9-10 (denying Alberts's motion to dismiss on First Amendment grounds).

The Court's refusal to provide Alberts's requested jury instructions on self-defense and the First Amendment does not constitute one of "those limited circumstances where 'a serious miscarriage of justice may have occurred.'" *Barnett,* No. 1:21-cr-38 (CRC), ECF No. 203 at 4 (quoting *Wheeler*, 753 F.3d at 208). Accordingly, Alberts has not established entitlement to a new trial under Rule 33.

V.     **Expert Witness Steven Hill**

Alberts urges that a judgment of acquittal or new trial is required due to the Court's exclusion of expert testimony by Steven Hill, an ostensible "expert on use-of-force by officers and officer-involved violent episodes." ECF No. 160 at 12. Alberts contends that "Mr. Hill would have assisted the jury in understanding Mr. Alberts' limited, mild use of force in the context of the chaotic setting in which Mr. Alberts found himself." *Id.* That argument is without merit. As the Court ruled prior to trial, whether an officer violated official policies or general standards of policing does not inform a defendant's reasonable belief and therefore is not relevant to a potential self-defense theory. Accordingly, Mr. Hill's testimony as an expert was excluded.

Mr. Hill's testimony was excludable for the simple fact that the expert disclosure was tendered just days before trial, which was not "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). Mr. Hill also was not qualified to speak on the topics for which the defendant noticed him as an expert and sought to allow the jury to hear his unfounded opinions. Mr. Hill is not a current or former USCP officer, does not appear to have undergone training as a USCP officer, and claims no familiarity with the policies and procedures of USCP. *See* ECF No. 119-1. Mr. Hill worked as a police officer in Albuquerque, New Mexico, and as a systems engineer at the Sandia National Laboratory from 1986 until the present. *Id.* There is no indication that Mr. Hill ever served in a riot control capacity or is familiar with the less-lethal tools employed by the USCP on January 6, 2021 or at any time. Mr. Hill appears to have *no* background or experience with Congress, the USCP, the MPD, or the U.S. Capitol building and grounds – and certainly does not have the specialized experience that would qualify him as an expert. He does not claim knowledge about the crowd control techniques

13

or devices utilized by the USCP or the conditions under which they were used on January 6, 2021.

Moreover, Mr. Hill was not proffered as an expert to "assist[] the jury in understanding Mr. Alberts' limited, mild use of force in the context of the chaotic setting in which Mr. Alberts found himself." ECF No. 160 at 12. Instead, he was intended to opine that, (1) law enforcement officers were "required to consider" that their conduct was not justified; (2) the use of less-than-lethal force violated official policies and procedures; and (3) officers responded with "overly aggressive tactics which was dangerous and provocative, in violation of their training and the standards governing police use of force." ECF No. 119 at 3. Mr. Hill thus would have been limited to those topics even had he testified as an expert. *See United States v. Robinson*, 258 F. Supp. 3d 85, 86 (D.D.C. 2017) (granting government's motion in limine to exclude expert testimony not previously disclosed). Because Mr. Hill's exclusion does not implicate the sufficiency of the evidence of Alberts's conviction, Rule 29 relief is unavailable. And since his exclusion did not result in a serious miscarriage of justice, a new trial is not required.

## VI.     Double Jeopardy and The Rule of Lenity

As his final two bases for relief, Alberts contends that his convictions for one or more unidentified offenses violate the Double Jeopardy Clause and that the rule of lenity should be applied to the federal statute criminalizing sedition. Both of these arguments appear to relate to prosecution of another individual, Kelly Meggs, who is not a party to this action. *See* ECF No. 160 at 13 ("Here, in violation of the Double Jeopardy Clause, the government charges Mr. Meggs with two statutes requiring proof of no facts that are unique to each other"); *id.* at 14 ("the statute is unclear in its application to congress, because it is not at all express that the Sedition statute intends to include congressional members who recess because a protest has

14

come into the building, who do not execute the law."). The United States therefore construes these arguments as being included in Alberts's motion inadvertently.

To the extent that a substantive response is necessary, Alberts has failed to establish that his double jeopardy or rule of lenity arguments justify a judgment of acquittal or that a serious miscarriage of justice would result without a new trial. Alberts does not identify any crimes of conviction that require "proof of no facts that are unique as to each other." ECF No. 160 at 13. The Court properly instructed the jury on the elements of each of the nine separate crimes for which he was eventually convicted. *See* ECF No. 147. None of the crimes is a lesser included offense of another since each requires proof of an element distinct from the others. *Id.* While it is true that Alberts was charged with, and convicted of, several offenses stemming from the same conduct on January 6, 2021, "that alone is not enough to justify dismissal of any of the counts, as each is sufficiently distinct to withstand … challenge based on concerns that the charges are multiplicitous or implicate double jeopardy concerns." *United States v. McHugh*, No. 1:21-cr-453 (JDB), 2023 WL 2384444, at *7 (D.D.C. Mar. 6, 2023) (rejecting Double Jeopardy claim in January 6 case) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Because each count required proof of a fact that the others do not, the various counts pass the *Blockburger* test. And because there is no evidence of Congressional intent otherwise, the counts are not multiplicitous. *Id.*; *see also United States v. Munchel*, No. 1:21-cr-118 (RCL), 2023 WL 2992689, at *5 (D.D.C. Apr. 18, 2023) (same).

Alberts's argument regarding the rule of lenity is misdirected. He was not charged with a violation of the sedition statute, and his arguments rely on factual assertions that are contrary to the evidence elicited at trial. The trial record refutes Alberts's claim that "Defendants left the

15

Capitol without incident, and CHRISTOPHER ALBERTS was back at his hotel by curfew. No officer arrested him that day, or alleged his co-conspirators, and Congress resumed its normal duties." ECF No. 160 at 15. In fact, Alberts did not stay at a hotel during his travel to Washington, D.C. in January 2021 and he was arrested at around 7:22 p.m., during the Metropolitan Police Department's enforcement of the 6:00 p.m. curfew. Accordingly, he is not entitled to judgment of acquittal or a new trial on these bases.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court deny Alberts's motion for judgment of acquittal and motion for a new trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney
Tax Division U.S. Department of Justice
Detailed to the U.S. Attorney's Office for the
District of Columbia
P.O. Box 55 Washington, D.C. 20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov

*/s/ Samuel S. Dalke*
SAMUEL S. DALKE
Assistant United States Attorney
Detailed to the U.S. Attorney's Office for the
District of Columbia
Phone: (717) 221-4453
Samuel.S.Dalke@usdoj.gov

*/s/ Shalin Nohria*
SHALIN NOHRIA
Assistant U.S. Attorney
United States Attorney's Office
District of Columbia
601 D St. NW
Washington, D.C. 20001
Shalin.Nohria@usdoj.gov