UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         v.<br><br>CHRISTOPHER ALBERTS,<br><br>         Defendant. | Case No. 21-cr-26 (CRC) |

**OPINION AND ORDER**

Earlier this year, a jury convicted Defendant Christopher Alberts on nine counts related to his conduct at the U.S. Capitol on January 6, 2021. Donning a gas mask and body armor and carrying two knives and a 9mm pistol, Mr. Alberts was one of the first rioters to overwhelm law enforcement officers on the stairway to the Upper West Terrace of the Capitol, leading to the initial breach of the building through the Senate Wing doors just after 2 pm. Alberts moved for a judgment of acquittal at the close of the government's case. He now renews that motion and requests a new trial as well. Alberts lodges a medley of challenges to his convictions, several of which the Court has rebuffed previously. Among other claims, Alberts disputes the sufficiency of the evidence supporting his convictions on four firearms charges, reiterates his pre-trial argument that the Second Amendment bars the gun charges, and contends the Court erroneously denied his request for jury instructions on the First Amendment and self-defense, and barred him from calling an expert witness on the use of force by law enforcement. The Court rejects each of Alberts's challenges and sustains his convictions.

**I.   Background**

Mr. Alberts spent over six hours on the grounds of the U.S. Capitol on January 6, 2021 before he was arrested around 7:20 p.m. in a Pennsylvania Avenue parking lot within the

building's restricted perimeter.  Trial Tr. at 114–17 (Apr. 12, 2023 p.m.).  During the arrest, police seized a loaded 9mm pistol equipped with a twelve-round capacity magazine, as well as an additional large-capacity magazine, from Alberts's person.  Id. at 115–16, 120.

In November 2021, a grand jury issued a second superseding indictment charging Alberts with ten counts.  Second Superseding Indictment, ECF No. 34.  The government later dismissed one of the counts, for possession of a large-capacity magazine in violation of D.C. law.  Consent Mot. Dismiss Count 10, ECF No. 80.  Alberts stood trial in April on the remaining counts:

- Count 1:  Civil disorder in violation of 18 U.S.C. § 231(a)(3).

- Count 2:  Assaulting, resisting, or impeding certain officers in violation of 18 U.S.C. § 111(a)(1).

- Count 3:  Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon in violation of 18 U.S.C. §§ 1752(a)(1), 1752(b)(1)(A).

- Count 4:  Disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon in violation of 18 U.S.C. §§ 1752(a)(2), 1752(b)(1)(A).

- Count 5:  Engaging in physical violence in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(4).

- Count 6:  Unlawful possession of a firearm on Capitol grounds or buildings in violation of 40 U.S.C. § 5104(e)(1)(A)(i).

- Count 7:  Disorderly conduct in a Capitol building or grounds in violation of 40 U.S.C. § 5104(e)(2)(D).

- Count 8:  Act of physical violence in the Capitol grounds or buildings in violation of 40 U.S.C. § 5104(e)(2)(F).

- Count 9:  Carrying a pistol without a license (outside the home or place of business) in violation of D.C. Code § 22-4504(a).

At trial, the government introduced over one hundred exhibits.  This evidence included body-worn camera footage of Alberts's arrest, still images and videos depicting his overall movements around the Capitol grounds, and nearly a dozen physical items found in Mr.

Alberts's possession on January 6, including his pistol, two knives, an armored vest, and a gas mask. The jury also heard from eight government witnesses, all members of law enforcement. Former Washington, D.C. Metropolitan Police Department ("MPD") Officer Dallan Haynes testified to finding the pistol and ammunition upon Alberts's arrest, and members of the U.S. Capitol Police—former Officer Shauni Kerkhoff and Sergeant Adam DesCamp—recounted Mr. Alberts's confrontation with officers on the northwest stairwell of the Capitol, during which Alberts used a wooden construction pallet in an effort to breach a police line at the top of the stairs.

After the government's presentation of evidence, Alberts moved for a judgment of acquittal. The Court reserved decision on the motion until after the jury verdict. The defense then put on its case, introducing fifteen exhibits and calling four witnesses—two character witnesses, Alberts's girlfriend and another acquaintance; a summary witness, Jonathan David Sumrall, who was also on the Capitol grounds on January 6 and testified about his relevant observations; and the defendant himself. The jury ultimately returned a verdict of guilty on all nine counts. It also found that Alberts possessed a deadly or dangerous weapon or a firearm while on Capitol grounds, which enhanced the punishment Alberts faced on Counts 3 and 4. See 18 U.S.C. § 1752(b)(1)(A). Alberts subsequently filed this motion for acquittal and a new trial under Federal Rules of Criminal Procedure 29 and 33. Def.'s Mot. Acquittal and New Trial ("Mot."), ECF No. 160.

**II.  Legal Standards**

    A. <u>Rule 29 Motion for Acquittal</u>

Under Federal Rule of Criminal Procedure 29(a), the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R.

Crim. Pro. 29(a). Substantial deference is given to the verdict, and the Court must give "full play" to the jury's right to "determine credibility, weigh the evidence and draw justifiable inferences of fact." United States v. Branham, 515 F.3d 1268, 1273 (D.C. Cir. 2008) (cleaned up). The motion for acquittal must be denied, and the jury verdict accepted, where "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting United States v. Arrington, 309 F.3d 40, 48 (D.C. Cir. 2002)). The "prosecution's evidence is to be viewed in the light most favorable to the government." Id. (cleaned up).

    B.  Rule 33 Motion for a New Trial

Meanwhile, under Federal Rule of Criminal Procedure 33(a), the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). Trial courts have "broad discretion" when ruling on a motion for a new trial. United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014). Rule 33 motions, however, are difficult to win. The defendant must "overcome a strong presumption . . . in favor of upholding the jury verdict." United States v. Rogers, 918 F.2d 207, 213 (D.C. Cir. 1990) (quotation omitted). Only a "serious miscarriage of justice" warrants a new trial. Wheeler, 753 F.3d at 208 (quoting Rogers, 918 F.2d at 213).

## III.  Analysis

Alberts lumps his arguments under both Rule 29 and Rule 33. For the sake of clarity, the Court will distinguish the challenges alleging insufficiency of the evidence (Rule 29) from those alleging an injustice requiring a new trial (Rule 33).

Crim. Pro. 29(a). Substantial deference is given to the verdict, and the Court must give "full play" to the jury's right to "determine credibility, weigh the evidence and draw justifiable inferences of fact." United States v. Branham, 515 F.3d 1268, 1273 (D.C. Cir. 2008) (cleaned up). The motion for acquittal must be denied, and the jury verdict accepted, where "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting United States v. Arrington, 309 F.3d 40, 48 (D.C. Cir. 2002)). The "prosecution's evidence is to be viewed in the light most favorable to the government." Id. (cleaned up).

    B.  Rule 33 Motion for a New Trial

Meanwhile, under Federal Rule of Criminal Procedure 33(a), the Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). Trial courts have "broad discretion" when ruling on a motion for a new trial. United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014). Rule 33 motions, however, are difficult to win. The defendant must "overcome a strong presumption . . . in favor of upholding the jury verdict." United States v. Rogers, 918 F.2d 207, 213 (D.C. Cir. 1990) (quotation omitted). Only a "serious miscarriage of justice" warrants a new trial. Wheeler, 753 F.3d at 208 (quoting Rogers, 918 F.2d at 213).

## III.  Analysis

Alberts lumps his arguments under both Rule 29 and Rule 33. For the sake of clarity, the Court will distinguish the challenges alleging insufficiency of the evidence (Rule 29) from those alleging an injustice requiring a new trial (Rule 33).

A.  Sufficiency of the Evidence

*1. Firearms charges*

Alberts first challenges the sufficiency of the evidence for his convictions on the firearms-related charges in Counts 3, 4, 6, and 9.  Mot. at 7–8.  He first claims that acquittal is required because, while he "wore a pistol and ammunition" on January 6, the Government did not present evidence that he either "misused, abused, or improperly displayed the firearm."  Id. at 8–9.  But none of the statutes of conviction require that Alberts use the gun in any way.  The firearm enhancement to Counts 3 and 4 applies when "the person, during and in relation to the offense, uses *or carries* a . . . firearm."  18 U.S.C. § 1752(b)(1)(A).  The statute underlying Count 6 makes it unlawful to "*carry* . . . or have readily accessible" a firearm on the Capitol grounds.  40 U.S.C. § 5104(e)(1)(A)(i).  And District of Columbia Code § 22-4504(a), under which Alberts was charged in Count 9, states that "[n]o person shall *carry* within the District of Columbia . . . a pistol, without a license issued pursuant to District of Columbia law."  Alberts concedes in his motion and readily admitted at trial that he knowingly carried an unlicensed gun throughout the day on January 6.  Trial Tr. at 916–20, 958, 962 (Apr. 17, 2023 p.m.); Trial Tr. at 559 (Apr. 14, 2023 a.m.).  No more was required to obtain convictions on the four firearms charges.

*2. Charges Based on Presence in Restricted and Capitol Grounds*

Next, Alberts objects to the sufficiency of the evidence as to his presence on Capitol or restricted grounds on January 6.[1]  Mot. at 10–11.  Three of Alberts's convictions—those under

---

[1] Alberts also contends that the prosecution did not show that he was in a "sensitive place" where his gun possession could be limited.  Mot. at 11.  On a Rule 29 motion, only the sufficiency of the evidence regarding Alberts's location on restricted and Capitol grounds is properly considered.  As the Court discusses below, whether a location can be deemed a "sensitive place" for Second Amendment purposes is a question of law, and need not be proven

5

Counts 3, 4, and 5—prohibit specific conduct "in a restricted building or grounds." See 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), 1752(a)(4). Meanwhile, Counts 6, 7, and 8 relate to actions on or in Capitol grounds, as that term is defined by statute. See 40 U.S.C. §§ 5104(e)(1)(A)(i); 5104(e)(2)(D); 5104(e)(2)(F).

The crux of Alberts's challenge is that the prosecution "produced no evidence (other than mere testimony of biased officers)" that the Pennsylvania Avenue parking area, where he was arrested, "was posted as part of Capitol grounds." Mot. at 10–11 (cleaned up). Capitol grounds are defined by law and the official map of the grounds was shown to the jury at trial. Trial Tr. at 326–28 (Apr. 13, 2023 a.m.); see also Gov't Ex. 805. U.S. Capitol Police Captain Jessica Baboulis also testified that both the northwest steps and the Pennsylvania Avenue parking lot where Alberts was arrested lie within the bounds of the Capitol grounds. Trial Tr. at 185 (Apr. 12, 2023 p.m.).

The government also proved Alberts's presence on restricted grounds, as relevant to Counts 3, 4, and 5. A "restricted buildings or grounds" is defined as any "posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1). Trial evidence showed Alberts within "the cordoned-off area" of the Upper West Terrace, mere steps away from the Capitol Building, on a day when former Vice President Pence was temporarily visiting. See Opp'n Mot. Acquittal and New Trial ("Opp'n") at 10, ECF No. 161; Trial Tr. at 954–58 (Apr. 17, 2023 p.m.); Trial Tr. at 455–58 (Apr. 13, 2023 p.m.); Gov't Exs. 409–15.

---

at trial. The Court thus limits its analysis here to the factual question of whether Alberts entered restricted or Capitol grounds.

In the oral motion for judgment of acquittal at the close of the government's case, defense counsel argued that the government had failed to show that Alberts knew that he was not authorized to be on Capitol or restricted grounds. Trial Tr. at 688–90 (Apr. 14, 2023 p.m.). Counsel claimed that, at most, the government had "laid out some maps and some statutes and some public law type things" that may dictate "who has jurisdiction over mowing the grass" and "picking up the trash." Id. For a trespass-type criminal charge, counsel suggested, the government needed to meet a higher standard of showing unlawful entry. Id.

But the jury was presented with substantial evidence that Alberts knew the Capitol was not open to the general public on January 6. Captain Baboulis described the barriers that were in place along the perimeter of the Capitol complex ahead of the election certification, including "area closed" signage, the Olmsted wall, and layers of linked bike racks and snow fencing. Trial Tr. at 188–90 (Apr. 12, 2023 p.m.); Gov't Exs. 804, 806, 808, 809, 810. And Alberts himself testified to arriving on the northwest steps around 1:48 p.m. and climbing a bicycle rack that was leaning against the steps. Trial Tr. at 934 (Apr. 17, 2023 p.m.). He also testified to seeing officers, including some in riot gear, use pepper balls and other projectiles to disperse the crowd. Id. at 927–29, 932–33. Despite this commotion, Alberts ascended the steps, eventually reaching the law enforcement officers at the top. Id. at 936, 943–46. When asked by the prosecution if he was "welcomed" at the top of the steps landing, Alberts conceded that he "wasn't welcomed anywhere on the Capitol grounds obviously." Id. at 944. The jury also heard testimony from Officer Kerkhoff, who recounted that she and other officers at the top of the stairs were commanding the rioters to "get back, get down, stop" and were using riot control tools to counter the crowd. Trial Tr. at 392–93 (Apr. 13, 2023 p.m.). The officers' testimony and video footage from their vantage point, coupled with Alberts's own admission about not being welcomed on

the Capitol, easily supported the jury's conclusion that Alberts knew he was not authorized to be in the Capitol complex.

### 3. Sufficiency of the Evidence as to All Counts

While Alberts does not specifically challenge the remaining elements of his convictions, the court will nonetheless briefly address why the evidence supports all nine convictions in their entirety.

In addition to the two elements recited above—proof of firearm possession and of unlawful presence in Capitol and restricted grounds—Counts 4, 5, 7, and 8 also require proof beyond a reasonable doubt that Alberts (1) intentionally, willfully, and knowingly engaged in disorderly or disruptive conduct that would (and did) impede or disrupt the orderly conduct of Government business (i.e., Congress's certification of the 2020 Presidential election results) and of a session of Congress or either House of Congress; and (2) willfully and knowingly engaged in an act of physical violence against any person or property.

Dressed in body armor and carrying assorted military paraphernalia, Alberts donned his gas mask and joined dozens of other rioters at the northwest steps of the Capitol around 1:48 p.m. Trial Tr. at 395, 401 (Apr. 13, 2023 p.m.); Trial Tr. at 932, 934, 949 (Apr. 17, 2023 p.m.). Aided by his protective gear and a wooden construction pallet, Alberts advanced up the steps and confronted officers on the landing area. Trial Tr. at 410–12 (Apr. 13, 2023 p.m.). The government proved at trial that, around 1:54 p.m., Alberts made physical contact with police officers while wielding the pallet. Id. at 400–01, 408–12; Gov't Exs. 411–15. Officer Kerkhoff testified to Alberts "grabbing [an] officer," pushing forward, and "clearly assaulting him." Trial Tr. at 410–12 (Apr. 13, 2023 p.m.); Gov't Exs. 411–15. Likening the scene to a "domestic war zone," Officer Kerkhoff recounted how rioters ultimately breached her line of officers. Trial Tr.

at 414–15 (Apr. 13, 2023 p.m.).  Alberts was among the first rioters in this area to reach the Upper West Terrace of the Capitol.  Trial Tr. at 600–01, 622–23 (Apr. 14, 2023 a.m.); Trial Tr. at 428 (Apr. 13, 2023 p.m.).  Referencing video footage, Officer Bennett testified that while on the terrace, Alberts exclaimed that it was "his duty to overthrow the government."  Trial Tr. at 520 (Apr. 14, 2023 a.m.).

As a result of the January 6 breach of the Capitol complex, and the accompanying riot, members of Congress were evacuated, work taking place in the House and Senate chambers ceased, and the election certification was delayed until late that night.  Trial Tr. at 251–54 (Apr. 13, 2023 a.m.).  Considering this evidence alongside the legal instructions given by the Court, the jury reasonably found that Alberts engaged in disorderly or disruptive conduct that disrupted Congress and government business, and that he engaged in physical violence, either against law enforcement or against the Capitol complex as a whole, through his role in the riot.

Moving to Counts 1 and 2, the former requires showing that the defendant knowingly interfered with law enforcement officers carrying out their official duties incident to a civil disorder, where the disorder adversely affected commerce or the performance of a federally protected function.  The latter, which makes it unlawful to forcibly, voluntarily, and intentionally assault, resist, impede, or interfere with certain officers engaged in official duties, also requires that the defendant have either made physical contact with the officer or acted with the intent to commit another felony.  The trial evidence was more than sufficient to support both counts.

As noted, the prosecution presented ample evidence that Alberts "interfered" with and "impeded" Capitol police officers on the northwest steps from protecting the Capitol grounds, and Capitol employees, from the civil disorder taking place around them.  Contrary to Alberts's assertion, conviction on Count 2 does not require evidence of assault.  "Resisting" or "impeding"

an officer is sufficient. The evidence showed both that Alberts made physical contact with an officer, and that he interfered with an officer while committing another felony, which includes Counts 3 and 4. Alberts, moreover, admitted to knowing that the individuals stationed at the steps were law enforcement officers. Trial Tr. at 932–33 (Apr. 17, 2023 p.m.).

The government also proved the interstate commerce element of Count 1 with evidence showing the sales impact of the January 6 riot on Safeway grocery stores in the District. Trial Tr. at 582–85 (Apr. 14, 2023 a.m.); Gov't Ex. 1003. While Alberts challenged this evidence at trial, Trial Tr. at 687–88 (Apr. 14, 2023 p.m.), the jury could have reasonably found a negative effect on commerce based on the Safeway business records introduced by the government. In any case, the jury could have alternatively found that the January 6 riot affected the performance of a federally protected function, such as the work of law enforcement that day.

B. Rule 33 Motion for a New Trial

The Court turns next to Alberts's motion for a new trial.

*1. Second Amendment Challenge to Counts 3, 4, 6, and 9*

Alberts reiterates his argument, which was raised and rejected prior to trial, that under the Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n. v. Bruen, 142 S. Ct. 2111 (2022), his possession of a loaded, unlicensed pistol on Capitol grounds was protected by the Second Amendment. Mot. at 8. He is again mistaken. In fact, Bruen affirmed that laws limiting the carrying of guns in "sensitive places," including "legislative assemblies," are constitutionally permissible. 142 S. Ct. at 2133–34. The two federal statutes banning gun possession on Capitol or restricted grounds—underlying Counts 3, 4, and 6—both implicate sensitive places. See Mem. Op. & Order at 5–6, ECF No. 77 ("Surely restricted areas where the President or other Secret Service protectees are visiting, and areas of the Capitol within range of lawmakers,

10

qualify as 'sensitive places.'"). The Court is also bound by the D.C. Circuit's holding in United States v. Class, which rejected an as-applied Second Amendment challenge to one of the laws under which Alberts was convicted, 40 U.S.C. § 5104(e), which makes it unlawful to possess a firearm on Capitol grounds. 930 F.3d 460, 463 (D.C. Cir. 2019).

The D.C. law underlying Count 9 is constitutional, too. As Justice Kavanaugh explained, Bruen left intact "shall issue" licensing regimes and did not "prohibit States from imposing licensing requirements for carrying a handgun for self-defense." Mem. Op. & Order at 7 (citing Bruen, 142 S. Ct. at 2161 (Kavanaugh, J., concurring)). Alberts thus has no right to carry an *unlicensed* pistol in the District, at least not currently. Accordingly, none of the challenged gun statutes are unconstitutional as applied to Alberts's conduct.

*2. Determination of "Sensitive Places"*

Continuing the Bruen theme, Alberts next asserts that "whether the area where [he] possessed a gun was a 'sensitive place' where [he] could be constitutionally punished for possessing firearms" is a question for the jury. Mot. at 11. But Bruen explicitly referenced *courts*, not juries, as the proper arbiters of whether a regulation concerns a "sensitive place." See 142 S. Ct. at 2133 ("*[C]ourts* can use analogies to those historical regulations of "sensitive places" to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." (emphasis added)). And the D.C. Circuit's ruling in United States v. Class, which binds this Court, found that the Maryland Avenue parking lot on Capitol grounds, opposite the Pennsylvania Avenue lot, qualified as a "sensitive area." 930 F.3d 460, 463 (D.C. Cir. 2019). Alberts therefore was not entitled to have the jury decide whether the U.S. Capitol is a "sensitive place" for Second Amendment purposes.

11

*3. Request for a Jury Instruction on the First Amendment*

Alberts next argues that the Court improperly denied his request for a jury instruction involving the First Amendment. Mot. at 12. He claims that because his conduct "plainly involved joining a massive political protest," the jury was entitled to assess the evidence at trial "under the light of the First Amendment." Id. Alberts proposed the following jury instruction at trial: "You may not use the defendant's protected speech, petitioning, advocacy or expression as support for the government's allegations. If you find that the defendant's conduct was First Amendment protected speech, expression, or advocacy, you must find the defendant not guilty." Def.'s Proposed Jury Instructions at 1, ECF No. 130.

To be clear, Alberts was not charged with or convicted for exercising his right to protest in support of the former President. Nor was he charged with or convicted for any other political advocacy at the Capitol. Instead, the grand jury indicted him and the trial jury found him guilty because, among other acts, he carried a loaded pistol to the Capitol, rushed a line of law enforcement officers with a wooden pallet, and impeded law enforcement from quelling the riot.

The charges thus do not implicate the First Amendment. See Mem. Op. & Order at 9–10. Contrary to Alberts's suggestion, the First Amendment does not immunize physical violence and destructive acts, even if they stem from political demonstrations. United States v. Gregg, 226 F.3d 253, 267–68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); United States v. Bingert, No. 1:21-CR-91-RCL, 2022 WL 1659163, at *14 (D.D.C. May 25, 2022) ("Where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." (cleaned up)). Alberts was therefore not entitled to his requested jury instruction.

*4. Jury Instruction on Self-Defense*

At trial, Alberts urged the Court to instruct the jury on self-defense, arguing that he led rioters up the northwest stairs and confronted law enforcement with the construction pallet only to protect himself and others from what he believes was excessive force on the part of the Capitol Police. See Trial Tr. at 1097 (Apr. 18, 2023 a.m.); Trial Tr. at 1194–97 (Apr. 18, 2023 p.m.). The Court declined to give the requested instruction because the evidence did not support it. Trial Tr. at 1088–89 (Apr. 18, 2023 a.m.). Alberts now contends the Court's ruling was erroneous.

An individual is "not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties" unless he is using force to "resist excessive force" by an officer. United States v. Drapeau, 644 F.3d 646, 653–54 (8th Cir. 2011). Force is "excessive" if it "was unreasonable or unnecessary under the circumstances." Id. As the Court explained based on the evidence presented at trial, no reasonable juror could conclude that the use of "nonlethal pepper spray, tear gas, and plastic projectiles" to impede armed and violent rioters from breaching the Capitol and threatening the lives of lawmakers and their staffs was unreasonable. Trial Tr. at 1089 (Apr. 18, 2023 a.m.). Moreover, other than the superficial injuries Alberts testified to, there was no evidence of Alberts suffering or observing "any injuries resulting from [the] use of nonlethal force" when he mounted the northwest stairs. Id. at 1089. For that and other reasons explained at trial, Id. at 1088–89, Alberts was not entitled to a self-defense or defense-of-others jury instruction.

*5. Expert Witness Steven Hill*

Finally, Alberts claims that the Court erroneously excluded the testimony of Steven Hill, a purported expert in the fields of "use-of-force, demonstration crowd control, and police civil

13

liability." Mot. at 12; Notice Def. Expert at 1, ECF No. 119. As an initial matter, Alberts's expert witness notice was woefully untimely. Trial Tr. at 257 (Apr. 11, 2023 a.m). Defendants must disclose the use of expert witnesses "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). Alberts submitted notice of his intent to use Mr. Hill's testimony just four days before trial, following the pre-trial conference, and months after the prosecution's request for reciprocal discovery. Notice Def. Expert (Apr. 7, 2023); Mot. Exclude Expert Witnesses, Ex. A, ECF No. 123-1.

Mr. Hill's exclusion as an expert witness was appropriate under Federal Rule of Evidence 403 in any case, as any probative value of his testimony would have been substantially outweighed by the harm likely to result from admission. Alberts suggests that Hill would have helped justify Alberts's "mild" use of force on January 6. Mot. at 12. Although Hill was not present on January 6, Alberts claimed that Hill had watched footage of the events and was thus qualified to shed light on the dynamics between protestors and law enforcement that day. Trial Tr. at 977 (Apr. 17, 2023 p.m.); Trial Tr. at 1005–08 (Apr. 18, 2023 a.m.). But as the Court noted at trial, Hill's testimony would have been needlessly cumulative—he would have rehashed the events on the northwest steps, which the jury had repeatedly seen on video. Trial Tr. at 977 (Apr. 17, 2023 p.m.). Moreover, the relevant question for the jury was not "generally what happened on January 6th" or "what other people did or experienced," but rather, "what Mr. Alberts experienced." Trial Tr. at 1007–08 (Apr. 18, 2023 a.m.). And the Court gave the defense "every opportunity" to "show the jury the full scene of what Mr. Alberts experienced that day," id., including by permitting his summary witness, Mr. Sumrall, to describe relevant events at the Capitol from his eyewitness perspective. Mr. Alberts also testified regarding his own motivations. The jury was able to draw reasonable inferences concerning law

enforcement's response to the riot from the videos and witness testimony. Moreover, Hill's testimony on use of force would have been largely irrelevant and confusing given that, as explained above, Alberts was not entitled to a jury instruction on self-defense.[2]

### IV. Conclusion

For these reasons, it is hereby

**ORDERED** that [160] Defendant's Motion for Acquittal and for a New Trial is **DENIED**.

**SO ORDERED**.

                                          CHRISTOPHER R. COOPER
                                          United States District Judge

Date:  July 18, 2023

---

[2] In addition to the arguments discussed, Alberts revives his pre-trial challenges to the legal sufficiency and timing of the second superseding indictment. See Mot. Dismiss, ECF No. 65; Mot. Dismiss for Vindictive and Selective Prosecution ("Second Mot. Dismiss"), ECF No. 66. These challenges are untimely at this stage and lack merit in any event for the reasons the Court has previously explained. See Mem. Op. & Order at 10–11, 14–15. Alberts also asserts arguments based on double jeopardy and the rule of lenity. Mot. at 12–15. But these arguments reference a different defendant (Kelly Meggs) and charges and conduct not implicated in this case. The Court assumes this section of Alberts's motion, which is not referenced in his reply brief, was erroneously cut and pasted from a pleading in Mr. Meggs's case, so will not address it here.